1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  Telephone: (408) 429-6506
   Fax: (408) 369-0752
4  pgore@prattattorneys.com

5  *Attorneys for Plaintiffs*
6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11  AMY GITSON, CHRISTINE VODICKA,        Case No. **CV 13 1333**
    and DEBORAH ROSS, individually and
12  on behalf of all others similarly situated,   **CLASS ACTION AND REPRESENTATIVE
                                                   ACTION**
13                  Plaintiffs,
                                                   **COMPLAINT FOR DAMAGES,
14  v.                                             EQUITABLE AND INJUNCTIVE RELIEF**

15  TRADER JOE'S COMPANY,                          **JURY TRIAL DEMANDED**

16                  Defendant.

17

18          Plaintiffs, through the undersigned attorneys, bring this lawsuit against Defendant Trader

19  Joe's Company ("Defendant" or "Trader Joe's") as to Plaintiffs' own acts upon personal

20  knowledge, and as to all other matters upon information and belief.   In order to remedy the harm

21  arising from Defendant's unlawful conduct which has resulted in unjust profits, Plaintiffs bring

22  this action on behalf of themselves and (1) a nationwide class of consumers or, in the alternative,

23  (2) a statewide class of California consumers both of whom, within the last four years, purchased

24  Defendant's products 1) labeled with the ingredient "evaporated cane juice" or "organic

25  evaporated cane juice;" 2) containing added preservatives or artificial colors or 3) represented to

26  be a form of milk but failing to satisfy the standard of identity for milk (referred to herein as

27  "Misbranded Food Products").

28

1

**INTRODUCTION**

2      1.      Every day, millions of Americans purchase and consume packaged foods.

3  Identical federal and California laws require truthful, accurate information on the labels of

4  packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded

5  food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food has

6  no economic value and is worthless as a matter of law, and purchasers of misbranded food are

7  entitled to a refund of the purchase price of the misbrand food.

8      2.      Trader Joe's is a California company that conducts its grocery business throughout

9  the United States. The Company's principal place of business is in Monrovia, California. Trader

10  Joe's products are sold throughout the nation at a premium price.

11      3.      Trader Joe's knows that many of its consumers wish to eat a diet comprised of

12  natural foods and foods that lack added sugar. Trader Joe's recognizes that natural and health

13  claims drive sales, and actively promotes the naturalness and health benefits of its products. To

14  appeal to such consumers Trader Joe's falsely represents its products as having no added coloring

15  or preservatives when in actuality a number of Trader Joe products purchased by the Plaintiffs

16  including Trader Joe's French Village Strawberry Nonfat Yogurt have added artificial coloring

17  and a number of Trader Joe's products purchased by the Plaintiffs including Trader Joe's Dark

18  Chocolate Peanut Butter Salted Caramel Truffles have added chemical preservatives.

19      4      Trader Joe's also seeks to conceal the added sugar in its products. For example, the

20  Nutrition Facts for Trader Joe's French Village Mixed Berry Nonfat Yogurt purchased by

21  Plaintiffs state that it has twenty-four (24) grams of sugar, but the ingredient section fails to list

22  "sugar" or "dried cane syrup" as an ingredient. Similarly, the Nutrition Facts for Trader Joe's

23  Greek Style Vanilla Nonfat Yogurt purchased by Plaintiffs states that it has twenty-six (26) grams

24  of sugar, but the ingredient section fails to list "sugar" or "dried cane syrup" as an ingredient.

25  Instead, these labels lists "evaporated cane juice" as an ingredient, despite the fact that the FDA

26  has specifically warned companies not to use this term because 1) it is "false and misleading;" 2)

27  in violation of a number of labeling regulations designed to ensure that manufacturers label their

28  products with the common and usual names of the ingredients they use and accurately describe

1   the ingredients they utilize; and 3) the ingredient in question is not a juice.

2       5.      In discussing "evaporated cane juice" in its marketing material, Trader Joe's does

3   not disclose the fact that "evaporated cane juice" is, in its ordinary and commonly understood

4   terms, "sugar," and/or "dried cane syrup."

5       6.      Trader Joe's currently markets a number of different flavors and varieties of its

6   French Village and Greek Style yogurts which list "evaporated cane juice" as an ingredient, all of

7   which are misbranded for reasons stated herein. It also markets a number of other products such

8   as the Organic Chocolate Soy Milk purchased by the Plaintiffs that contain "organic evaporated

9   cane juice" as an ingredient.

10      7.      In 2009, the U. S. Food and Drug Administration issued its Guidance Letter to

11  Industry regarding ingredients declared as evaporated cane juice. In that letter, the FDA advised

12  the food industry not to use "evaporated cane juice" as an ingredient in product labels because it

13  is "false and misleading" and fails to list the ingredient, sugar, by its usual and common name.

14  Trader Joe's knew or should have known of this FDA Guidance Letter and the fact that the FDA

15  considers the use of "evaporated cane juice" to be false and misleading yet continues to use such

16  term in the ingredient section of its product labels.

17      8.      Additionally, the FDA's Standard of Identity for yogurt (21 CFR §131.200)

18  prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of

19  identity. Evaporated Cane Juice is not included on the list of allowed sweeteners which is limited

20  to:

21      sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar;
        refiner's sirup; molasses (other than blackstrap); high fructose, corn sirup,
22      fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract,
        dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the
23      sweeteners listed in part 168 of this chapter [21], except table sirup.  21 CFR
        §131.200 (d) (2).
24
25      9.      If a manufacturer makes a claim on a food label, the label must meet certain legal

26  requirements that help consumers make informed choices and ensure that they are not misled. As

27  described more fully below, Defendant has made, and continues to make, false and deceptive

28  claims in violation of federal and California laws that govern the types of representations that can

1   be made on food labels. These laws recognize that reasonable consumers are likely to choose

2   products claiming to be natural or to have a health or nutritional benefit over otherwise similar

3   food products that do not claim such properties or benefits or that disclose certain ingredients.

4   More importantly, these laws recognize that the failure to disclose the presence of risk-increasing

5   ingredients, like sugar, is deceptive because it conveys to consumers the net impression that a

6   food makes only positive contributions to a diet, or does not contain any ingredients at levels that

7   raise the risk of diet-related disease or health-related condition.

8         10.    Identical federal and California laws regulate the content of labels on packaged

9   food. The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

10   the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety

11   Code § 109875, *et seq.* (the "Sherman Law"). Under FDCA section 403(a), food is "misbranded"

12   if "its labeling is false or misleading in any particular," or if it does not contain certain

13   information on its label or its labeling. 21 U.S.C. § 343(a).

14         11.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

15   term "misleading" is a term of art. Misbranding reaches not only false claims, but also those

16   claims that might be technically true, but still misleading. If any one representation in the

17   labeling is misleading, the entire food is misbranded. No other statement in the labeling cure a

18   misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and

19   the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

20   *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

21   that anyone was actually misled.

22         12.    Defendant has made and continues to make, unlawful ingredients and all natural

23   and no added coloring claims on the food labels of is Misbranded Food Products that are

24   prohibited by federal and California law and which render these products misbranded. Under

25   federal and California law, Defendant's Misbranded Food Products cannot legally be

26   manufactured, advertised, distributed, held or sold. Defendant's false and misleading labeling

27   practices stem from its global marketing strategy. Thus, the violations and misrepresentations are

28   similar across product labels and product lines.

13.     Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws. In particular, Defendant has violated federal and California labeling regulations by listing sugar and/or sugar cane syrup as "evaporated cane juice." According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including sugar or dried cane syrup. Sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and 21 C.F.R. §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated. Cane syrup is defined by regulation in 21 C.F.R. § 168.130. The common or usual name for the solid or dried form of cane syrup is "dried cane syrup."

14.     Sugar cane products exist in many different forms, ranging from raw sugars and syrups to refined sugar and molasses. These products are differentiated by their moisture, molasses, and sucrose content as well as by crystal size and any special treatments. Sugar cane products are required by regulation (21 C.F.R. §101.4) to be described by their common or usual names, sugar (21 C.F.R. 101.4(b)(20) and 21 C.F.R. §184.1854 or cane syrup (21 C.F.R. 168.1340). Other sugar cane products have common or usual names established by common usage such as molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar and demerara sugar.

15.     The FDA has instructed that sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "Dehydrated Cane Juice" or "Evaporated Cane Juice." The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R § 102.5. Nevertheless, Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.

16.     Defendant's violations of law include the illegal advertising, marketing,

distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in California and throughout the United States.

## PARTIES

17. Plaintiff Amy Gitson is a resident of Lafayette, California who purchased Trader Joe's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

18. Plaintiff Christine Vodicka is a resident of San Jose, California who purchased Trader Joe's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

19. Plaintiff Deborah Ross is a resident of San Jose, California who purchased Trader Joe's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

20. Defendant Trader Joe's is a privately held chain of specialty grocery stores with its headquarters located at 800. S. Shamrock Ave., Monrovia California 91016. Defendant, a California corporation, has approximately 370 stores with approximately half of them located in California and the remaining locations in 30 states and the District of Columbia. Defendant may be served with process by serving its registered agent for service, Paracorp Incorporated whose address is 2804 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833-4346.

21. Defendant is a leading producer of retail food products, including the Misbranded Food Products at issue herein. Defendant sells its food products to consumers in grocery and other retail stores throughout California and the United States.

22. Plaintiffs and Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive and unlawful scheme.

## JURISDICTION AND VENUE

23. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

24. The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

25. The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

26. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

27. The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Amended Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California and the United States through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

28. Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because this Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

### A.   Identical California And Federal Laws Regulate Food Labeling

29. Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

30. Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

31.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, a food product is misbranded under California Health & Safety Code § 110660 if its labeling is false and misleading in one or more particulars; is misbranded under California Health & Safety Code § 110665 if its labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; is misbranded under California Health & Safety Code § 110670 if its labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; is misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on its labeling are either missing or not sufficiently conspicuous; is misbranded under California Health & Safety Code § 110735 if it is represented as having special dietary uses but fails to bear labeling that adequately informs consumers of its value for that use; and is misbranded under California Health & Safety Code § 110740 if it contains artificial flavoring, artificial coloring and chemical preservatives but fails to adequately disclose that fact on its labeling.

**B.     FDA Enforcement History**

32.     In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA informed the food industry of its concerns and placed the industry on notice that food labeling compliance was an area of enforcement priority.

33.     In October 2009, the FDA issued a Guidance For Industry: Letter regarding Point Of Purchase Food Labeling to address its concerns about front of package labels ("2009 FOP Guidance"). The 2009 FOP Guidance advised the food industry:

> ... Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP [Front-of-Pack] labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are

1    explicit or implied nutrient content claims and that are not
     consistent with current nutrient content claim requirements. FDA
2    will also proceed with enforcement actions where such FOP
     labeling or labeling systems are used in a manner that is false or
3    misleading.

4    http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/Guidance
     Documents/FoodLabelingNutrition/ucm187208.htm

5        34.    The 2009 FOP Guidance recommended that "manufacturers and distributors of

6    food products that include FOP labeling ensure that the label statements are consistent with FDA

7    law and regulations" and specifically advised the food industry that it would "proceed with

8    enforcement action where such FOP labeling or labeling systems are used in a manner that is

9    false or misleading."

10       35.    Defendant knew or should have known about the 2009 FOP guidance. Despite this

11   fact, Defendant did not remove the unlawful and misleading labels from its Misbranded Food

12   Products.

13       36.    On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA

14   Commissioner] Dr. Hamburg" ("Open Letter"). The Open Letter reiterated the FDA's concern

15   regarding false and misleading labeling by food manufacturers. In pertinent part, the letter stated:

16
17       Today, ready access to reliable information about the calorie and nutrient
         content of food is even more important, given the prevalence of obesity
18       and diet-related diseases in the United States. This need is highlighted
         by the announcement recently by the First Lady of a coordinated national
19       campaign to reduce the incidence of obesity among our citizens,
         particularly our children.
20
21       With that in mind, I have made improving the scientific accuracy and
         usefulness of food labeling one of my priorities as Commissioner of
22       Food and Drugs. The latest focus in this area, of course, is on
         information provided on the principal display panel of food packages and
23       commonly referred to as "front-of-pack" labeling. The use of front-of-
         pack nutrition symbols and other claims has grown tremendously in
24       recent years, and it is clear to me as a working mother that such
         information can be helpful to busy shoppers who are often pressed for
25       time in making their food selections. ...
26
27       As we move forward in those areas, I must note, however, that there is
         one area in which more progress is needed. As you will recall, we
28       recently expressed concern, in a "Dear Industry" letter, about the number
         and variety of label claims that may not help consumers distinguish

healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.

. . . .

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

37.     Defendant has continued to mislabel its Misbranded Food Products despite the express admonition not to do so contained in the Open Letter.

38.     At the same time it issued its Open Letter, the FDA issued a number of publicly disclosed warning letters to companies whose products were misbranded as result of their unlawful labels.

39.     In its 2010 Open Letter to industry the FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they were in full

1  compliance with food labeling requirements and make changes where necessary. However,
2  Defendant did not change the labels on its Misbranded Food Products in response to these
3  warning letters.

4      40.    In addition to its general guidance about unlawful labeling practices the FDA has
5  issued specific guidance about the unlawful practices at issue here. For example, in October of
6  2009, the FDA issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice,
7  which advised industry and that the term Evaporated Cane Juice was unlawful.
8  http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/Foo
9  dLabelingNutrition/ucm181491.htm

10     41.    In addition to its guidance to industry in general, the FDA has sent warning letters
11  to specific companies regarding specific violations such as the ones at issue in this case.

12     42.    In particular, as noted above, the FDA has issued warning letters to companies for
13  utilizing the unlawful term "evaporated cane juice."  The FDA's July 2012 Regulatory
14  Procedures Manual indicates that a warning letter "communicates the agency's position on a
15  matter" and that "[w]arning Letters are issued only for violations of regulatory significance." The
16  FDA publicly posted these letters on its website with the expectation that food manufacturers
17  would revise their product labels to correct any violations outlined in these warning letters.

18     43.    Despite the numerous FDA warning letters and the issuance of the 2009 FDA
19  Guidance on evaporated cane juice and the 2010 Open Letter, Defendant did not remove the
20  unlawful and misleading labels from its Misbranded Food Products.

21     44.    Defendant has continued to ignore the 2009 FOP Guidance which detailed the
22  FDA's guidance on how to make food labeling claims as well as the 2009 Guidance on
23  Evaporated Cane Juice and the FDA warning letters on evaporated cane juice.  As such,
24  Defendant's Misbranded Food Products continue to run afoul of the 2009 FOP Guidance and the
25  2009 Guidance on Evaporated Cane Juice and the FDA warning letters on evaporated cane juice
26  as well as federal and California law.

27     45.    Despite the numerous FDA warning letters and the 2009 Guidance on Evaporated
28  Cane Juice or the FDA evaporated cane juice warning letters and the 2010 Open Letter,

1   Defendant has not removed the unlawful and misleading food labeling ingredients from

2   Defendant's Misbranded Food Products.

3       46.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell

4   products bearing unlawful food labeling claims without meeting the requirements to make such

5   claims.

6       47.     Even in the face of direct FDA regulation that "Evaporated Cane Juice" is a "false

7   and misleading" term, Defendant continues to use the term at the present time.

8       **C.   Defendant's Unlawful and Misleading Evaporated Cane Juice Claims**

9       **1.   The Standard Of Identity For Yogurt Does Not Permit The Use Of**
10          **Evaporated Cane Juice As An Ingredient**

11      48.     As a matter of law it is unlawful to use evaporated cane juice as an ingredient in

12  yogurt.

13      49.     The FDA's Standard of Identity for yogurt (21 CFR § 131.200) prohibits the

14  inclusion of any nutritive carbohydrate sweeteners not listed in the standard of identity.

15  "evaporated cane juice" is not included on the list of allowed sweeteners which is limited to:

16          "sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar;
            refiner's sirup; molasses (other than blackstrap); high fructose corn sirup;
17          fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract,
            dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the
18          sweeteners listed in part 168 of this chapter [21], except table sirup."  21 CFR
            §131.200 (d)(2).
19

20      50.     As discussed below, "evaporated cane juice" is an unlawful term in that it is a false

21  and misleading name for another food or ingredient that has a common or usual name, namely

22  sugar or dried cane syrup.  A food which purports to be a standardized product but which contains

23  ingredients not recognized in the standard of identity is misbranded, even if the label accurately

24  describes the ingredients.  Even if evaporated cane juice is considered to be the common or usual

25  name of a type of sweetener, that sweetener is not authorized for use in yogurt and if included in

26  violation of the prohibition against doing so, its presence would preclude the product it is added

27  to from being called or sold as yogurt.

28

**2. Evaporated Cane Juice Is An Unlawful Term Prohibited From Use On A Product Label Or In Its Ingredient List Under Federal and California Law**

51.     21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California pursuant to the Sherman Law, prohibit manufacturers from referring to foods by anything other than their common and usual names.  21 C.F.R. § 101.4, which has also been adopted by California pursuant to the Sherman Law, prohibits manufacturers from referring to ingredients by anything other than their common and usual names.  Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law, or because the products lacked the ingredient entirely.  In particular, the Defendant has used the unlawful term "evaporated cane juice" on its food products in violation of numerous labeling regulations designed to protect consumers from misleading labeling practices.

52.     The FDA "considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21 U.S.C. 102.5."

53.     In October of 2009, the FDA issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, which advised the food industry that:

> "…the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

> "Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

54.     Despite the issuance of the 2009 FDA Guidance, Defendant did not remove the unlawful and misleading food labeling from its Misbranded Food Products.

55.     Defendant often lists ingredients with unlawful and misleading names. The Nutrition Facts label of the Misbranded Food Products list "Evaporated Cane Juice" or "Organic Evaporated Cane Juice" as an ingredient. According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup." The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 C.F.R. 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated.

56.     Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods that bear labels that contain the term evaporated cane juice are misbranded.

**D.     Defendant Makes Unlawful No Artificial Flavors, Colors or Preservatives Claims**

57.     Trader Joe's also false misrepresents that its products free from any coloring or preservatives when this is false.

58.     Trader Joe's falsely pledges to its customers that its customers that its products are free from coloring or preservatives. This pledge is:

All Products In The Trader Joe's Label Promise:

NO artificial flavors, colors or preservatives

59.     Trader Joe's no coloring or preservatives claims are false because its products contain undisclosed coloring agents and preservatives. For example, the Trader Joe's French Village Strawberry Nonfat Yogurt purchased by the Plaintiffs utilized beet juice as an added artificial coloring agent.

60.     Similarly, the Trader Joe's Dark Chocolate Peanut Butter Salted Caramel Truffles purchased by Plaintiffs contained tocopherols, a chemical preservative. Trader Joe's false misrepresentations that its products contained no coloring or preservatives was false and misled

1  consumers like the Plaintiffs whom reasonably relied on such false misrepresentations. Trader
2  Joe's misrepresentations misled consumers like the Plaintiffs into paying a premium price for
3  inferior or undesirable ingredients and products.

4      61.    Defendant's false, unlawful and misleading ingredient listings render products
5  misbranded under federal and California law. Misbranded products cannot be legally sold, have
6  no economic value and are legally worthless. Plaintiffs and the class paid a premium price for the
7  Misbranded Food Products.

8      62.    Defendant has also made the same illegal claims on its websites and advertising in
9  violation of federal and California law.

10     63.    Section 403(a) of the FDCA and California's Sherman Law make it clear that the
11 coloring in Trader Joe's products was artificial coloring. These laws prohibit food manufacturers
12 from using labels that contain the terms "natural," "all natural," and "only natural" when they
13 contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

14     64.    The FDA considers use of the term "natural" on a food label to be truthful and
15 non-misleading when "nothing artificial or synthetic…has been included in, or has been added to,
16 a food that would not normally be expected to be in the food." See 58 FR 2302, 2407, January 6,
17 1993.

18     65.    21 C.F.R. § 70.3(f) makes clear that "where a food substance such as beet juice is
19 deliberately used as a color, as in pink lemonade, it is a color additive." Similarly, any coloring or
20 preservative can preclude the use of the term "natural" even if the coloring or preservative is
21 derived from natural sources. The FDA distinguishes between natural and artificial flavors in 21
22 C.F.R. § 101.22.

23     66.    The FDA has also repeatedly affirmed its policy regarding the use of the term
24 "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of
25 source) has been included in, or has been added to, a food that would not normally be expected to
26 be in the food. Any coloring or preservative can preclude the use of the term "natural" even if the
27 coloring or preservative is derived from natural sources.

28

67.    The FDA has sent out numerous warning letters to companies in which it has addressed "All Natural" claims. In these letters, the FDA has informed the receiving companies that their products labeled "All Natural" were misbranded where they contained synthetic and artificial ingredients.

68.    For example, on August 16, 2001, the FDA sent a warning letter to Oak Tree Farm Dairy, Inc. ("Oak Tree warning letter"). The letter "found serious violations" of the Federal Food, Drug and Cosmetic Act and Title 21, Code of Federal Regulations, Part 101 – Food Labeling (21 CFR 101), and stated in pertinent part:

> The term "all natural" on the "OAKTREE ALL NATURAL LEMONADE" label is inappropriate because the product contains potassium sorbate. Although FDA has not established a regulatory definition for "natural," we discussed its use in the preamble to the food labeling final regulations (58 Federal Register 2407, January 6, 1993, copy enclosed). FDA's policy regarding the use of "natural," means nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food. The same comment applies to use of the terms "100 % NATURAL" and "ALL NATURAL" on the "OAKTREE REAL BREWED ICED TEA" label because it contains citric acid.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm

69.    Defendant knew or should have known of these warning letters and other similar ones. Despite FDA's numerous warnings to industry, Defendant has continued to sell products represented as "All Natural" that in fact contain artificial and synthetic ingredients and added coloring. Seeking to profit from consumers' desire for natural food products, Defendant has falsely misrepresented its products as "All Natural."

70.    For example, the Trader Joe's French Village Strawberry Nonfat Yogurt purchased by Plaintiffs contains an added coloring agent, beet juice.

71.    Because in strawberry yogurt beet juice is an added artificial color, such yogurt is neither all natural nor free of artificial coloring.

72.    Defendant's "no coloring labeling practices also violate FDA Compliance Guide CPG Sec. 587.100, which states: [t]he use of the words "food color added," "natural color," or similar words containing the term "food" or "natural" may be erroneously interpreted to mean the color is a naturally occurring constituent in the food. Since all added colors result in an

1 artificially colored food, we would object to the declaration of any added color as "food" or

2 "natural." Likewise, California Health & Safety Code § 110740 prohibits the use of artificial

3 flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately

4 disclosed on the labeling.

5       73.    Defendant violated these provisions when it falsely represented its products were

6 free of coloring. For example, Defendant's Trader Joe's French Village Strawberry Nonfat

7 Yogurt contained the coloring agent, beet juice. Defendant has also made the same false,

8 misleading and illegal claims on other food products and on its websites and advertising in

9 violation of federal and California law.

10       74.    A reasonable consumer would expect that when Defendant represents that its

11 products have no artificial flavors, coloring, or preservatives, the product's ingredients would not

12 include artificial coloring or chemical preservatives as defined by California, the federal

13 government and its agencies. A reasonable consumer would also expect that when Defendant

14 represents its products as having no artificial flavors, coloring, or preservatives they would not

15 have artificial flavors, coloring, or preservatives according to the common usage of those words.

16 A reasonable consumer would, furthermore, expect that products represented as having no

17 artificial flavors, coloring, or preservatives would not contain artificial colors or chemical

18 preservatives.

19       75.    Plaintiffs did not know, and had no reason to know, that Defendant's Misbranded

20 Food Products were misbranded, and that the claims made about their lack of colors or

21 preservatives were false.

22       76.    Consumers are thus misled into purchasing Defendant's products with chemical

23 preservatives and artificial colors that are not absent as falsely represented by Defendant.

24       77.    Defendant's products are in this respect misbranded under federal and California

25 law. Misbranded products cannot be legally sold and are legally worthless. Plaintiffs and

26 members of the Class who purchased these products paid an unwarranted premium for these

27 products.

28

E.  **Defendant Violated The Standard Of Identity For Milk**

78.    FDA regulations require specific information (e.g. the name of the food) to appear on the Principal Display Panel of all packaged foods. The name of the food will either be determined by the product's standard of identity or its common or usual name. Many food products have established standards of identity, which may specify compositional characteristics and/or manufacturing parameters for the product, for example those for milk, yogurt, cheeses, and ice cream (21 CFR 131.110, 131.200, 133, and 135.110, respectively).

79.    A product is misbranded if the product name includes a standardized food name, e.g., "milk," as part of a name for that product, e.g., "soymilk." The FDA has so ruled on a number of occasions, issuing warning letters to several manufacturers who have misbranded foods by misusing names of standardized dairy products.

80.    For example, in 2008 the FDA sent a warning letter to Lifesoy, Inc. in which it stated:

> Your LIFESOY® Natural Soymilk Unsweetened (1/2 gallon) and LIFESOY® Natural Soymilk Sweetened (1/2 gallon) products use the term "milk" as part of their common or usual name. Milk is a standardized food defined as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows [21 CFR 131.110]. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because it does not contain "milk." We do consider "soy drink" or "soy beverage," however, as acceptable common or usual names for such products.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2008/ucm1048184.htm

81.    Similarly, in 2012 the FDA sent a warning letter to Fong Kee Tofu Company, Inc. in which it stated:

> Your Fresh Soy Milk Sweet product uses the term "milk" as a part of the common or usual name. Milk is a standardized food defined in 21 CFR 131.110 as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because your product does not contain "milk." We consider "soy drink" or "soy beverage," however as acceptable common or usual names for such products.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm295239.htm

82.    Adding the name of a plant material in front of the word "milk" does not result in an appropriate name for non-dairy products, as these products do not contain milk or milk ingredients, the plant-based liquids are not permitted ingredients in milk, nor do they represent

- 18 -
*Class Action Complaint*

1  the common or usual names of these beverages. In reality, many of these non-dairy plant-based

2  beverages are little more than water and soluble carbohydrates, with little to no nutrient

3  value. There can be no doubt that these products have been formulated and positioned to mimic

4  the positive quality attributes of milk from lactating cows and, because of this, are nothing more

5  than imitation milks that should be labeled as such.

6      83.    Soy beverages lack the nutrients associated with milk absent fortification and even

7  post-fortification the Trader Joe's Organic Chocolate Soy Milk purchased by the Plaintiffs was

8  nutritionally inferior to milk in a number of respects.

9      84.    Soy-based beverages naturally contain only one-fifth the amount of calcium as

10  cow's milk. To serve as a more significant non-dairy calcium source, some of these beverages

11  are fortified with calcium to a level comparable to that of cow's milk. However, the amount of

12  nutrient present in a food and the amount absorbed by the body are not equal. In fortified foods,

13  the ultimate bioavailability of the nutrients depends on the interactions among a variety of

14  formulation parameters, including the composition of the food matrix, the form of the fortificant,

15  and the level of fortification. While the nutrition facts panel may indicate an equal level of

16  calcium present, depending on the specific conditions and the delivery mechanism, calcium from

17  a soy beverage may be up to 25% less absorbed than calcium from cow's milk.

18      85.    Regardless of whether or not a particular food system is optimized for

19  bioavailability of a nutrient, calcium-fortified beverages suffer from the additional technological

20  challenge of keeping the calcium in suspension. As a result, the fortificant has a tendency to settle

21  out to the bottom of the container. Therefore, it is irrelevant if calcium bioavailability for two

22  products is equivalent, if the fortificant is not actually being consumed. Even with vigorous

23  shaking, significant amounts (as much as 80%) of the calcium in a fortified soy beverage may

24  remain as sediment in the container

25      86.    FDA's own regulations state that addition of a nutrient to a food is appropriate

26  only when the nutrient "is stable in the food under customary conditions of storage, distribution,

27  and use" and it "is physiologically available from the food" [21 CFR 104.20 (g)(1) and

28  (2)]. Plant-based beverages vary in terms of their level of calcium fortification and the type of

1    fortificant employed (see Table 3), which affects the bioavailability of calcium from these

2    products, and, as mentioned above, the degree of sedimentation will affect the amount of calcium

3    actually ingested. Therefore, because of the issues with stability and bioavailability, the practice

4    of adding calcium to plant-based beverages is not in compliance with FDA's fortification

5    policy. Further, it is misleading and deceptive to consumers like the Plaintiffs, especially when

6    the level of fortification and marketing of the product suggest it serve as a substitute for dairy

7    milk. A consumer may think he or she is both ingesting and absorbing an amount of calcium

8    declared on the nutrition label that is comparable to dairy milk, but the actual amount would be

9    measurably less.

10       87.    The Plaintiffs were misled by the Defendant's use of the term milk in connection

11   with its soy beverages. Defendant's actions illegally mislead the public by inappropriately

12   employing names and terms reserved by law for standardized dairy products, thereby creating

13   false impressions that these products provide comparable quality, taste, or nutritional benefits

14   when they do not. The Plaintiffs would not have bought the Defendants soy beverage products

15   had Plaintiffs known they were misbranded and not capable of complying with the standard of

16   identity for milk and that in comparison with milk meeting the standard for milk they were an

17   inferior product and were nutritionally inferior and that most aspects of their nutritional profile

18   were not due to their unnatural characteristics but rather due to improper fortification in violation

19   of the FDA fortification policy.

20       **F.    Defendant has Knowingly Violated Numerous Federal and California Laws**

21       88.    Defendant has violated California Health & Safety Code § 110390 which makes it

22   unlawful to disseminate false or misleading food advertisements or statements on products and

23   product packaging or labeling or any other medium used to directly or indirectly induce the

24   purchase of a food product.

25       89.    Defendant has violated California Health & Safety Code § 110395 which makes it

26   unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

27

28

90. Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

91. Defendant has violated California Health & Safety Code § 110660 because its product labeling is false and misleading in one or more ways.

92. Defendant has violated California Health & Safety Code § 110740 because its products contain artificial coloring but fail to adequately disclose that fact on their labeling.

93. Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

94. Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented to be for special dietary uses, and their labels fail to bear information concerning their vitamin, mineral, and other dietary properties that federal regulations have prescribed as necessary in order fully to inform purchasers as to their value for such uses.

95. Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

96. Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

97. Defendant has violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the common and usual names of ingredients contained in its food products. Defendant has also violated the standards set by 21 C.F.R. §§ 101.3 and 131.110 and 131.200 by violating the Standard of Identity for milk and yogurt. Defendant also violated 21 C.F.R. §101.22 with its no coloring or preservative claims.

1    G.    **Plaintiffs Purchased Defendant's Misbranded Food Products**

2        98.    Plaintiffs care about the nutritional content of food and seek to maintain a healthy

3    diet.

4        99.    Plaintiffs purchased Defendant, Trader Joe's Misbranded Food Products, including

5    but not limited to the Trader Joe's French Village Mixed Berry and Strawberry Nonfat Yogurt

6    and the Trader Joe's Greek Style Vanilla Yogurt and the Trader Joe's Organic Chocolate Soy

7    Milk, with the listed ingredient "evaporated cane juice" or "organic evaporated cane juice" on

8    occasions during the Class Period. Plaintiffs also purchased Trader Joe's French Village

9    Strawberry Nonfat Yogurt with the artificial coloring and the Trader Joe's Dark Chocolate Peanut

10   Butter Salted Caramel Truffles with the added chemical preservative tocopherols.

11       100.    Plaintiff Amy Gitson purchased Defendant's Misbranded Food Products, including

12   but not limited to Greek Style Vanilla Nonfat Yogurt, French Village Strawberry Nonfat Yogurt,

13   French Village Mixed Berry Nonfat Yogurt and Dark Chocolate Peanut Butter Salted Caramel

14   Truffles.    Plaintiff Christine Vodicka purchased Defendant's Misbranded Food Products,

15   including but not limited to Organic Lowfat Strawberry Yogurt, French Village Strawberry

16   Nonfat Yogurt, Organic Soy Milk and Enchilada Sauce.    Plaintiff Deborah Ross purchased

17   Defendant's Misbranded Food Products, including but not limited to Greek Style Vanilla Nonfat

18   Yogurt.

19       101.    Plaintiffs read the labels on Defendant's Misbranded Food Products, including the

20   ingredient "evaporated cane juice" on the back panel, before purchasing them. Plaintiffs also saw

21   and relied on the Defendants false representations that all Trader Joe's branded products lacked

22   artificial coloring or preservatives. Plaintiffs would not have purchased Defendant's Misbranded

23   Food Products had Plaintiffs known that the Misbranded Food Products contained added artificial

24   coloring or added chemical preservatives.

25       102.    Plaintiffs would not have purchased Defendant's Misbranded Food Products had

26   Plaintiffs known that the Misbranded Food Products contained sugar or dried cane syrup.

27   Plaintiffs read the labels on Defendant's Misbranded Food Products, including the Ingredient,

28   "evaporated cane juice" on the labels before purchasing them.

103. Plaintiffs relied on Defendant's package labeling including the ingredient, "evaporated cane juice" and its use of the term milk on its soy beverages and based and justified their decision to purchase Defendant's products in substantial part on Defendant's package labeling including the ingredient, "evaporated cane juice" as well of its misuse of the standardized term milk.

104. At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had they known the truth about them.

105. At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's "evaporated cane juice" and "no preservative or coloring" claims as well as its misuse of the standardized term milk were unlawful and unauthorized as set forth herein, and would not have bought the products had they known the truth about them.

106. As a result of Defendant's unlawful "evaporated cane juice" and "no preservative or coloring" claims as well of its misuse of the standardized term milk, Plaintiffs and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

107. Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

108. A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's Misbranded Food Products had they known they were not capable of being legally sold or held.

109. As a result of Defendant's unlawful use of the unlawful term "evaporated cane juice" and its false no preservatives or coloring claims as well of its misuse of the standardized

1  terms milk and yogurt, Plaintiffs and the Class members purchased the Misbranded Food

2  Products at issue. Plaintiffs and the Class members have been proximately harmed, and

3  Defendant has been unjustly enriched, by Defendant's deceptive and unlawful scheme.

4  ## CLASS ACTION ALLEGATIONS

5      110.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure

6  23(b)(2) and 23(b)(3) on behalf of the following class:

7
8
9
10
> All persons in the United States or, in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's food products 1) labeled with the ingredient, "Evaporated Cane Juice" or "Organic Evaporated Cane Juice;" 2) containing added preservatives or artificial colors; or 3) represented to be a form of milk but failing to satisfy the standard of identity for milk (the "Class").

11      111.   The following persons are expressly excluded from each Class: (1) Defendant and

12  its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the

13  proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its

14  staff.

15      112.   This action can be maintained as a class action because there is a well-defined

16  community of interest in the litigation and each proposed Class is easily ascertainable.

17      113.   <u>Numerosity</u>: Based upon Defendant's publicly available sales data with respect to

18  the misbranded products at issue, it is estimated that each Class numbers in the thousands, and

19  that joinder of all Class members is impracticable.

20      114.   <u>Common Questions Predominate</u>: This action involves common questions of law

21  and fact applicable to each Class member that predominate over questions that affect only

22  individual Class members. Thus, proof of a common set of facts will establish the right of each

23  Class member to recover. Questions of law and fact common to each Class member include:

24
25
    a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its food products it sold to consumers;

26
27
    b.   Whether the food products at issue were misbranded as a matter of law;

28      c.   Whether Defendant made unlawful and misleading "evaporated cane juice" and no preservatives or coloring claims with respect to

its food products sold to consumers or misused the terms milk or yogurt on the products it sold consumers;

d. Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

e. Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f. Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

g. Whether Defendant was unjustly enriched by its deceptive practices.

115. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiffs bought Defendant's Misbranded Food Products during the Class Period. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and each Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of each Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members of each class and represents a common thread of misconduct resulting in injury to all members of each Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the member of each Class and are based on the same legal theories.

116. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of each Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of either Class's members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of each Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the member of each class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for each Class.

117.   Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of each Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of each Class member's rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

118.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

119.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to each class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

120.   Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

121. Plaintiffs incorporate by reference each allegation set forth above.

122. Defendant's conduct constitutes unlawful business acts and practices.

123. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

124. Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

125. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

126. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

127. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

128. Defendant sold Plaintiffs and the Class Misbranded Food Products that were not capable of being sold, or legally held and which had no economic value and were legally worthless. Plaintiffs and each Class paid a premium price for the Misbranded Food Products.

129. As a result of Defendant's illegal business practices, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

130. Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and each Class.

131.    As a result of Defendant's conduct, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### SECOND CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**<u>Unfair Business Acts and Practices</u>**

132.    Plaintiffs incorporate by reference each allegation set forth above.

133.    Defendant's conduct as set forth herein constitutes unfair business acts and practices.

134.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

135.    Plaintiffs and the members of each Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

136.    Defendant's deceptive marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial.

137.    Defendant sold Plaintiffs and the members of each Class Misbranded Food Products that were not capable of being legally sold or held and that had no economic value and were legally worthless. Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

138.    Plaintiffs and the members of each Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

139. The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor. Defendant's conduct is and continues to be unlawful, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the members of each Class.

140. As a result of Defendant's conduct, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Fraudulent Business Acts and Practices

141. Plaintiffs incorporate by reference each allegation set forth above.

142. Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

143. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

144. Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were capable of sale, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and the members of each Class were deceived. Defendant has engaged in fraudulent business acts and practices.

145. Defendant's fraud and deception caused Plaintiffs and the members of each Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

146. Defendant sold Plaintiffs and the members of each Class Misbranded Food Products that were not capable of being sold or legally held and that had no economic value and

1    were legally worthless. Plaintiffs and the members of each Class paid a premium price for the

2    Misbranded Food Products.

3        147.    As a result of Defendant's conduct as set forth herein, Plaintiffs and each Class,

4    pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

5    conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

6    Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

7    Products by Plaintiffs and the members of each Class.

8

9
                                   **FOURTH CAUSE OF ACTION**
                             **Business and Professions Code § 17500, *et seq.***
10                              **Misleading and Deceptive Advertising**

11       148.    Plaintiffs incorporate by reference each allegation set forth above.

12       149.    Plaintiffs assert this cause of action for violations of California Business and

13   Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

14       150.    Defendant sold Misbranded Food Products in California and throughout the United

15   States during the Class Period.

16       151.    Defendant engaged in a scheme of offering Defendant's Misbranded Food

17   Products for sale to Plaintiffs and the members of each Class by way of, *inter alia*, product

18   packaging and labeling, and other promotional materials. These materials misrepresented and/or

19   omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's

20   advertisements and inducements were made within California and throughout the United States

21   and come within the definition of advertising as contained in Business and Professions Code

22   §17500, *et seq.* in that such product packaging and labeling, and promotional materials were

23   intended as inducements to purchase Defendant's Misbranded Food Products and are statements

24   disseminated by Defendant to Plaintiffs and the members of each Class that were intended to

25   reach the members of each Class. Defendant knew, or in the exercise of reasonable care should

26   have known, that these statements were misleading and deceptive as set forth herein.

27       152.    In furtherance of its plan and scheme, Defendant prepared and distributed within

28   California and nationwide via product packaging and labeling, and other promotional materials,

1   statements that misleadingly and deceptively represented the composition and the nature of

2   Defendant's Misbranded Food Products. Plaintiffs and the members of each Class necessarily

3   and reasonably relied on Defendant's materials, and were the intended targets of such

4   representations.

5       153.    Defendant's conduct in disseminating misleading and deceptive statements in

6   California and nationwide to Plaintiffs and the members of each Class was and is likely to

7   deceive reasonable consumers by obfuscating the true composition and nature of Defendant's

8   Misbranded Food Products in violation of the "misleading prong" of California Business and

9   Professions Code § 17500, *et seq.*

10      154.    As a result of Defendant's violations of the "misleading prong" of California

11  Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the

12  expense of Plaintiffs and the members of each Class. Misbranded products cannot be legally sold

13  or held and have no economic value and are legally worthless. Plaintiffs and the members of

14  each Class paid a premium price for the Misbranded Food Products.

15      155.    Plaintiffs and the members of each Class, pursuant to Business and Professions

16  Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such

17  other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and

18  restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members

19  of each Class.

## FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Untrue Advertising

23      156.    Plaintiffs incorporate by reference each allegation set forth above.

24      157.    Plaintiffs assert this cause of action against Defendant for violations of California

25  Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

26      158.    Defendant sold Misbranded Food Products in California and throughout the United

27  States during the Class Period.

28

1   159.   Defendant engaged in a scheme of offering Defendant's Misbranded Food
2   Products for sale to Plaintiffs and the members of each Class by way of product packaging and
3   labeling, and other promotional materials. These materials misrepresented and/or omitted the true
4   contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and
5   inducements were made in California and throughout the United States and come within the
6   definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the
7   product packaging and labeling, and promotional materials were intended as inducements to
8   purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant
9   to Plaintiffs and the members of each Class. Defendant knew, or in the exercise of reasonable
10  care should have known, that these statements were untrue.

11  160.   In furtherance of its plan and scheme, Defendant prepared and distributed in
12  California and nationwide via product packaging and labeling, and other promotional materials,
13  statements that falsely advertise the composition of Defendant's Misbranded Food Products, and
14  falsely misrepresented the nature of those products. Plaintiffs and the members of each Class
15  were the intended targets of such representations and would reasonably be deceived by
16  Defendant's materials.

17  161.   Defendant's conduct in disseminating untrue advertising throughout California
18  deceived Plaintiffs and the members of each Class by obfuscating the contents, nature and quality
19  of Defendant's Misbranded Food Products in violation of the "untrue prong" of California
20  Business and Professions Code § 17500.

21  162.   As a result of Defendant's violations of the "untrue prong" of California Business
22  and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of
23  Plaintiffs and the members of each Class. Misbranded products cannot be legally sold or held and
24  have no economic value and are legally worthless. Plaintiffs and the members of each Class paid
25  a premium price for the Misbranded Food Products.

26  163.   Plaintiffs and the members of each Class, pursuant to Business and Professions
27  Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such
28  other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and

restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq.

164.    Plaintiffs incorporate by reference each allegation set forth above.

165.    This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary damages and is limited solely to injunctive relief. Plaintiffs intend to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

166.    At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

167.    Consequently, Plaintiffs and the members of each Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

168.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

169.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

170.    Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

171.    Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

172.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

173.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

174.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

175.    By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

176.    Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

177.    Plaintiffs incorporate by reference each allegation set forth above.

178.    As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Misbranded Food Products, Defendant was enriched at the expense of Plaintiffs and the members of each Class.

179. Defendant has sold Misbranded Food Products to Plaintiffs and each Class that were not capable of being sold or legally held and which had no economic value and were legally worthless. Plaintiffs and members of each Class paid a premium price for the Misbranded Food Products. It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the members of each Class, in light of the fact that the products were not what Defendant purported them to be. Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the members of each Class of all monies paid to Defendant for the products at issue.

180. As a direct and proximate result of Defendant's actions, Plaintiffs and the members of each Class have suffered damages in an amount to be proven at trial.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A. For an order certifying this case as a national class action, and also a separate and distinct California class action and appointing Plaintiffs and their counsel to represent each Class;

B. For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiffs and the Class for all causes of action other than the CLRA, as Plaintiffs do not seek monetary relief under the CLRA, but intend to amend this Complaint to seek such relief;

C. For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D. For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding punitive damages;

G. For an order awarding pre-and post-judgment interest; and

1    H.    For an order providing such further relief as this Court deems proper.

2

3    Dated: March 25, 2013.                    Respectfully submitted,

4

5                                              By: *Pierce Gore*
                                               Ben. F. Pierce Gore (SBN 128515)
6                                              PRATT & ASSOCIATES
                                               1871 The Alameda, Suite 425
7                                              San Jose, CA 95126
                                               Telephone: (408) 429-6506
8                                              Fax: (408) 369-0752
                                               pgore@prattattorneys.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28