CARLA CHRISTOFFERSON (S.B. #161111)
cchristofferson@omm.com
KATE IDES (S.B. #274820)
kides@omm.com
DANIEL J. FARIA (S.B. #285158)
dfaria@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407

RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

Attorneys for Defendant
Trader Joe's Company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AMY GITSON, CHRISTINE VODICKA and DEBORAH ROSS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>Defendant. | Case No. 13-CV-1333 WHO<br><br>**DEFENDANT TRADER JOE'S COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:     Hon. William H. Orrick<br>Hearing Date:  August 21, 2013<br>Hearing Time:  2:00 pm<br><br>FAC Filed:    June 28, 2013<br>Trial Date:    None set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2013, at 2:00 p.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom 2, 17th Floor, Defendant Trader Joe's Company will, and hereby does, move the Court for an order dismissing the causes of action set forth in the First Amended Class Action and Representative Action Complaint ("Complaint") filed by Plaintiffs Amy Gitson, Christine Vodicka, and Deborah Ross.  In this single Complaint, Plaintiffs lump together multiple theories of recovery in the same causes of action.  Their allegations are vague and conclusory, and they pertain to a variety of products (some specifically identified and some not) and to a variety of purported misrepresentations.  The only unifying thread is that the products at issue are sold at Trader Joe's.

Trader Joe's Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b), on the following grounds:

1. Plaintiffs lack standing to assert claims pertaining to products they never purchased.

2. Plaintiffs fail to plead with particularity their fraud-based claims, as required by Federal Rule of Civil Procedure 9(b).

3. No reasonable consumer would be deceived by the alleged mislabeling of certain products at issue—namely soy milk and those products containing evaporated cane juice—such that Plaintiffs fail to allege a plausible theory of reliance, causation, or injury as required by California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; False Advertising Law ("FAL"), *id.* §§ 17500 *et seq.*; and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

4. Federal preemption precludes a state-law claim alleging that product labels are misleading because the U.S. Food and Drug Administration ("FDA") purportedly considers them misleading under the Federal Food, Drug, and Cosmetic Act ("FDCA").

5. Plaintiffs' claims as to evaporated cane juice and the standard of identity of milk

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1    would require the Court to adjudicate issues in the primary jurisdiction of the FDA.

2       6.  No cause of action exists for "Restitution Based on Unjust Enrichment/Quasi-

3         Contract" in California.

4    Alternatively, Trader Joe's moves to strike, under Rule 12(f), those allegations that are

5 "redundant, immaterial, [or] impertinent."  Specifically, and for the reasons detailed in the

6 accompanying memorandum, paragraphs 1-13, 24-92, 96-106, 110, 121, 124, 132-33, 142, 147-

7 148, 150, 155-56, and 173-176 should be stricken from the Complaint.

8    The Motion is based on this Notice of Motion and Motion, the Memorandum of Points

9 and Authorities, the concurrently filed Request for Judicial Notice, the entire file in this matter,

10 and such other matters, both oral and documentary, as may properly come before the Court.

11

12    Dated:  July 12, 2013

O'MELVENY & MYERS LLP

13

14                 By:   /s/ Randall W. Edwards

15                     Randall W. Edwards
                   Attorneys for Defendant

16                   Trader Joe's Company

17

18

19

20

21

22

23

24

25

26

27

28

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

    A. Procedural Background ............................................................................... 2

    B. Scope of the Products at Issue ..................................................................... 3

III. ARGUMENT ..................................................................................................... 4

    A. Legal Standard ........................................................................................... 4

    B. Plaintiffs Lack Standing Related to Products They Have Not Purchased ............. 6

    C. Plaintiffs Have Failed to Plead Their Claims With Particularity For Many Products ................................................................................................... 10

        1. Plaintiffs Have Pled No Facts Regarding the Unidentified Products They Seek to Cover in Their Lawsuit ...................................... 10

        2. Plaintiffs' Single Allegation as to Organic Lowfat Strawberry Yogurt and Enchilada Sauce Fails to Meet the Rigorous Rule 9(b) Standard ...................................................................................... 11

        3. Plaintiffs Have Failed to Plead their No Additives Claims With Particularity ................................................................................. 11

    D. Plaintiffs Fail to Plead Plausible UCL, FAL, and CLRA Claims Pertaining to the Use of Evaporated Cane Juice and Soy Milk .......................................... 14

        1. A Reasonable Consumer Would Not Be Led To Believe that the Term "Soy Milk" Promises a Product With Comparable Quality, Taste, or Nutritional Benefits of Cow's Milk ...................................... 15

        2. A Reasonable Consumer Would Not Be Misled by Labels Listing Evaporated Cane Juice Given the Express Disclosure of Each Product's Sugar Content .................................................................. 18

    E. The FDA Does Not Prohibit "Evaporated Cane Juice" in Yogurt ......................... 20

    F. To the Extent They Attempt to Indirectly Enforce the FDCA, Plaintiffs' Claims are Impliedly Preempted Under *Perez v. Nidek Co.* .................................. 20

    G. In the Alternative, Plaintiffs' Soy Milk and Cane Juice Claims Should Be Dismissed or Stayed Under the Primary Jurisdiction Doctrine ............................ 22

    H. Plaintiffs' Claim for "Restitution Based on Unjust Enrichment/Quasi-Contract" Is Superfluous and Should be Dismissed with Prejudice .................... 25

IV. CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*All One God Faith, Inc. v. Hain Celestial Group, Inc.*, No. 09-
03517, 2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012)..........................................23

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
626 F. Supp. 278 (D. Mass. Jan. 14, 1986),............................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................5

*Barocio v. Bank of Am.*,
No. C 11-05636 SBA, 2012 U.S. Dist. LEXIS 128617 (N.D.
Cal. Sept. 10, 2012).................................................................................................................24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................5

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001)........................................................................................10, 13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)................................................................................................................21

*Cardona v. Target Corp.*,
No. CV 12-01148-GHK (SPx),
2013 WL 1181963 (C.D. Cal. Mar. 20, 2013) .......................................................................17

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371
(N.D. Cal. Jan. 10, 2011) ........................................................................................................7

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...........................................................................16, 17

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008)...............................................23

*Contreras v. Johnson & Johnson Consumer Cos.*,
No. CV 12-7099-GW(SHx), 2012 U.S. Dist. LEXIS 186949
(C.D. Cal. Nov. 29, 2012) .......................................................................................................7

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010).................................................................................................5

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 894 F. Supp. 2d
1285 (E.D. Cal. Sept. 6, 2012) ...............................................................................................24

*Daimler Chrysler Corp. v. Cuno*,
547 U.S. 332 (2006).................................................................................................................6

*Fraker v. KFC Corp.*,
No. 06-01284-JM (WMC), 2007 U.S. Dist. LEXIS 32041
(S.D. Cal. Apr. 30, 2007) ........................................................................................................21

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995)..................................................................................14, 15, 17

# TABLE OF AUTHORITIES

Page(s)

*Hairston v. South Beach Beverage Co.*,
No. CV 1201429-JFW (DTBx) .......................................................................... 17, 18

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) ................................................................................ 14

Order Granting Motion to Dismiss, *Hood v. Wholesoy & Co*., No.
12-cv-05550-YGR, (N.D. Cal. July 12, 2013), Dkt. No. 31 .................................. 5, 22, 23, 24

*Ivie v. Kraft Foods Global, Inc.*, No. C-12-025549, 2013 U.S. Dist.
LEXIS 93940 (N.D. Cal. June 28, 2013) ................................................................ 8, 9

*Johns v. Bayer Corp.*, No. 09-cv-1935 DMS (JMA), 2010 U.S.
Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) .......................................................... 7

*Jones v. Conagra Foods, Inc.*,
No. C 12-01633 CRB, 2012 U.S. Dist. LEXIS 178352 (N.D.
Cal. Dec. 17, 2012) ................................................................................................. 11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................... 5, 10, 12

*Khasin v. R. C. Bigelow, Inc.*,
No. C 12-02204 JSW, 2013 U.S. Dist. LEXIS 77084 (N.D. Cal.
May 31, 2013) ......................................................................................................... 7, 8

*Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 U.S. Dist.
LEXIS 69319 (N.D. Cal. May 15, 2013) ................................................................ 21

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ............................................................................................ 6

*Lanovaz v. Twinings N. Am., Inc.*,
No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612
(N.D. Cal. Feb. 25, 2013) ....................................................................................... 7, 24, 25

*Larsen et al. v. Trader Joe's Co.*,
No. C 11-05188 SI, 2012 U.S. Dist. LEXIS 162402
(N.D. Cal. June 14, 2012) ....................................................................................... 7, 10

*Loreto v. Procter & Gamble Co.*,
No. 10-4274, 2013 U.S. App. LEXIS 3813
(6th Cir. Feb. 22, 2013) .......................................................................................... 21

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555  (1992) ............................................................................................... 6

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) ................................................................................. 25

*McKinnis v. Kellogg USA*,
No. CV 07-2611 ABC (Rcx), 2007 U.S. Dist. LEXIS 96106
(C.D. Cal. Sept. 21, 2007) ...................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

*Meyer v. Sprint Spectrum, L.P.,*
   45 Cal. 4th 634 (2009) ............................................................................... 6

*Miller v. Ghirardelli Chocolate Co.,*
   No. C 12-04936 LB, 2012 U.S. Dist. LEXIS 174008
   (N.D. Cal. Dec. 7, 2012) ........................................................................ 7, 9

*Missaghi v. Apple Inc. et al.,* No. CV 130-2003 GAF (AJWx)
   (C.D. Cal. May 13, 2013), Dkt. No. 18 ................................................... 6, 7

*Mlejnecky v. Olympus Imaging Am. Inc.,*
   No. 2:10-cv-02630 JAM KJN, 2011 U.S. Dist. LEXIS 42333
   (E.D. Cal. Apr. 19, 2011) ............................................................................ 7

*Munoz v. MacMillan,*
   195 Cal. App. 4th 648 (2011) ................................................................... 25

*Perez v. Nidek Co.,*
   711 F.3d 1109 (9th Cir. 2013) .......................................................... 21, 22

*Pom Wonderful LLC v. Coca-Cola Co.,*
   679 F.3d. 1170 (9th Cir. 2012) ........................................................ 22, 23

*Reeves v. PharmaJet, Inc.,*
   846 F. Supp. 2d 791 (N.D. Ohio Feb. 3, 2012) ........................................ 21

*Rooney v. Cumberland Packing Corp.,*
   No. 12-CV-0033-H (DHB) .................................................................. 19, 21

*Rose v. Chase Bank USA, N.A.,*
   513 F.3d 1032 (9th Cir. 2008) .................................................................... 5

*Samet v. Procter & Gamble Co.,*
   No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432
   (N.D. Cal. June 18, 2013) .................................................................. passim

*Savage v. Glendale Union High Sch.,* 343 F.3d 1036
   (9th Cir. 2003), *cert. denied*, 541 US 1009 (2004) .................................. 5

*Sidney-Vinstein v. A.H. Robins Co.,*
   697 F.2d 880 (9th Cir. 1983) ...................................................................... 6

*Stephenson v. Neutrogena Corp.,*
   No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099
   (N.D. Cal. July 27, 2012) ............................................................................ 7

*Sugawara v. Pepsico, Inc.,*
   No. 2:08-cv-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127
   (E.D. Cal. May 21, 2009) .................................................................... 14, 15

*Syntek Semiconductor Co. v. Microchip Tech. Inc.,* 307 F.3d 775
   (9th Cir. 2002) .......................................................................................... 23

*Taradejna v. General Mills,* No. 12-00993, 2012 U.S. Dist. LEXIS
   174264 (D. Minn. Dec. 10, 2012) ...................................................... 23, 24

*Thomas v. Costco Wholesale Corp.,* No. 5:12-cv-02908 EJD, 2013
   U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013) ........................... 10, 13

# TABLE OF AUTHORITIES

Page(s)

*Verzani v. Costco Wholesale Corp.*,
  No. 09-02117 (CM), 2010 U.S. Dist. LEXIS 107699
  (S.D.N.Y. Sept. 28, 2010) ................................................................. 21

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ....................................................... 6, 10

*Videtto v. Kellogg USA*,
  No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114
  (E.D. Cal. May 21, 2009) ................................................................. 15

*Werbel ex rel. v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289
  (N.D. Cal. July 2, 2010) ............................................................. 14, 18

STATUTES

21 U.S.C. § 337(a) ............................................................................. 21

21 U.S.C. § 343(a)(1) .................................................................... 21, 23

21 U.S.C. § 343-1 ............................................................................... 21

21 U.S.C. § 343-1(a) .......................................................................... 22

21 U.S.C. § 393(b)(2) ................................................................... 20, 23

28 U.S.C. 2072 ..................................................................................... 7

Cal. Bus. & Prof. Code § 17204 .......................................................... 6

Cal. Bus. & Prof. Code § 17535 .......................................................... 6

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................... 1

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ........................................... 1

Cal. Civ. Code § 1780(a) ..................................................................... 6

Cal. Civ. Code §§ 1750 *et seq.* ......................................................... 1

Cal. HEALTH & SAFETY §§ 109875, *et seq.* .................................... 3, 9

OTHER AUTHORITIES

*Draft Guidance for Industry: Ingredients Declared as Evaporated*
  *Cane Juice*, 2009 WL 3288507 (Oct. 2009) (F.D.A. Oct. 2009) ............... 20

FDA, Draft Guidance for Industry; Availability, 74 Fed. Reg.
  51610 (Oct. 7, 2009) ......................................................................... 25

U.S. CONST. art. III ........................................................................ 1, 6

RULES

21 C.F. R. § 131.110 ......................................................................... 16

21 C.F.R. § 10.115(d) ............................................................. 19, 20, 22

21 C.F.R. § 101.13 ............................................................................ 16

21 C.F.R. § 101.14 ............................................................................ 16

21 C.F.R. § 101.54 ............................................................................ 16

# **TABLE OF AUTHORITIES**

**Page(s)**

21 C.F.R. § 101.72 ................................................................................................ 16

21 C.F.R. § 104.20(g) ........................................................................................... 16

21 C.F.R. § 104.20(h) ........................................................................................... 16

21 C.F.R. § 131.200 .............................................................................................. 20

21 C.F.R. § 131.200(d)(2) ..................................................................................... 20

21 C.F.R. § 168.130 .............................................................................................. 20

Fed. R. Civ. P. 12(b) ............................................................................................... 2

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 2, 5

Fed. R. Civ. P. 12(f) ...................................................................................... 2, 5, 13

Fed. R. Civ. P. 8 .................................................................................................... 11

Fed. R. Civ. P. 9(b) ....................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 2, 5

Fed. R. Civ. P. 26(f) ................................................................................................ 2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

Trader Joe's believes that all of its products are advertised appropriately and is prepared to defend them at the appropriate time. But a dismissal order is warranted now, at the pleading stage, to strip the Complaint of its deficient and otherwise legally improper claims. Despite Trader Joe's efforts to avoid motion practice and instead to facilitate the remedying of various pleading deficiencies via amendment, Plaintiffs' Complaint remains riddled with the same deficiencies as the original complaint. Plaintiffs still allege false advertising claims on several different theories and against an array of Trader Joe's products, including products Plaintiffs do not identify by name, let alone allege that they purchased. These scattershot claims were brought under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the False Advertising Law ("FAL"), *id.* §§ 17500 *et seq.*; and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, and can be generalized into three broad categories— that Trader Joe's allegedly misbranded products by (i) listing "evaporated cane juice" or "organic evaporated cane juice" as an ingredient on several yogurt products and soy beverages with the intent to actively conceal the sugar content of those products (the "Cane Juice Claims"); (ii) labeling soy beverages "soy milk" in order to create the false impression that soy beverages provide the same nutritional benefits as cow's milk (the "Soy Milk Claims"); and (iii) claiming its products do not contain certain additives when, in fact, they do (the "No Additives Claims").

At the threshold, Plaintiffs overreach because they lack standing under both Article III of the U.S. Constitution and under California state law to bring claims related to products they did not purchase. Plaintiffs identify eight products that they allegedly purchased, but they seek to have this lawsuit cover other, unidentified products as well. With respect to the unnamed products they do not allege they purchased, Plaintiffs have not suffered an injury in fact, or an economic injury under Plaintiffs' California causes of action, and the Court lacks jurisdiction to adjudicate such claims.

Plaintiffs' overreaching also includes their failure to plead the claims sounding in fraud with the requisite particularity. Plaintiffs provide no details about the products they have not

purchased, and they provide no details about two of the products they allege they purchased: Organic Lowfat Strawberry Yogurt and Enchilada Sauce. Plaintiffs also fail to plead sufficient facts about any misrepresentation as to the No Additive Claims.

Where Plaintiffs do plead facts about particular products, their claims cannot proceed for independent reasons. Plaintiffs' Cane Juice and Soy Milk Claims fail as a matter of law because no reasonable consumer could have been misled by labels that (1) expressly disclose the sugar content of each product and accurately describe the type of sugar used as "evaporated cane juice," or (2) use "soy milk" to describe beverages derived from soy, given the longstanding, common understanding of that product description.

In addition, federal law preempts Plaintiffs' claims to the extent they purport to be based on the FDA's non-binding statements regarding alleged violations of the FDCA. And, in the alternative, Plaintiffs' Soy Milk and Cane Juice Claims should be dismissed in deference to the primary jurisdiction of the FDA, as they would require this Court to answer highly technical food labeling questions without a clear indication of the FDA's position. And finally, Plaintiffs' seventh "cause of action," titled "Restitution Based on Unjust Enrichment/Quasi-Contract," should be dismissed because it is not an independent cause of action under California law, and Plaintiffs merely seek to duplicate a remedy sought in their other claims.

Trader Joe's believes that a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is the appropriate vehicle to challenge the deficient claims as to specific products, even though Plaintiffs have lumped into each cause of action separate challenges to multiple products. In the alternative, Trader Joe's seeks an order under Rule 12(f) striking those allegations as deficient.

## II.     **BACKGROUND**

### A.     **Procedural Background**

On March 25, 2013, Plaintiffs filed the original complaint. Dkt. No. 1. Thereafter, the parties twice agreed to extend the time for Trader Joe's to respond to the original complaint—the second time, expressly contemplating that Plaintiffs would have an opportunity to file an amended complaint in an attempt to address the pleading issues identified by Trader Joe's during the parties' Rule 26(f) meet and confer. Dkt. Nos. 19, 25. The parties later agreed to further

1   extend the time for Trader Joe's to respond so as to allow Plaintiffs additional time to file their

2   amended complaint, which eventually was filed on June 28, 2013.  Dkt. No. 27.

3           **B.        Scope of the Products at Issue**

4           In the original complaint, Plaintiffs alleged that Trader Joe's induced customers, via false

5   and misleading marketing materials and packaging, to purchase certain products by:  (1) listing

6   "evaporated cane juice" or "organic evaporated cane juice" (as opposed to sugar or dried cane

7   syrup) as an ingredient on certain products with the intent to actively conceal the sugar content of

8   those products (*see* Dkt. No. 1 at 1; *id*. ¶¶ 4-5, 51-56); (2) using milk to describe certain non-dairy

9   products, including soy beverages, so as to misled customers into believing that such products

10  deliver the same nutritional benefits as cow's milk (*id*. at 1; *id*. ¶¶ 78-87); and (3) claiming its

11  products do not contain certain additives when they do (*id*. at 1; *id.* ¶¶ 3, 12, 57-77).

12          These allegations encompassed a variety of products, many of which Plaintiffs did not

13  specifically identify in the complaint or allege they purchased.  Plaintiffs only identified eight

14  specific products they allegedly purchased:  French Village Mixed Berry Nonfat Yogurt, French

15  Village Strawberry Nonfat Yogurt, Organic Lowfat Strawberry Yogurt, Greek Style Vanilla

16  Nonfat Yogurt, Organic Chocolate Soy Milk, Organic Soy Milk, Dark Chocolate Peanut Butter

17  Salted Caramel Truffles, and Enchilada Sauce.  Dkt. No. 1 at ¶¶ 99-100.

18          Prior to filing the amended Complaint, one of the primary concerns expressed by Trader

19  Joe's to Plaintiffs was their failure to identify the products at issue with specificity and Plaintiffs

20  lack of standing to assert claims pertaining to products they have not purchased.  The amended

21  complaint does not narrow the scope of the products at issue.  Now, in addition to the products

22  allegedly purchased (which are the same eight products identified in the original complaint),

23  Plaintiffs' claims include any "Substantially Similar Products" sold at Trader Joe's, which they

24  define at paragraph 3 as:

25          Trader Joe's products that (i) make the same label representations, as described
            herein, as the Purchased Products, (ii) contain the same or most of the same
26          ingredients as the Purchased Produc[ts], and/or (iii) violate the same regulations of
            the Sherman Food Drug & Cosmetic Law, California Health & Safety Code §
27          109875, *et seq.* (the "Sherman Law") as the Purchased Products . . . .

28          While the definitions of Purchased Products and Substantially Similar Products (set forth

1   on the first and second pages of the amended Complaint) appear to delineate the contours of the

2   products at issue (Compl. ¶¶ 2, 3), Plaintiffs' class definition does not use these terms, and instead

3   is narrower and more closely comports with the scope of the products at issue in the original

4   complaint (*see id.* ¶ 106; *compare to* Dkt. No. 1 at 1).  Indeed, Plaintiffs hardly rely on the term

5   Purchased Products in the amended Complaint, and they never use the term Substantially Similar

6   Products after defining it.  Instead, Plaintiffs repeatedly rely on the term "Misbranded Food

7   Products," which only was defined in the original complaint.  In any event, the definition of

8   Substantially Similar Products does not explain whether it is intended to encompass products with

9   some similar ingredients but different labels, for example, or even how Trader Joe's (or the

10   Court) is to identify what products allegedly violate the Sherman Law.  Nor does the Complaint

11   allege that Plaintiffs purchased any of the purported "Substantially Similar Products."

12   With respect to the actual products that are identified by name, Plaintiffs' allegations have

13   several notable omissions.  As to the Cane Juice Claims, Plaintiffs do not allege that the products

14   implicated by these claims—French Village Mixed Berry and Strawberry Nonfat Yogurts, Greek

15   Style Nonfat Vanilla Yogurt, and Organic Chocolate Soy Milk—have as an ingredient any type of

16   sugar other than "evaporated cane juice."  Nor do they dispute that the labels plainly disclose the

17   grams of sugar per serving for each product.  As to the No Additives Claims, Plaintiffs do not

18   identify those specific food labels they contend are inaccurate, and they do not identify any

19   preservative or coloring made from an artificial ingredient.  And, as to the Soy Milk Claims,

20   Plaintiffs do not dispute that the labels of the products specifically identified in the Complaint—

21   Organic Chocolate Soy Milk and Organic Soy Milk—expressly state that soy milk is a non-dairy,

22   lactose free beverage.

23   Plaintiffs assert claims for unjust enrichment, as well as violations of the CLRA, the

24   unfair, unlawful, and fraudulent prongs of the UCL, and the FAL.

**III.   ARGUMENT**

**A.   Legal Standard**

27   Defendants may challenge a claim through a motion to dismiss when the court lacks

28   subject matter jurisdiction or when plaintiff fails to state a claim upon which relief can be granted.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1   Fed. R. Civ. P. 12(b)(1), 12(b)(6).  A Rule 12(b)(1) motion to dismiss tests the court's subject

2   matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir.

3   2003), *cert. denied*, 541 US 1009 (2004).  A motion to dismiss for lack of subject matter

4   jurisdiction should be granted if the complaint fails to allege facts sufficient to establish subject

5   matter jurisdiction or if affidavits or other evidence establish that a court lacks jurisdiction.  *Id.*;

6   *see also Khasin v. R. C. Bigelow, Inc.*, No. C 12-02204 JSW, 2013 U.S. Dist. LEXIS 77084, at *3

7   (N.D. Cal. May 31, 2013).

8          The Court also should dismiss the complaint if it does not contain enough facts to

9   establish the elements of a claim and is not "plausible on its face."  *Bell Atlantic Corp. v.*

10  *Twombly*, 550 U.S. 544, 570 (2007).  The Court need not accept conclusory allegations,

11  unreasonable inferences, or legal conclusions set out in the form of factual allegations.  *Ashcroft*

12  *v. Iqbal*, 556 U.S. 662, 681 (2009).  And the Court may properly consider documents attached to

13  the complaint and documents referenced by the complaint.  *E.g.*, *Coto Settlement v. Eisenberg*,

14  593 F.3d 1031, 1038 (9th Cir. 2010); *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG,

15  2013 U.S. Dist. LEXIS 86432, at *7-8 (N.D. Cal. June 18, 2013) (taking judicial notice of food

16  product labels at motion to dismiss stage).  Claims subject to preemption or primary jurisdiction

17  arguments also are properly addressed on a Rule 12 motion.  *E.g.*, *Rose v. Chase Bank USA, N.A.*,

18  513 F.3d 1032, 1038 (9th Cir. 2008); *See* Order Granting Motion to Dismiss, *Hood v. Wholesoy*

19  *& Co.*, No. 12-cv-05550-YGR, at *7-11 (N.D. Cal. July 12, 2013), Dkt. No. 31[1] (dismissing

20  "evaporated cane juice" and "soy yogurt" claims on primary jurisdiction grounds).

21         In addition, fraud-based claims, such as those at issue here, must be pled with particularity

22  under Fed. R. Civ. P. 9(b).  Plaintiff must describe the allegedly fraudulent statement, and detail

23  who made the statement, where and when it was made, that it was false when made, and how it

24  was false.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

25         Finally, under Rule 12(f), the Court "may strike from a pleading an insufficient defense or

26  any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The

27  function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

28

---

[1] Attached as Exhibit B to this Motion to Dismiss.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1    from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein*

2    *v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

3        **B.      Plaintiffs Lack Standing Related to Products They Have Not Purchased.**

4        Plaintiffs lack standing both under Article III of the United States Constitution ***and*** under

5    the statutory requirements of the UCL, FAL, and CLRA to bring claims related to products they

6    did not purchase.  To have standing under Article III of the United States Constitution, a plaintiff

7    must plead: (1) "injury in fact," (2) causation, and (3) redressability.  *Lujan v. Defenders of*

8    *Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).  Under

9    this standard, Article III confers subject-matter jurisdiction only where the "injury in fact" alleged

10   is "concrete and particularized" and "actual or imminent."  *Id.* at 560 (citations and internal

11   quotation marks omitted).  And, in this context, "particularized" means that the "injury must

12   affect the plaintiff in a personal and individual way."  *Id.* at 560 n.1 (citations and internal

13   quotation marks omitted).  The plaintiff also must show that there is a casual connection between

14   the injury and the conduct that is fairly traceable to defendant's challenged action, and that it is

15   likely that the injury will be "redressed by a favorable decision."  *Id.* at 560-61.  These

16   constitutional standing requirements apply to each cause of action.  *Daimler Chrysler Corp. v.*

17   *Cuno*, 547 U.S. 332, 352 (2006).

18       Economic injury in fact also is a required element of Plaintiffs' California statutory

19   claims.  Cal. Bus. & Prof. Code §§ 17204 & 17535 (UCL and FAL require injury in fact and  loss

20   of money or property as a result of alleged violation); *Kwikset Corp. v. Superior Court*, 51 Cal.

21   4th 310, 317, 320-27 (2011) (the test is whether plaintiffs "can truthfully allege they were

22   deceived by a product's label into spending money to purchase the product, and would not have

23   purchased it otherwise"); Cal. Civ. Code § 1780(a) (CLRA); *Meyer v. Sprint Spectrum, L.P.,* 45

24   Cal. 4th 634, 638 (2009) ("[A] plaintiff has no standing to sue under the CLRA without some

25   allegation that he or she has been damaged by an alleged unlawful practice").

26       Many courts have held that Plaintiffs lack standing for claims pertaining to products they

27   never purchased.  *E.g.*, Order Re: Motion to Dismiss & Strike, *Missaghi v. Apple Inc. et al.*, No.

28

- 6 -

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1   CV 130-2003 GAF (AJWx), at *12 (C.D. Cal. May 13, 2013), Dkt. No. 18[2]; *Lanovaz v. Twinings*

2   *N. Am., Inc.*, No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 25612, at *5 (N.D. Cal. Feb. 25,

3   2013); *Contreras v. Johnson & Johnson Consumer Cos.*, No. CV 12-7099-GW(SHx), 2012 U.S.

4   Dist. LEXIS 186949, at *5-6 (C.D. Cal. Nov. 29, 2012); *Larsen et al. v. Trader Joe's Co.*, No. C

5   11-05188 SI, 2012 U.S. Dist. LEXIS 162402, at *13-14 (N.D. Cal. June 14, 2012); *Carrea v.*

6   *Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371, at *7-8

7   (N.D. Cal. Jan. 10, 2011); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-cv-02630 JAM

8   KJN, 2011 U.S. Dist. LEXIS 42333, at *11-13 (E.D. Cal. Apr. 19, 2011); *Johns v. Bayer Corp.*,

9   No. 09-cv-1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010)

10  (plaintiff "cannot expand the scope of his claims to include a product he did not purchase or

11  advertisements relating to a product that he did not rely upon").  These cases adhere to the logic

12  of the Rules Enabling Act, which does not allow a procedural rule, like the class action device, to

13  change substantive law, like the requirement that the plaintiff suffered an injury with respect to

14  the defendant's product.  28 U.S.C. § 2072.  That simple logic should govern here.

15          Other courts have permitted a limited exception to allow standing for products plaintiffs

16  did not purchase "so long as the products and alleged misrepresentations are substantially similar"

17  to those the plaintiffs did purchase.  *E.g.*, *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936

18  LB, 2012 U.S. Dist. LEXIS 174008, at *17-20 (N.D. Cal. Dec. 7, 2012).  Even if this narrow

19  exception is recognized, it requires much greater similarity than merely lumping together

20  different products sold at the same store.  *See Larsen*, 2012 U.S. Dist. LEXIS 162402, at *12-14

21  (in action regarding "all natural" labeling practices, court dismissed plaintiffs' claims as to baked

22  goods not purchased by plaintiffs—specifically, crescent rolls—even though plaintiffs alleged

23  purchases of other baked goods—buttermilk biscuits and cinnamon rolls—all of which were sold

24  by same retailer and purportedly shared similar labeling defects); *Stephenson v. Neutrogena*

25  *Corp.*, No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099, at *2-3 (N.D. Cal. July 27, 2012)

26  (dismissing claims as to five of six Neutrogena Naturals products where plaintiff only alleged to

27  have purchased the purifying facial cleanser); *Khasin*, 2013 U.S. Dist. LEXIS 77084, at *9-11 (in

28

[2] Attached as Exhibit A to this Motion to Dismiss.

another false advertising action brought by Plaintiffs' lead counsel here, the court dismissed

claims for unpurchased black tea products where the alleged misrepresentations on those products

were not identical, in style and content, to the misrepresentations on the green tea products

plaintiffs allegedly purchased); *Ivie v. Kraft Foods Global, Inc.*, No. C-12-025549, 2013 U.S.

Dist. LEXIS 93940, at *30 (N.D. Cal. June 28, 2013) (in another false advertising action brought

by Plaintiffs' lead counsel here, the court found "allegations of 'similar packaging' insufficient to

meet the standing requirement" for unpurchased products).

Although lumped into collective causes of action, Plaintiffs in this case actually assert

many distinct claims related to different products and different alleged misrepresentations,

including general claims purporting to encompass unspecified products as to which no factual

allegations are made regarding any purchases by Plaintiffs.  Plaintiffs only allege they purchased

these eight products (collectively, the "Purchased Products"):

- French Village Mixed Berry Nonfat Yogurt,
- French Village Strawberry Nonfat Yogurt,
- Organic Lowfat Strawberry Yogurt,
- Greek Style Vanilla Nonfat Yogurt,
- Organic Chocolate Soy Milk[3],
- Organic Soy Milk,
- Dark Chocolate Peanut Butter Salted Caramel Truffles, and
- Enchilada Sauce.

Compl. ¶¶ 2, 94, 95.

Yet Plaintiffs attempt to sweep far more into their Complaint.  Their claims purport to

encompass any "Substantially Similar Products," which they define as:

> Trader Joe's products that (i) make the same label representations, as described herein, as the Purchased Products, (ii) contain the same or most of the same ingredients as the Purchased Produc[ts], and/or (iii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law") as the Purchased Products . . . .

Compl. ¶ 3.

This definition provides even less specificity than the prior overbroad and vague

---

[3] Although a generic paragraph asserts that this product was purchased by Plaintiffs (Compl. ¶ 94), the more specific allegations of each Plaintiff's purchases completely omit this product (*id.* ¶ 95).

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

definition, magnifying Plaintiffs' standing defects.[4]  Rather, Plaintiffs attempt to cure these

defects by describing the unpurchased and unidentified products as "substantially similar" to the

Purchased Products.  But just referring to these products as "substantially similar" (plainly a

reference to the Northern District's touchstone for standing in false advertising cases where a

plaintiff does not allege purchase of a product at issue) will not cure Plaintiffs' lack of standing to

bring claims pertaining to those products.  Plaintiff must actually provide sufficient detail to show

the substantial similarity.  *Miller*, 2012 U.S. Dist. LEXIS 174008, at *17-20; *Ivie*, 2013 U.S. Dist.

LEXIS 93940, at *30.

The Complaint implicates unpurchased products meeting one or more of the three

attributes set forth in the definition of Substantially Similar Products.  First, Substantially Similar

Products encompasses those Trader Joe's products that make the same labeling representations as

the Purchased Products regardless of the products' ingredient composition.  Substantially Similar

Products also sweeps in those products with roughly equivalent ingredient composition as the

Purchased Products, even if those products do not share the same labeling representations as the

Purchased Products and even if the ingredient composition of those products comport with their

associated labeling representations. And, lastly, Substantially Similar Products includes those

products that violate the same Sherman Law regulations as the Purchased Products, regardless of

the manner in which those products violate the Sherman Law and regardless of whether those

products share any other characteristics with the Purchased Products.

In sum, Plaintiffs' sweeping allegations potentially cover a variety of dissimilar products,

which may or may not be labeled or advertised the same way and which may or may not present

similar technical questions (such as whether an ingredient is artificial).  Plaintiffs seek to

implicate unspecified products linked only by their availability at Trader Joe's, regardless of

whether Plaintiffs actually purchased them, or actually saw, relied on, or were harmed by the

---

[4]In the original complaint, Plaintiffs defined the products at issue as:

> [those] products 1) labeled with the ingredient "evaporated cane juice" or "organic
> evaporated cane juice"; 2) containing added preservatives or artificial colors; or 3)
> represented to be a form of milk but failing to satisfy the standard of identity for milk . . . .

Dkt. No. 1 at 1.  The breadth of the products now at issue is, potentially, greater.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

alleged "misbranding."  The reported decisions do not allow anything approaching such a

sweeping disregard of fundamental principles of standing.  *E.g.*, *Larsen*, 2012 U.S. Dist. LEXIS

162402, at *12-14.  Without a purchase, Plaintiffs suffered no injury and lack standing under

Article III and the California causes of action asserted.  All claims pertaining to products

Plaintiffs did not purchase should be dismissed.

### C.     Plaintiffs Have Failed to Plead Their Claims With Particularity For Many Products.

Plaintiffs' claims sound in fraud and, therefore, must meet the particularity requirements

of Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

(9th Cir. 2003)(applying Rule 9(b) to UCL, FAL, and CLRA claims where such claims are

grounded or sound in fraud); *Kearns*, 567 F.3d at 1125.  "Mere conclusory allegations of fraud

are insufficient."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citations and

internal quotations omitted); *see also Vess*, 317 F.3d at 1106.  A complaint must provide the time,

place, and content of the alleged fraudulent representation or omission—"the who, what, when,

where, and how"—as well as the circumstances showing reliance on the alleged fraudulent

conduct.  *Vess*, 317 F.3d at 1106 (citations and internal quotations omitted).  Plaintiffs' Complaint

fails to meet this standard.

#### 1.     Plaintiffs Have Pled No Facts Regarding the Unidentified Products They Seek to Cover in Their Lawsuit.

Plaintiffs have only specifically identified (and alleged purchases of) eight products.

Compl. ¶¶ 2, 94-95.  As to the remaining, unidentified products that are purportedly misbranded,

Plaintiffs allege no specifics, including what the labels said and what false statements Trader

Joe's allegedly made, which allegedly false statements Plaintiffs were exposed to, when and

where Plaintiffs were induced to purchase the products in reliance on such statements, and how

Plaintiffs were damaged as a result.  Not surprisingly, courts dismiss fraud claims under Rule 9(b)

in such circumstances.  *See, e.g. Thomas v. Costco Wholesale Corp.*, No. 5:12-cv-02908 EJD,

2013 U.S. Dist. LEXIS 51189, at *9-13, 15-25 (N.D. Cal. Apr. 9, 2013) (dismissing claims as to

unspecified "Misbranded Food Products" under Rule 9(b) in another false advertising action

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1    brought by Plaintiff's lead counsel); *Jones v. Conagra Foods, Inc.*, No. C 12-01633 CRB, 2012

2    U.S. Dist. LEXIS 178352, at *31 (N.D. Cal. Dec. 17, 2012) (evaluating UCL, FAL, and CLRA

3    claims challenging "Hunt's Petite Diced Tomatoes in a 14.5 oz can and ***other Hunt's tomato***

4    ***products*** such as its tomato paste in an 8 oz. can" and finding claims as to "other Hunt's tomato

5    products" inadequate under Rule 9(b)) (emphasis added).

6       Here too the Court should dismiss all claims as to unnamed products for failure to plead

7    with particularity under Rule 9(b).  This is especially critical where, as here, different products

8    have different label designs (with different language and representations), different promotional

9    materials (if any), different ingredients, different manufacturers, and other differences (including

10   different evidence as to Plaintiffs' alleged use (if any)).

11
12               **2.**      **Plaintiffs' Single Allegation as to Organic Lowfat Strawberry Yogurt and Enchilada Sauce Fails to Meet the Rigorous Rule 9(b) Standard.**

13       Even with respect to two of the eight products that are named in the Complaint, the

14   allegations fall short of the exacting Rule 9(b) standard.  For both Organic Lowfat Strawberry

15   Yogurt and Enchilada Sauce, the Complaint includes one allegation only—that Plaintiff Vodicka

16   purchased these products from Trader Joe's.  Compl. ¶ 95.  No other allegations are made.

17   Plaintiffs' failure to assert any details regarding these products is fatal under Rule 9(b).[5]

18
19               **3.**      **Plaintiffs Have Failed to Plead their No Additives Claims With Particularity.**

20       Plaintiffs also have not pled the No Additives Claims with particularity.  In the

21   Complaint's section on No Additive Claims, Plaintiffs specifically identify two products:  the

22   French Village Strawberry Nonfat Yogurt and the Dark Chocolate Peanut Butter Salted Caramel

23   Truffles.[6]  *Id*. ¶ 54-55.  Plaintiffs' claims for these products both fail under the Rule 9(b) standard.

24

25    [5] Moreover, review of the labels for Organic Lowfat Strawberry Yogurt makes plain that none of the challenged statements appear on the labels.  Evaporated cane juice is not an ingredient in

26   these products, neither product is labeled "soy milk," and neither makes any claim regarding added colors, flavors, or preservatives. Declaration of Matt Sloan in Support of Trader Joe's

27   Request for Judicial Notice ("Sloan Decl.") at Exs. 5-6.  Because Plaintiffs cannot cure such a pleading defect, all claims as to this product ought to be dismissed with prejudice.

28   [6]Although not named in the Complaint's discussion of No Additive Claims, the Enchilada Sauce mentioned in passing elsewhere in the Complaint (*see* Compl. ¶ 95) has no evaporated cane juice

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

First, Plaintiffs fail to articulate the precise misrepresentation that provides the basis for their No Additives Claims. *Kearns*, 567 F.3d at 1126 (finding failure to comply with Rule 9(b) where plaintiff failed to specify what misrepresentations were made). Throughout the Complaint, Plaintiffs flip flop between alleging, among other iterations, that Trader Joe's promised "no ***artificial*** flavors, colors or preservatives" (*see* Compl. ¶¶ 53, 69 (emphasis added)) to alleging that Trade Joe's promised "no added colors or preservatives" (*see id*. ¶¶ 52, 53, 55, 70, 101, 105) to alleging that Trader Joe's represents that its products are "all natural" (*see id*. ¶ 64). While superficially similar, these representations actually promise different attributes. The first alleged representation promises no artificial flavors, colors, or preservative have been added to the products. The second promises no colors or preservatives have been added regardless of whether that additive is artificial. And the "all natural" representation appears to promise that the products are free of any artificial ingredients regardless of the ingredients' function.

Furthermore, Plaintiffs' vague references to Trader Joe's purported no-additives representations on product label designs, websites, and other advertising (*id.* ¶¶ 13, 57, 68) do not specifically identify when, where, and how Trader Joe's false and misleading representations were made, let alone when and where Plaintiffs were allegedly exposed to them or relied on them. This is fatal to Plaintiffs' No Additives Claims. *See Samet*, 2013 U.S. Dist. LEXIS 86432, at *33-34 (N.D. Cal. June 18, 2013) (in another false advertising action brought by Plaintiff's lead counsel here, the court dismissed claims pertaining to "healthy" and "wholesome" representations allegedly made on Defendants' labels and websites, where plaintiffs did not (i) provide the entire statement, or attach the labels at issue, (ii) identify which products were specifically at issue, or (iii) state where the purported misrepresentations were found or how Plaintiffs were actually misled by the representations).

The specifics of the allegation are important, as can be seen by examination of the products' labels. Plaintiffs allege that Trader Joe's makes untrue "all natural" claims regarding the food products. Compl. ¶¶ 64. But a review of the labels for each product identified in the

---

and is not labeled soy milk. Sloan Decl. at Ex. 11. Presumably, therefore, that product is intended to be named in the No Additives Claims. As discussed in subsection B.2, *supra*, the claims with respect to this product should be dismissed for lack of any particularized allegations.

Complaint refutes this assertion.  None contain an "all natural" claim.  *See* Sloan Decl. at Exs. 1-11.  Nor have Plaintiffs identified any "all natural" claim made elsewhere with respect to those products.  This Court should dismiss all claims pertaining to the "all natural" allegation; or, in the alternative, strike under Rule 12(f), as immaterial, those claims in paragraphs 58-67 that are limited to the "all natural" allegation.

In addition, the label designs for the French Village Strawberry Nonfat Yogurt does not include any claims about "no artificial flavors, colors, or preservatives," or "added colors or preservatives."  Sloan Decl. at Ex. 1.  With respect to this product, Plaintiffs take issue with the use of beet juice as an ingredient.  Compl. ¶¶ 65-72.  The thrust of their claim is that beet juice is an added coloring agent and that Trader Joe's falsely and misleadingly represented that this product was free of artificial colors.  *Id*.  Even putting aside the fact that beet juice is a natural ingredient, Plaintiffs' pleading fails because it does not identify where Trader Joe's made any representation about no added colors with respect to this product.

Likewise, the Dark Chocolate Peanut Butter Salted Caramel Truffles' label design says "no artificial colors or flavors" (Sloan Decl. at Ex. 10), but Plaintiffs' only specified allegation is that the truffles contain a "chemical preservative"—tocopherols.  Compl. ¶ 55.  Again, putting aside the fact that tocopherols are naturally derived, the pleading is deficient because Plaintiffs do not point to any alleged misrepresentation on the label.  And Plaintiffs provide no details regarding the specific location of any other allegedly false representations by Trader Joe's about these products, let alone any exposure to them and justified reliance to Plaintiffs' detriment.  Such barebones assertions do not meet the exacting pleading requirements of Rule 9(b).  *Bly-Magee*, 236 F.3d at 1019; *Thomas*, 2013 U.S. Dist. LEXIS 51189, at *15-25.  Accordingly, Plaintiffs' No Additives Claims should be dismissed.

To the extent Plaintiffs allege that Trader Joe's makes no-additives representations on its website and such claims are incorporated by reference onto the labels of the products, Plaintiffs' claims still fail.  While Plaintiffs allege that each Purchased Product's label refers to Trader Joe's website (Compl. ¶ 11 ("All Purchased products bear this website."), this is not the case, as a matter of judicially-noticeable fact.  None of the label designs for the Purchased Products

1    reference Trader Joe's website.  Sloan Decl. at Exs. 1-11.  And, therefore, Plaintiffs cannot save

2    their No Additives Claims by alleging exposure to website statements incorporated by reference

3    into the labels of the Purchased Products.  *See Samet*, 2013 U.S. Dist. LEXIS 86432, at *34

4    (holding plaintiffs failed to allege facts sufficient to support their claim that the website

5    constitutes labeling because they failed to establish that the labels at issue "contain[s] a specific

6    statement referring the consumer to a specific website for information about the claim in

7    question").  Moreover, Plaintiffs have not identified, with any specificity, the content of the

8    purported claims made on TJ's website or when and where Plaintiffs were exposed to and relied

9    on them.

10           **D.      Plaintiffs Fail to Plead Plausible UCL, FAL, and CLRA Claims Pertaining to
                       the Use of Evaporated Cane Juice and Soy Milk.**

11

12           Plaintiffs' Cane Juice and Soy Milk claims also fail because they are implausible as a

13   matter of law.  Whether labels or advertisements are deceptive under the UCL, FAL, and CLRA

14   is governed by the "reasonable consumer" standard.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th

15   1295, 1304 (2011); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (applying

16   reasonable consumer standard to UCL and FAL claims) (citations and internal quotations

17   omitted).  The "reasonable consumer " is not the "least sophisticated" or "unwary" consumer.  *Id*.

18   (citations and internal quotations omitted).  The "reasonable consumer" is the "ordinary consumer

19   within the larger population."  *Id*. (quotations and internal citations omitted).  Moreover, a

20   plaintiff's allegations that he or she was personally deceived are insufficient to show that a

21   reasonable consumer is likely to be deceived.  *Id*.

22           A court may reject false-labeling claims when it concludes as a matter of law, based on

23   review of the product packaging or other purportedly misleading materials at issue, that

24   reasonable people are not likely to be deceived by the product packaging.  *E.g.*, *Werbel ex rel. v.*

25   *Pepsico, Inc.*, No. C 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289, at *8-13 (N.D. Cal. July 2,

26   2010) (dismissing UCL, FAL, and CLRA claims where it was "obvious from the product

27   packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional

28   value from berries"); *Sugawara v. Pepsico, Inc*., No. 2:08-cv-01335-MCE-JFM, 2009 U.S. Dist.

LEXIS 43127, at *5-10 (E.D. Cal. May 21, 2009) (accord); *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114, at *3, 5-9 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL, and CLRA claims where a reasonable consumer would not have believed that "Froot Loops" cereal contained "real, nutritious fruit"); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (Rcx), 2007 U.S. Dist. LEXIS 96106, at *8-13 (C.D. Cal. Sept. 21, 2007) (same). Such is the case here with respect to several products at issue.

1. **A Reasonable Consumer Would Not Be Led To Believe that the Term "Soy Milk" Promises a Product With Comparable Quality, Taste, or Nutritional Benefits of Cow's Milk.**

Plaintiffs' Soy Milk Claims also fail as a matter of law as implausible and contrary to the label. Plaintiffs argue that Trader Joe's use of "soy milk" to describe soy beverages was misleading because soy milks do not comply with the FDA standard of identify for milk and they are "imitation milks" that are "not capable of complying with the standard of identity for milk and that in comparison with milk . . . []was an inferior product." Compl. ¶¶ 77, 82.

The viability of Plaintiffs' Soy Milk Claims thus turns on whether a reasonable consumer would be misled that products labeled "soy milk" in fact complied with the FDA's standard of identity for milk. Compl. ¶¶ 73-76. The FDA standard of identity defines milk as the "lacteal secretion, practically free of colostrum, obtained by the complete milking of one or more healthy cows." 21 C.F. R. § 131.110. Plaintiffs do not plead facts to show that a reasonable consumer scrutinizes the FDA's standards of identity and applies those standards when analyzing food labels. More fundamentally, as a matter of law, the FDA standard does not establish a reasonable consumer could not have been misled by the term "soy milk" as used on the challenged product.[7]

The soy milks' label designs leave no doubt that soy milk is different than cow's milk. Plaintiffs have specifically identified two products implicated by the Soy Milk Claims—Organic Chocolate Soy Milk and Organic Soy Milk. Compl. ¶¶ 2, 94-95. Shelf-stable Organic Chocolate

---

[7] Indeed, using the FDA standard as a proxy for what would allegedly mislead reasonable consumers leads to absurd results; it would preclude beverages commonly and correctly known as milk, such as lacteal secretions from a goat, from being labeled "milk."

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

Soy Milk, see below, and Organic Soy Milk are plainly emblazoned: "Non-Dairy Drink."[8]  Sloan

Decl. at Exs. 7, 9.



And neither promises the "comparable quality, taste or nutritional benefits" of cow's milk.  *Id.* at

Exs. 7,9.  No reasonable consumer who read the labels, as Plaintiff Vodicka alleges she did

(Compl. ¶¶ 95-96, 99), could have been misled that the soy milk products actually were lacteal

secretions from healthy cows.[9]  (Indeed, common sense confirms that most purchasers of soy

---

[8] While Plaintiff Vodicka does not identify whether the Organic Soy Milk she purchased was lowfat, Trader Joe's also sells refrigerated Lowfat Organic Soy Milk in its "West Coast Stores" (as defined in the Sloan Decl.), and that label design states twice that it is "lactose and dairy free." Sloan Decl. at Ex. 8.  And that soy milk is a "very popular alternative to dairy milk" and "can easily be used as a substitute for dairy."  *Id.*

[9] Plaintiffs discuss at length the allegedly disparate calcium content of soy and cow's milk (*e.g.* Compl. ¶¶ 78-82), but they fail to specify whether they intend to bring regarding these calcium allegations.  Comprehensive federal regulations govern the permissible range of calcium claims that may be made on a food label.  *See, e.g.*, 21 C.F.R. §§ 101.13, 101.14, 101.54, 101.72, 21 C.F.R. § 104.20(g)-(h).  And, to the extent Plaintiffs seek to argue that Trader Joe's is required to qualify calcium claims in any way not envisioned by these regulations, their Soy Milk Claims are expressly preempted.  *See* 21 U.S.C. § 343-1; *Chacanaca v. Quaker Oats Co.*, 752 F. Supp.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1   milk buy it because it is not cow's milk.)

2          The Ninth Circuit's opinion in *Freeman v. Time, Inc.* is instructive. The court affirmed

3   the dismissal of UCL, FAL, and CLRA claims on the grounds that, as a matter of law, a

4   reasonable consumer would not have been led to believe she won the "Million Dollar Dream

5   Sweepstakes" because the mailer "expressly and repeatedly state[d] the conditions which must be

6   met [first] in order to win." 68 F.3d at 289-90; *see also Rooney v. Cumberland Packing Corp.*,

7   No. 12-CV-0033-H (DHB), 2012 U.S. Dist. LEXIS 58710, at *10-13 (S.D. Cal. Apr. 16, 2012)

8   (dismissing claim that "Sugar in the Raw" was misleading). Here, like in *Freeman* and in

9   *Rooney*, prominent language on the label designs of the products at issue makes plain to any

10  reasonable consumer, especially those who say they have read the labels, that soy milk is not

11  cow's milk and does not promise identical benefits.

12         Even without the prominent language on the label designs highlighting the difference

13  between "soy milk" and "milk" as defined by the FDA, the term "soy milk" as a matter of law is

14  not misleading. The term "soy milk" has a long history and is a commonly used phrase, which is

15  demonstrated by reference to dictionary definitions. *See, e.g.*, *Cardona v. Target Corp.*, No. CV

16  12-01148-GHK (SPx), 2013 WL 1181963, at *10-122(C.D. Cal. Mar. 20, 2013) (considering, at

17  motion to dismiss stage, dictionary definitions in analyzing the common usage of "honey"). The

18  meaning of "soy milk" is established by at least nine well-known American English dictionaries,

19  including among others, The American Heritage Dictionary of the English Language; Merriam-

20  Webster's Unabridged Dictionary & Webster's II, New College Dictionary; the Oxford English

21  Dictionary (American English); and MacMillan. *See* Declaration of Daniel J. Faria ISO Trader

22  Joe's Request for Judicial Notice at Exs. 12-20. None define "soy milk" or "soymilk" as milk.

23  *Id.* And none promise that it will offer the same quality, the same taste, or same nutritional

24  benefits as "milk." *Id.* Plaintiffs cannot ignore that "soy milk" has a well-established meaning

25  separate and apart from the word "milk." *See Hairston v. South Beach Beverage Co.*, No. CV

26  1201429-JFW (DTBx), 2012 U.S. Dist. LEXIS 74279, at *12-13 (C.D. Cal. May 18, 2012)

27

28  2d 1111, 1118-22 (N.D. Cal. 2010) (dismissing as expressly preempted state law claims based on "0 grams trans-fat," "good source of calcium," and "good source of fiber" labels).

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1    ("Plaintiff's selective interpretation of individual words or phrases from a product's labeling

2    cannot support a CLRA, FAL, or UCL claim.").

3        Likewise, in *Werbel v. Pepsico, Inc.*, the court dismissed plaintiff's UCL, FAL, and

4    CLRA claims that consumers were "misled into believing that 'Cap'n Crunch's Crunch Berries'

5    cereal derives some of its nutritional value from real berries or fruit." 2010 U.S. Dist. LEXIS

6    76289, at *1. Reviewing Crunch Berries' packaging, the court concluded that such a theory was

7    "nonsense" and "that no reasonable consumer would believe that Cap'n Crunch derives any

8    nutritional value from berries." *Id.* at *9-10. Accordingly, plaintiff's UCL, FAL, and CLRA

9    claims were dismissed. *Id.* at *12-13. The court emphasized that the accompanying

10   representations and images on Crunch Berries' packaging illustrated that Crunch Berries were not

11   fruit and were not derived from fruit. *Id.* at *9-10. Likewise, reasonable consumers in this case

12   cannot have been misled by the use of "soy milk," as it is a distinct term with its own usage and

13   meaning—a fact that the packaging plainly supports. Plaintiffs' theory—that consumers see "soy

14   milk" and assume that it promises the same qualities, taste, and nutritional benefits of cow's

15   milk—is no more reasonable than consumers complaining that a "veggie burger" does not offer

16   the same nutritional benefits of beef.

17       Finally, Plaintiffs' cannot save their claims by pointing to the FDA's standard of identity

18   for "milk" and FDA warning letters to two soy milk manufacturers. Compl. ¶¶ 75-76. These

19   warning letters are not binding. *E.g.*, 21 C.F.R. § 10.115(d) ("Guidance documents do not

20   establish legally enforceable rights or responsibilities. They do not legally bind the public or

21   FDA"). Nor does either the standard of identity or the warning letters address reasonable-

22   consumer standard under state law or the critical context and express disclosures plainly set forth

23   on the soy milk products at issue. And, as discussed below, such claims are preempted on the

24   grounds that they cannot be premised on the FDA's purported interpretations of the FDCA.

25           2.    **A Reasonable Consumer Would Not Be Misled by Labels Listing
                   Evaporated Cane Juice Given the Express Disclosure of Each
26                 Product's Sugar Content.**

27       The crux of Plaintiffs' Cane Juice Claims is that Plaintiffs care about the nutritional

28   content of products, scrutinized the product labels before purchase, saw "evaporated cane juice"

1  listed as an ingredient but did not know that it was sugar, and purchased the product believing it

2  did not contain sugar.  Compl. ¶¶ 93, 96, 98-102.  Review of the labels for the products at issue—

3  Greek Style Vanilla Nonfat Yogurt, French Village Mixed Berry Nonfat Yogurt, French Village

4  Strawberry Nonfat Yogurt, and Organic Chocolate Soy Milk—makes clear that such theory is

5  plainly implausible.

6           The label designs for these products all disclose that these products contain sugar.  Sloan

7  Decl. at Exs. 1-3,7.  The ingredient lists accurately name the type of sugar as "evaporated cane

8  juice," and the Nutrition Facts panels—which rest prominently above the ingredient list on each

9  label—disclose each product's sugar content by number of grams per serving.  *Id.*  Plaintiffs do

10  not allege that these products contain any sweetener aside from "evaporated cane juice."  And

11  none of these labels promise that the products are sugar-free or contain any other language that

12  would lead an ordinary consumer to believe that the products do not contain any form of sugar.

13  *Id.*

14           Despite the express disclosure of each product's sugar content, Plaintiffs argue that they

15  reviewed the labels of these products but did not realize that the products contained sugar.[10]

16  Compl. ¶¶ 96, 98-101.  If Plaintiffs truly read the labels, as alleged, they could not reasonably

17  have relied on the absence of sugars in the products, given the express disclosures of sugars on

18  the labels.  Plaintiffs' myopic focus on the inclusion of "evaporated cane juice" in the ingredient

19  list, while ignoring the express disclosures about sugars, is fatal to their Cane Juice Claims.  *See,*

20  *e.g.*, *Rooney,* 2012 U.S. Dist. LEXIS 58710, at *10-13 (dismissing plaintiff's UCL, FAL, and

21  CLRA claims because a reasonable consumer cannot be led to believe that the brand name "Sugar

22  in the Raw" promises raw, unprocessed, and unrefined sugar where the product's packaging

23  plainly discloses that the product is "turbinado sugar" and the only reference to "raw" is the brand

24  name).

25

26  [10]In challenging the use of "evaporated cane juice," Plaintiffs also point to an informal draft
   guidance from the FDA.  Compl. ¶ 28.  Not only is the draft document not legally enforceable or

27  binding on either the FDA or the public, *see* 21 C.F.R. § 10.115(d), but it also does not support
   Plaintiffs' claimed confusion that evaporated cane juice is not sugar.  To the contrary, as quoted

28  in the Complaint at paragraph 48, the FDA's concern is that evaporated cane juice is not "juice."
   Compl. ¶ 28.  Plaintiffs do not even allege that they thought it was juice.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1

**E.**     **The FDA Does Not Prohibit "Evaporated Cane Juice" in Yogurt.**

2          In what appears to be an isolated, throw-away claim (although not pled as an independent

3   cause of action), Plaintiffs argue that listing "evaporated cane juice" as an ingredient in yogurt is

4   "unlawful" because the FDA standard of identity for yogurt, which can be found at 21 C.F.R. §

5   131.200, "prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the

6   standard of identity . . . [and] 'evaporated cane juice' is not included on the list of allowed

7   sweeteners." Compl. ¶¶ 43-45. Plaintiffs' argument misses the mark. Section 131.200(d)(2)

8   expressly allows "any of the sweeteners listed in part 168 of this chapter" to be included in

9   yogurt. Section 168.130, identifies "cane sirup" (or, alternatively, "cane syrup") as a sweetener.

10  The FDA has asserted that "dried cane syrup," which it states is a solid or dried form of "cane

11  syrup," is another name for "evaporated cane juice." *Draft Guidance for Industry: Ingredients*

12  *Declared as Evaporated Cane Juice*, 2009 WL 3288507 (Oct. 2009), at *2 (F.D.A. Oct. 2009).

13  Thus, under the logic of the FDA's October 2009 Draft Guidance, on which Plaintiffs rely

14  (Compl. ¶ 50), evaporated cane juice is allowable as an ingredient. The fact that Trader Joe's has

15  employed one name over another does not affect the permissibility of using that ingredient in

16  yogurt and, thus, Plaintiffs fail to plead a claim that is plausible on its face.

17

**F.**     **To the Extent They Attempt to Indirectly Enforce the FDCA, Plaintiffs'**
           **Claims are Impliedly Preempted Under *Perez v. Nidek Co.*.**

18

19         As pled, Plaintiffs' state-law claims are preempted by the federal FDCA. Trader Joe's

20  recognizes, as discussed below, that several courts in this District have found certain food-

21  labeling claims not to be preempted. But, as recently explained by the Ninth Circuit in *Perez v.*

22  *Nidek Co.*, state-law claims premised on alleged violations of the FDCA are preempted to the

23  extent the claims allege that conduct is unlawful ***because*** it violates federal law. 711 F.3d 1109,

24  1120 (9th Cir. 2013). Under that rule, significant portions of Plaintiffs' complaint should be

25  dismissed or stricken, as detailed below.

26         The FDA is responsible for investigating potential violations of the FDCA, which

27  provides the agency with broad authority to "protect the public health by ensuring that . . . foods

28  are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). The Act holds

that food is improperly labeled (or "misbranded") if, among other things, its labeling is false or misleading.  21 U.S.C. § 343(a)(1).  To protect the comprehensive system of labeling regulations established by the FDCA, Congress included in the Act both an express preemption provision, *see* 21 U.S.C. § 343-1, and an explicit bar on private enforcement, *see* 21 U.S.C. § 337(a).  In addition, the United States Supreme Court has held that state-law claims that exist solely by virtue of FDCA requirements are impliedly preempted because Congress intended that the Act's requirements be enforced exclusively by the Federal Government.  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-53 (2001).

The FDCA's express preemption provision did not preclude states from developing food-labeling standards, so long as those standards are "identical to" to those of the FDCA.  *See* 21 U.S.C. § 343-1(a); *Perez*, 711 F.3d at 1117-19.  However, there is a "narrow gap" through which state-law claims must fit to escape FDCA preemption:  "The plaintiff must be suing for conduct that *violates* the FDCA . . . or else his claim is expressly preempted . . . [but] must not be suing ***because*** the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)."  *Id.* at 1120 (emphasis added, citations and internal quotations omitted).

Numerous federal courts outside this District have refused to permit civil claims that would circumvent the FDCA's bar on private enforcement and pursue alleged violations of the Act under the guise of state-law claims.[11]  Although several courts in this District have permitted state-law claims alleging Sherman Law violations to proceed, *e.g.*, *Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 U.S. Dist. LEXIS 69319, at *22-26 (N.D. Cal. May 15, 2013) (citing cases), Trader Joe's submits that *Perez* supports the rejection of Sherman Law claims that do no more than create state-law liability for alleged violation of the FDCA.  Under that rule, Plaintiffs' claims should be dismissed in their entirety.

---

[11] *See, e.g.*, *Loreto v. Procter & Gamble Co.*, No. 10-4274, 2013 U.S. App. LEXIS 3813, at *4-6 (6th Cir. Feb. 22, 2013) (FDA authority is undermined where "savvy plaintiffs" cloak FDCA enforcement claims as state-law claims); *Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 283 (D. Mass. Jan. 14, 1986), *aff'd by* 802 F.2d 440 (1st Cir. 1986); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 797 (N.D. Ohio Feb. 3, 2012); *Verzani v. Costco Wholesale Corp.*, No. 09-02117 (CM), 2010 U.S. Dist. LEXIS 107699, at *8-9 (S.D.N.Y. Sept. 28, 2010); *Fraker v. KFC Corp.*, No. 06-01284-JM (WMC), 2007 U.S. Dist. LEXIS 32041, at *10 (S.D. Cal. Apr. 30, 2007).

At minimum, however, *Perez* dictates that Plaintiffs' state-law claims should be dismissed as preempted to the extent they seek to establish that food labels and advertisements were "misleading" because the FDA has allegedly found that "evaporated cane juice" and "soy milk" are unlawful terms or provided informal commentary on the word "natural." As a threshold matter, the FDA has made no final determination as to these terms, and the FDA has made clear that warning letters and other guidance materials are informal, provisional, and do not create legally enforceable rights. *E.g.*, 21 C.F.R. § 10.115(d) ("Guidance documents do not establish legally enforceable rights or responsibilities. They do not legally bind the public or FDA."). Moreover, for preemption purposes, a state-law claim cannot be premised on the FDA's interpretation of misbranding under the FDCA. This is a straightforward application of the principle that the FDCA impliedly preempts state-law claims asserting that conduct is unlawful ***because*** it constitutes an alleged violation of federal law. *Perez*, 711 F.3d at 1119-20. Thus, while Plaintiffs may enforce independent state-law duties coextensive with the FDCA, they may not base their claims on a theory that the FDA itself considers "evaporated cane juice," "soy milk" or other label statements misleading. Plaintiffs' first six causes of action should be dismissed to the extent they rely on these alleged FDA positions, and paragraphs 4, 27-42, 47-49, 51, 59-67, 74-76 and 81-82 should be stricken.

## G.   In the Alternative, Plaintiffs' Soy Milk and Cane Juice Claims Should Be Dismissed or Stayed Under the Primary Jurisdiction Doctrine.

In the alternative to dismissal on preemption grounds, this Court should dismiss or stay Plaintiffs' Soy Milk and Cane Juice Claims under the primary jurisdiction doctrine. *See* Order Granting Motion to Dismiss, *Hood,* Ex. B, at *7-11 (dismissing analogous "evaporated cane juice" and "soy yogurt" claims in matter brought by Plaintiffs' counsel here). As Judge Gonzalez Rogers recognized in *Hood*, the FDA is best suited to evaluate technical questions regarding the propriety of "evaporate cane juice" labeling and the appropriate labeling standard for soy products not falling neatly within federal regulations. *Id.* Plaintiffs' Soy Milk and Cane Juice claims would require this Court to answer such questions without a clear indication of the FDA's position, and should be dismissed in deference to the agency.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

Primary jurisdiction is a prudential doctrine under which "a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It applies "where there is: (1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

Congress plainly charged the FDA with the authority and power to develop a uniform, nationwide scheme of food labeling regulation. 21 U.S.C. §§ 343(a)(1), 393(b)(2); *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir. 2012). And, where an agency is currently considering revisions or proposed interpretations of a regulation within its enforcement authority, it would not be appropriate for litigation to cut short this deliberative process. *Hood*, Ex. B, at *7-8 ("[W]here determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue, courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate.") (citing cases); *Taradejna v. General Mills*, No. 12-00993, 2012 U.S. Dist. LEXIS 174264 (D. Minn. Dec. 10, 2012) (dismissing state law claims that milk protein concentrate could not be included in "Greek Yogurt"); *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, No. 09-03517, 2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012) (dismissing Lanham Act claim that beauty products could not be labeled "organic").

Although the FDA has issued, for comment purposes only, a draft guidance regarding "evaporated cane juice" labeling, it has not yet made a formal decision. *See* FDA, Draft Guidance for Industry; Availability, 74 Fed. Reg. 51610 (Oct. 7, 2009) (draft issued for comment purposes only). The guidance is clearly not a "legally enforceable standard," but rather a "suggestion" not entitled to binding effect. *Hood*, Ex. B a *9 ("[I]t is unclear why FDA subsequently has issued two warning letters citing that guidance. At a minimum, this indicates to

1   the Court that the FDA's position is not settled."); *see also*, *CytoSport, Inc. v. Vital*

2   *Pharmaceuticals, Inc.*, 894 F. Supp. 2d 1285, 1293-94 (E.D. Cal. Sept. 6, 2012) ("FDA warning

3   letters are informal and advisory, and do not amount to an FDA action."). Accordingly, and as

4   held in the face of identical claims, the primary jurisdiction doctrine dictates against allowing

5   Plaintiffs' Cane Juice claims to proceed. *Hood*, Ex. B at *7-11; *but see Samet*, 2013 U.S. Dist.

6   LEXIS 86432, at *26-29 (outlining Mag. Judge Grewal's opinion to the contrary, but resting on

7   the flawed premise that the FDA has already made a firm decision as to the propriety of

8   "evaporated cane juice" labeling).

9          Similarity, the FDA has the authority to resolve ambiguities regarding the standard of

10  identity for milk and is better suited to do so. *See, e.g. Taradejna,* 2012 U.S. Dist. LEXIS

11  174264, at *17 (noting that interpreting the standard of identity for yogurt was "a matter requiring

12  scientific and nutritional expertise," and that "the FDA's ultimate decision . . . will ensure

13  national uniformity in labeling, utilizing the Agency's special expertise[.]"); *Hood*, Ex. B, at *9-

14  11 (finding that the FDA is in the best position to resolve ambiguities concerning the standard of

15  identity of "soy yogurt").  The FDA is in a better position to develop a nationwide practice for

16  "soy milk" labeling and avoid the industry-wide confusion that would stem from a patchwork of

17  judicial decisions on the topic.  And, as recognized in *Hood*, unresolved questions regarding the

18  standard of identity of dairy products requires complex factual determinations better suited for the

19  FDA.  Ex. B, at * 10 (dismissing as contradictory an argument that such decisions would be

20  simple, and, specifically, that misbranding claims as to "soy yogurt" would only require an

21  inquiry into whether soy yogurt contains milk).[12]

22         If Plaintiffs take issue with industry-wide labeling practices and require authoritative

23  opinions on complex food labeling issues, they should not be permitted to circumvent

24  administrative remedies readily available to them, and should exercise their right to petition the

25  FDA.  And the Court also should dismiss Plaintiffs' Soy Milk Claims in deference to the primary

---

[12] Although Plaintiffs may argue otherwise, *Hood* is not limited on its facts to "soy yogurt" claims
and did not hold that two, isolated warning letters regarding "soy milk" labeling resolve
ambiguities regarding the FDA's position.  Rather, it noted only that these letters did not "provide
clear guidance for food producers or the Court," and were not dispositive of the FDA's position
on soy yogurt labeling. Ex. B, at *10.

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

1  jurisdiction of the agency.

2  ### H.  Plaintiffs' Claim for "Restitution Based on Unjust Enrichment/Quasi-Contract" Is Superfluous and Should be Dismissed with Prejudice.

3

4  Plaintiffs label their Seventh Cause of Action "Restitution Based on Unjust

5  Enrichment/Quasi-Contract."  Compl. at 33.  The purported basis for this standalone claim is the

6  same, unsupported allegation underlying the first six causes of action—that Trader Joe's

7  customers paid a premium for allegedly "legally worthless," misbranded products *Id*.  Plaintiffs'

8  Seventh Cause of Action should be dismissed for two reasons.

9  First, restitution is an alternative form of relief and is not a freestanding cause of action in

10  California.  *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011).  Numerous courts recognize

11  that unjust enrichment is also not an independent cause of action.  *See, e.g.*, *Low v. LinkedIn*

12  *Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *McBride v. Boughton*, 123 Cal. App. 4th

13  379, 387 (2004).  At most, it is a theory of relief applicable to remedy the breach of an implied-

14  in-law contract, a circumstance not alleged here.

15  Second, causes of action for restitution or unjust enrichment are "superfluous" and should

16  be dismissed with prejudice when they duplicate false advertising claims.  *E.g.*, *Lanovaz*, 2013

17  U.S. Dist. LEXIS 25612, at *20 ("[This] claim is simply a reformulation of [plaintiff's] UCL,

18  FAL and CLRA claims.  Restitution is already a remedy under the UCL, so plaintiff's restitution

19  claim is superfluous."); *accord Samet*, 2013 U.S. Dist. LEXIS 86432, at *37.

20  ## IV.  CONCLUSION

21  Trader Joe's respectfully seeks an order dismissing each of Plaintiffs' causes of action

22  with respect to each implicated product or, in the alternative, an order striking paragraphs 1-13,

23  24-92, 96-106, 110, 121, 124, 132-33, 142, 147-148, 150, 155-56, and 173-176.

24  Dated:  July 12, 2013                    O'MELVENY & MYERS LLP

25

26  By:  /s/ Randall W. Edwards
                                              _____
27                                            Randall W. Edwards
                                              Attorneys for Defendant
28                                            Trader Joe's Company

TRADER JOE'S MOTION TO DISMISS
13-CV-1333 WHO

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

### ORDER RE: MOTION TO DISMISS & STRIKE

## I.
## INTRODUCTION

        Plaintiff Ross Missaghi brings this putative class action against Defendant Apple, Inc. on the basis that the iPhone 4 and 4s contains a design defect.  Specifically, Plaintiff alleges that after a number of uses, the iPhone power button becomes stuck, rendering many functions of the device unusable.  On behalf of apparently all iPhone 4 and 4s purchasers, over an uncertain period of time, Plaintiff asserts six claims relating to breach of warranty.

        Apple removed this case from the Los Angeles County Superior Court on March 21, 2013 on the basis of the Class Action Fairness Act ("CAFA").  (Docket No. 8, [Not. of Removal].)[1] Apple now seeks to have the First Amended Complaint ("FAC") dismissed on the bases of Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that Plaintiff lacks standing and all of his claims are inadequately pleaded.  (Docket No. 12-1, [Mot. to Dismiss ("Mem.")] at 5-15.)  Additionally, or in the alternative, Apple seeks to strike: (1) Plaintiff's allegations regarding a device he did not purchase; (2) Plaintiff's injunctive relief remedy; and (3) Plaintiff's class definition.  (Id. at 15-21.)

        For the reasons that follow, the Court finds that Plaintiff lacks standing and Plaintiff's claims are inadequately pleaded.  Accordingly, the Court **GRANTS** Apple's motion to dismiss.

---

        [1] Apple did not remove on the basis of federal question jurisdiction though Plaintiff asserts one claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et. seq.

Exhibit A    Page 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title | Ross Missaghi v. Apple Inc et al | | |

Because the Court is granting leave to amend in part, the Court will consider Apple's motion to strike and additionally **STRIKES** Plaintiff's allegations directed at a product he did not purchase and his injunctive relief remedy. The Court declines at this time to strike Plaintiff's class definition.

**II.**
**BACKGROUND**

Plaintiff's FAC is light on factual allegations. (Not. of Removal, Ex. A [First Am. Compl. ("FAC")].) Plaintiff alleges that on October 15, 2011, he purchased either an iPhone 4 or 4s. (Id. ¶ 7.) Plaintiff alleges that, on information and belief, "the foregoing iPhone 4 was defective and unsuitable for its intended use" because "after a number of uses, the power button on the iPhone 4 becomes stuck," thus preventing a user from powering off or rebooting the phone. (Id. ¶ 8.) Plaintiff alleges that this is a design defect, which exists in all iPhone 4 devices. Plaintiff further alleges that, on information and belief, "virtually all iPhone 4s have a power button that either 1) is already unusable following normal and customary use, or 2) will eventually become unusable, following normal and customary use." (Id. ¶ 9.)

Plaintiff alleges that Apple instructed him "that the foregoing defect is not repairable, and that once the damage caused by the foregoing design defect has manifested, the user must either continue to use the iPhone 4 in its diminished state or purchase a replacement for $199.00." (Id. ¶ 10.) However, on information and belief, Plaintiff alleges "that the foregoing information was in fact false, that Apple Inc. was aware that it was false, and that the defect can in fact be repaired for a fraction of the cost of a refurbished iPhone 4." (Id.) Plaintiff further alleges that because of this defect, all iPhone 4s have decreased in value. (Id. ¶ 11.)

On the basis of these facts, Plaintiff brings claims for: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) unjust enrichment; (4) violation of the Magnuson-Moss Warranty Act ("MMA"), 15 U.S.C. §§ 2301, et seq.; (5) unlawful business practices in violation of Cal. Bus. & Prof. Code § 17531; and (6) fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq ("UCL"). Although it is not clear, Plaintiff appears to bring these claims on behalf of a class consisting of all purchasers of iPhone 4 and 4s devices over an unspecified time period. (Id. ¶¶ 2-3.)

/ / /

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title | Ross Missaghi v. Apple Inc et al | | |

**III.**
**DISCUSSION**

Apple moves to dismiss on the bases of both 12(b)(1) and 12(b)(6). The Court will address each in turn.

**A. 12(B)(1)**

**1. LEGAL STANDARD**

Federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Federal courts must determine issues of subject matter jurisdiction before considering the merits of a case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coalition v. United States EPA, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). Lack of subject matter jurisdiction is grounds for dismissal under Federal Rule of Civil Procedure 12(b)(1). See Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**2. APPLICATION**

Supreme Court precedent teaches that

the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, . . . . Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). In other words, "[t]o establish standing under Article III of the Constitution, a plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

must demonstrate injury-in-fact, causation, and redressability." Perea v. Walgreen Co., 2013 U.S. Dist. LEXIS 53404, at *14 (C.D. Cal. Apr. 11, 2013). In the class action context, "if the representative parties do not have standing, the class does not have standing." Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995).

Apple argues that here, "Plaintiff never alleges that he ***personally*** suffered any injury whatsoever. He never explains which device he purchased and never alleges that the power button on ***his*** iPhone ever malfunctioned ***at all*** . . . ." (Mem. at 6, emphasis in original.) Though Plaintiff alleges that "all iPhone 4s have been diminished in value," (FAC ¶ 11), Apple avers that "Plaintiff never explains how (if at all) ***his*** iPhone has been 'diminished in value,' and the court need not accept Plaintiff's bare allegations that some unidentified injury has occurred . . . ." (Mem. at 6.) Plaintiff essentially concedes that he never pleaded any personal injury in his FAC, stating that "[a]lthough it would appear to be implied from the other facts set forth in the First Amended Complaint, Plaintiff can amend the complaint to make that fact clear." (Docket No. 13, [Opp. to Mot. to Dismiss ("Opp.")] at 8.)

Apple is correct. Plaintiff has failed even to plead which product he purchased, and has neither explicitly nor implicitly alleged that he suffered any personal harm whatsoever. He has neither alleged that his iPhone suffered from any defect, nor that his iPhone suffered a diminution in value. And the Court does not accept the conclusory and unsupported statement that, upon information and belief, "all iPhone 4s have been diminished in value." (FAC ¶ 11.) In these circumstances, Plaintiff has failed to establish standing to pursue the alleged claims.

On this basis, Plaintiff's FAC is **DISMISSED with leave to amend**. Though the Court dismisses on this basis, the Court will address the remainder of Apple's motion.

**B. 12(B)(6)**

**1. LEGAL STANDARD**

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120-21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on either (1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

1996) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984)).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to allow a complaint to survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief. <u>Id.</u> at 1950.

A complaint generally need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citation, alteration, and internal quotations omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). That is, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Iqbal</u>, 556 U.S. at 678-79; <u>see also</u> <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).

**2. APPLICATION**

**a. *Breach of Express and Implied Warranty***

**i. Warranty Period**

Apple asserts that Plaintiff's first and second claims - breach of express and implied warranty, respectively - fail "because Plaintiff has not alleged that his iPhone malfunctioned within the one-year express warranty or that Apple refused to honor that warranty." (Mem. at 7.) Apple further argues that Plaintiff cannot "use his implied warranty claim to extend the terms of Apple's express warranty." (<u>Id.</u>) Plaintiff declines to address these arguments.

"In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty

LINK: 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

which proximately causes plaintiff injury." Williams v. Beechnut Nutrition Corp., 229 Cal. Rptr. 605, 608 (Cal. App. 2d Dist. 1986). On the other hand, the implied warranty of merchantability arises by operation of the law, guaranteeing:

> [T]hat consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description[;] (2) Are fit for the ordinary purposes for which such goods are used[;] (3) Are adequately contained, packaged, and labeled[;] [and] (4) Conform to the promises or affirmations of fact made on the container or label.

Cal. Civ. Code § 1791.1(a). However, "[t]he duration of the implied warranty of merchantability is coextensive with any express warranty, but in no case [may be] shorter than sixty days or longer than one year following sale of goods." Baltazar v. Apple, Inc., 2011 U.S. Dist. LEXIS 13187, at *6-7 (N.D. Cal. Feb. 10, 2011) (alteration in original) (citing Cal. Civ. Code § 1791.1(c)); see also Mathison v. Bumbo, 2008 U.S. Dist. LEXIS 108511, at *22 (C.D. Cal. Aug. 18, 2008).[2]

> As Plaintiff sets forth in his FAC, the Apple express warranty states:

> Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014 ('Apple') warrants the Apple-branded iPhone, iPad or iPod hardware product and accessories contained in the original packaging ('Apple Product') against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ('Warranty Period'). Apple's published guidelines include but are not limited to information contained in technical specifications, user manuals and service communications.

(FAC ¶ 16.) The implied warranty, therefore, is coextensive with the one-year express warranty. At no point does Plaintiff indicate when his iPhone malfunctioned (assuming that it did), and therefore has failed to allege whether there was any malfunction within the warranty period.

---

[2] The Court is familiar with doctrine regarding latent defects set forth in Mexia v. Rinker Boat Co., Inc., 95 Cal. Rptr. 3d 285, 295 (Cal. App. 4th Dist. 2009), but finds that case - which Plaintiff fails to cite - inapplicable to this action. As one court recently noted, "Mexia concerns latent defects that render the product unmerchantable from the outset." Marchante v. Sony Corp. of Am., 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011). Plaintiff fails to allege that the relevant devices failed to function properly from the outset. Plaintiff affirmatively states that the devices functioned properly for 1.5 years. (Opp. at 2.)

Exhibit A
Page 31

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title | Ross Missaghi v. Apple Inc et al | | |

### ii. Pre-suit Notice

Apple further argues that "Plaintiff's warranty claims also fail . . . [because] he does not allege that he gave pre–suit notice to Apple within a reasonable time after discovering this alleged breach of warranty." (Mem. at 8.) Apple cites Cal. Com. Code § 2607 for the proposition that "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy . . . ." Cal. Com. Code § 2607(3)(A). "To avoid dismissal of a breach of contract or breach of warranty claim in California, a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." Alvarez v. Chevron Corp., 656 F.3d 925, 932 (9th Cir. 2011). The Ninth Circuit further held that "the notice requirement means pre-suit notice." (Id.) "The question of whether notice was reasonable must be determined from the particular circumstances . . . ." Fieldstone Co. v. Briggs Plumbing Products, Inc., 62 Cal. Rptr. 2d 701, 709 (Cal. App. 4th Dist. 1997).

Plaintiff argues that he in fact did give pre-suit notice, which he believes "is fairly clearly implied" from his FAC by "the act of bringing the defect to the attention of Defendant that resulted in the fraudulent representation that the defect could not be repaired . . . ." (Opp. at 6.) However, Plaintiff implicitly acknowledges the giant inferential leap this would take and "concede[s] that amendment of the Complaint is in order, and requests leave to amend." (Opp. at 6.) Plaintiff makes no indication in his FAC when "notice" was allegedly brought, how notice was brought, or to whom Plaintiff gave notice such that reasonableness could be determined. Plaintiff did not adequately allege notice.

### iii. Conclusion

Because Plaintiff has failed to allege that the defect occurred within the warranty period and has inadequately alleged that pre-suit notice was given, Plaintiff's express and implied warranty claims are **DISMISSED**. The Court has serious doubts that Plaintiff can allege that the defect occurred within the warranty period given his statement in his opposition that "[t]he defect is that the power switch becomes nonfunctional, generally about 6 months after the expiration of the one-year warrant . . . ." (Opp. at 2.) Nonetheless, the Court will permit Plaintiff **leave to amend**.

#### b. *Magnuson-Moss Warranty Act*

Apple argues that "Plaintiff's claim for a violation of the MMA depends on his express and implied warranty claims under California law - and because Plaintiff has failed to state any warranty claim under California law, his claim under the MMA necessarily fails as well."

CV-90 (06/04)      **CIVIL MINUTES - GENERAL**      Page 7 of 14

Exhibit A  Page 32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title    | Ross Missaghi v. Apple Inc et al | | |

(Mem. at 9.)  Plaintiff agrees that his MMA claim depends upon his state law warranty claims, though he disputes whether his warranty claims fail.  (Opp. at 6.)

It is undoubtedly true, as Plaintiff recognizes, that "disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008); see also Gertz v. Toyota Motor Corp., 2011 U.S. Dist. LEXIS 94183, at *18 (C.D. Cal. Aug. 22, 2011) ("A viable MMWA claim requires a plaintiff to successfully plead a violation of state warranty law.")  Because Plaintiff's warranty claims were dismissed with leave to amend, Plaintiff's MMA claim is similarly **DISMISSED with leave to amend**.

### c.  *Unjust Enrichment*

Plaintiff seeks restitution for benefits conferred on and unjustly retained by Apple through the purchase of Apple's iPhone 4s despite Apple's knowledge of the alleged defects.  (FAC ¶¶ 35-39.)  Apple argues that unjust enrichment is not recognized as a separate cause of action in California, rather it is a general legal principle that underlies other doctrines and remedies.  (Mem. at 14-15.)  The Court notes, however, a more damning problem with Plaintiff's unjust enrichment claim: the existence of a valid, enforceable contract is undisputed.

Technically speaking, "unjust enrichment is not a cause of action . . . .  Rather, it is a general principle underlying various doctrines and remedies . . . ."  Jogani v. Superior Court, 81 Cal. Rptr. 3d 503, 512 (Cal. App. 2d Dist. 2008); see also Durell v. Sharp Healthcare, 108 Cal. Rptr. 3d 682, 699 (Cal. App. 4th Dist. 2010) ("[T]here is no cause of action in California for unjust enrichment. . . .  Unjust enrichment is synonymous with restitution.") (internal quotations and citations omitted).  However, courts have recognized that an unjust enrichment remedy can be based on a quasi-contract theory.  See Paracor Fin., Inc. v. GE Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) ("[U]njust enrichment is an action in quasi-contract."); Berenblat v. Apple, Inc., 2009 U.S. Dist. LEXIS 80734, at *18 (N.D. Cal. Aug. 21, 2009) ("[A] claim for unjust enrichment cannot stand alone without a cognizable claim under a quasi-contractual theory or some other form of misconduct.").  Plaintiff's claim here plainly sounds in quasi-contract.

That said, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."  Lance Camper Manufacturing Corp. v. Republic Indemnity Co., 51 Cal. Rptr. 2d 622, 628 (Cal. App. 2d Dist. 1996).  The Parties do not dispute the existence of an express warranty covering the exact subject matter - the iPhone defect - as Plaintiff's unjust enrichment claim.  Despite Plaintiff having pleaded this claim in the alternative, it is evident that the claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

cannot lie. Plaintiff "must allege that the express contract is void or was rescinded in order to proceed with its quasi-contract claim." Id.; see also Tanedo v. E. Baton Rouge Parish Sch. Bd., 2012 U.S. Dist. LEXIS 175009, *16-17 (C.D. Cal. Oct. 4, 2012); Vicuña v. Alexia Foods, Inc., 2012 U.S. Dist. LEXIS 59408, at *8 (N.D. Cal. Apr. 27, 2012).

Accordingly, this claim must be **DISMISSED with prejudice**.

### d. Cal. Bus. & Prof. Code § 17531

Section 17531 states:

It is unlawful for any person, firm, or corporation, in any newspaper, magazine, circular, form letter or any open publication, published, distributed, or circulated in this state, including over the Internet, or on any billboard, card, label, or other advertising medium, or by means of any other advertising device, to advertise, call attention to or give publicity *to the sale of any merchandise, which merchandise is secondhand or used merchandise, or which merchandise is defective in any manner, or which merchandise consists of articles or units or parts known as 'seconds,' or blemished merchandise, or which merchandise has been rejected by the manufacturer thereof as not first class*, unless there is conspicuously displayed directly in connection with the name and description of that merchandise and each specified article, unit, or part thereof, a direct and unequivocal statement, phrase, or word which will clearly indicate that the merchandise or each article, unit, or part thereof so advertised is secondhand, used, defective, or consists of 'seconds' or is blemished merchandise, or has been rejected by the manufacturer thereof, as the case may be. Any violation of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

Cal. Bus. & Prof. Code § 17531 (emphasis added). Apple asserts that this section is clearly inapplicable because "Apple does not advertise used or refurbished goods as though they were new, and Plaintiff certainly does not allege that Apple did so here." (Mem. at 14.) Additionally, assuming this section did apply, "Plaintiff's claim still fails because he never identifies the specific advertisements that he allegedly relied on . . . ." (Id.) Plaintiff avers that the statute, by its plain language, is not limited to secondhand goods, but rather applies to merchandise "defective in any manner". (Opp. at 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title | Ross Missaghi v. Apple Inc et al | | |

Read alone, the phrase cited by Plaintiff suggests that it could be applied in this case. Read together with the rest of the statutory language, it would seem that it must apply only to goods sold as seconds, used, refurbished or the like. Reconciliation of the two positions has not been achieved in the case law primarily because Section 17531 is rarely cited in any California legal authority. Analysis of this section presents an issue of first impression.

The Court is reminded that "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004). But even that principle does not provide much assistance. But even BedRoc looked to the statutory purpose in determining what Congress meant when it reserved to the United States "valuable minerals" in western land grants. Here Section 17531 in nearly every way indicates that its purpose is the protection of consumers who purchase items that are not being sold as new, first run, goods. The very title of the section read "§ 17531. Secondhand, used, defective, second grade, or blemished merchandise; required statement." Moreover, to suggest otherwise would be to ignore the numerous California and federal statutes that provide remedies to purchasers of defective new goods. The Court therefore concludes that the statute has no application to the sale of new, first run, goods even if those goods turn out to have a defect in materials or workmanship that entitles the buyer to a remedy. Such a reading of the statute is consistent with Daugherty [v. American Honda Motor Co., Inc., 51 Cal. Rptr. 3d 118, 122 (Cal. App. 2d Dist. 2006)] and its progeny, and finds Apple's arguments on that issue persuasive. (Docket No. 14, [Reply to Oppos. to Mot. to Dismiss ("Reply")] at 10.)

The Section 17531 claim is **DISMISSED with prejudice**.

### e. UCL

California Business & Professions Code Section 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To state a claim for an "unlawful" business practice under section 17200, a plaintiff must assert the violation of some other law. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). An act or practice is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Daugherty v. Am. Honda Motor Co., Inc., 51 Cal. Rptr. 3d 118, 129 (Cal. App. 2d Dist. 2006). Finally, conduct violates the "fraudulent" prong of the UCL if it is "likely to deceive." Campos v. Bank of Am., Inc., 2011 U.S. Dist. LEXIS 70407, at *26 (N.D. Cal. June 30, 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

Plaintiff's UCL claim is premised solely upon the fraudulent prong. Plaintiff alleges that Apple "falsely inform[ed] its customers that the defect described above is not repairable . . . ." (FAC ¶¶ 10, 59.)[3] Not only does this single allegation fail under Federal Rule of Civil Procedure 9(b) - something Plaintiff acknowledges in his opposition (Opp. at 6) - but Plaintiff fails to in any way allege reliance. See In re Tobacco II Cases, 207 P.3d 20, 39 (Cal. 2009) (finding that Proposition 64 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.")

Accordingly, this claim is **DISMISSED with leave to amend**.

**C. MOTION TO STRIKE**

**1. LEGAL STANDARD**

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Ninth Circuit has held that "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief" and that "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal citations omitted), rev'd on other grounds, 510 U.S. 517 (1994). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Accordingly, "courts often require a showing of prejudice by the moving party before granting the requested relief." Quintana v. Baca, 233 F.R.D. 562, 564 (C.D. Cal. 2005) (internal quotations omitted). In considering a Rule 12(f) motion, "the Court views the pleadings in the light most favorable to the non-moving party, and resolves any doubt as to the relevance of the challenged allegations in favor of [the pleading party]. This is particularly true if the moving party fails to demonstrate prejudice." Id. (internal citation omitted). A motion may also be granted where it will "have the

---

[3] To the extent Plaintiff intended to imply that this false representation violated the unlawful and/or unfair prongs of the UCL, Plaintiff makes only a conclusory assertion without any supporting allegation as to how the alleged false representation was unlawful or unfair. (FAC ¶ 59.)

Exhibit A     Page 36

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title | Ross Missaghi v. Apple Inc et al | | |

effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action." State of Cal. ex rel. State Lands Comm'n v. United States, 512 F. Supp. 36, 38 (N.D. Cal. 1981). In the end, the decision to grant or deny the motion is vested within the sound discretion of the trial court. Neilson, 290 F. Supp. 2d at 1152.

### 2. APPLICATION

Apple seeks to strike multiple aspects of Plaintiff's FAC. First, Apple avers that Plaintiff only purchased one of the iPhones at issue here - either an iPhone 4 or an iPhone 4s - and "lacks standing to bring claims on behalf of consumers who bought a product he has never purchased or used." (Mem. at 16.) Second, Apple seeks to strike Plaintiff's request for injunctive relief for lack of standing. (Id. at 20.) And third, Apple seeks to strike the class allegations because the putative class contains members who have suffered no injury. (Id. at 19.)

#### a. *Product Purchased*

It is clear that Plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon." Johns v. Bayer Corp., 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010); see also Hairston v. South Beach Bev. Co., 2012 U.S. Dist. LEXIS 74279, at *16 n. 5 (C.D. Cal. May 18, 2012). Plaintiff could not, as a matter of fact, have suffered injury from a product he never purchased, nor even claims to have seen advertisements concerning. Plaintiff "purchased only one, and may therefore maintain this action only with respect to that product." Contreras v. Johnson & Johnson Consumer Cos., 2012 U.S. Dist. LEXIS 186949, at *6 (C.D. Cal. Nov. 29, 2012). Plaintiff does not dispute that he only bought one device - either an iPhone 4 or an iPhone 4s. Plaintiff in his FAC conflates the two devices, stating that "'iPhone 4' collectively refers to the iPhone 4 and iPhone 4s models." (FAC ¶ 2.) Accordingly, it is unclear which product Plaintiff actually bought, though it is clear he did not buy both. As Apple argues, both products "are distinct and different devices, and Plaintiff does not (and, of course, cannot) allege that the devices are the same." (Mem. at 18.) Plaintiff asserts only that "whether they are actually so different that they should be considered to be different products is an issue of fact, which cannot be determined based upon allegations made in a motion to dismiss." (Opp. at 8.)

Plaintiff purchased only one device and has not alleged that the devices are identical. Plaintiff cannot allege any injury stemming from the model he never purchased. Accordingly, the Court **STRIKES** all allegations stemming from the model he never purchased. In his amended pleading, Plaintiff may either add a named plaintiff who purchased the other product or set forth allegations and a class definition stemming only from the model Plaintiff purchased.

Exhibit A    Page 37

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

### b. *Injunctive Relief*

Additionally, the Court agrees that Plaintiff lacks standing to seek injunctive relief. "To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate that he is realistically threatened by a repetition of [the violation]." de Jesus Ortega Melendres v. Arpaio, 695 F.3d 990, 997 (9th Cir. 2012) (internal quotations and citation omitted). Plaintiff admits in his opposition that he "does not appear to be personally in danger of future injury." (Opp. at 9.) Despite being otherwise able to possibly state a UCL claim, "in federal court, a plaintiff must still demonstrate Article III standing to seek injunctive relief, even if []he would otherwise have standing in state court." Freeman v. ABC Legal Servs., 877 F. Supp. 2d 919, 924 (N.D. Cal. 2012); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1022 (9th Cir. 2004). Accordingly, the Court **STRIKES** Plaintiff's injunctive relief remedy.

### c. *Class Definition*

Regarding the class definition, given that the Court has permitted Plaintiff to file an amended pleading, the Court at this time declines to strike the class definition as including members who clearly suffered no injury. Despite Plaintiff's poorly drafted class definition, "it is in fact rare to [strike class allegations] in advance of a motion for class certification." Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011). However, the Court strongly urges Plaintiff to reconsider his class definition in his amended pleading, should he choose to file one.

### IV.
### CONCLUSION

Based on the foregoing discussion, the Court **GRANTS** Apple's motion **in part** as follows:

(1) Plaintiff's FAC is **DISMISSED with leave to amend** for lack of standing.
(2) Plaintiff's breach of express warranty, breach of implied warranty, MAA, and UCL claims are **DISMISSED with leave to amend**.
(3) Plaintiff's unjust enrichment claim and his Section 17531 claim are **DISMISSED with prejudice**.
(3) The Court **STRIKES** all allegations stemming from the iPhone model Plaintiff never purchased.
(4) The Court **STRIKES** Plaintiff's injunctive relief remedy.
(5) Apple's motion to strike the class definition is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | May 31, 2013 |
|----------|------------------------|------|--------------|
| Title | Ross Missaghi v. Apple Inc et al | | |

Plaintiff must file an amended pleading **no later than 5:00 p.m. Monday, June 17, 2013**. The hearing on this motion, presently scheduled for Monday, June 10, 2013, is hereby **VACATED**.

**IT IS SO ORDERED.**

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANET HOOD, individually and on behalf of
all others similarly situated,

        Plaintiff,

vs.

WHOLESOY & CO, MODESTO WHOLESOY
COMPANY LLC, THE WHOLESOY COMPANY,
TAN INDUSTRIES, INC., KEN NORDQUIST,
AND TED NORDQUIST ,

        Defendants.

Case No.: 12-cv-5550-YGR

**ORDER GRANTING WHOLESOY'S
MOTION TO DISMISS**

Pending before the Court is the Motion of Defendants Wholesoy & Co., Modesto Wholesoy Company LLC, The Wholesoy Company, Tan Industries, Inc., Ken Nordquist, and Ted Nordquist (collectively "Wholesoy") to Dismiss the class action complaint of Plaintiff Janet Hood.  (Dkt. No. 12.)  Plaintiff brings this putative class action alleging that Wholesoy's product labels do not comply with certain requirements of the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California Sherman Law, Cal. Health & Safety Code section 109875, *et seq.* ("Sherman Law").  Based upon those violations, Plaintiff asserts claims under state and federal consumer protection statutes: the California Unfair Competition Law, Bus. & Prof. Code section 17200 *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code section 17500 ("FAL"); the California Consumers Legal Remedies Act, Cal. Civ. Code section 1750 *et seq.* ("CLRA"); the Song-Beverly Consumer Warranty Act, Cal. Civ. Code section 1790 *et seq.* ("Song-Beverly"), and the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 ("Magnuson-Moss").

United States District Court
Northern District of California

Plaintiff also alleges a state law claim for restitution based on unjust enrichment and quasi-contract. Wholesoy brings its motion under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on grounds of, among other things, abstention under the primary jurisdiction doctrine.

Having carefully considered the papers submitted and the pleadings in this action, based upon the record before the Court, and for the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES THIS ACTION WITHOUT PREJUDICE** under the doctrine of primary jurisdiction.

## I.   REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, Wholesoy requests that the Court take judicial notice of sixteen documents.  (Wholesoy's Request for Judicial Notice in Support of its Motion to Dismiss ("RJN"), Dkt. No. 13.)  Plaintiff has not objected to Wholesoy's RJN.

Wholesoy's request for judicial notice therefore is **GRANTED** as to Wholesoy Exh. 1-13, and **DENIED** as to Wholesoy Exhibits 14, 15 and 16.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).  Exhibits 14 and 15 are letters *from* companies *to* the FDA concerning a proposed rule on Evaporated Cane Juice, not official documents directly relevant to the matters at issue.  Likewise, Exhibit 16 is not directly referenced by or relevant to the complaint, and is improperly offered to prove the truth of facts stated therein.

Similarly, the Court **GRANTS** judicial notice as to Plaintiff's Exhibits 1-8 as proper subjects of judicial notice.  *See* Fed. R. Evid. 201; *Batwin v. Occam Networks, Inc.,* No. CV 07–2750 CAS (SHX), 2008 WL 2676364, at *2 n. 3 (C.D.Cal. July 1, 2008) (taking judicial notice of letter from the SEC).

## II.   SUMMARY OF ALLEGATIONS

Plaintiff alleges that Wholesoy's product labeling is false and misleading because:

(1) the labeling fails to list "sugar" or "dried cane syrup" as an ingredient, but instead lists "organic evaporated cane juice," in violation of FDA labeling rules; and

United States District Court
Northern District of California

(2) Wholesoy's products fail to comply with the FDA standard of identity for "yogurt," 21 CFR § 131.200, in that they do not contain any form of milk defined therein.

(Complaint, Dkt. No. 1, at ¶¶ 5-15.)  Plaintiff alleges claims arising under California consumer protection statutes: a first cause of action for *unlawful* business practices under the UCL; a second cause of action for *unfair* business practices under the UCL; a third cause of action for *fraudulent* business practice under the UCL; a fourth claim under the FAL for *misleading and deceptive* advertising; a fifth cause of action for *untrue* advertising under the FAL; a sixth claim for violation of the CLRA for unlawful sale of misbranded products and misrepresentations regarding those product.  Each of those claims is based, in turn, on Plaintiff's allegation that Wholesoy has violated multiple California Health & Safety Code sections which prohibit false or misleading statements on products and product packaging or labeling, as well as sale of misbranded food products. (Complaint ¶¶ 84-90.)  Broadly, the first and fifth claims focus on the alleged falsity of the product labeling, the second, third, and fourth claims focus on the misleading aspect, and the sixth claim alleges both.  In addition, she alleges an eighth and ninth claim for violation of federal and state consumer warranty statutes, as well as a claim for common law unjust enrichment/restitution.

Plaintiff alleges that she has purchased Wholesoy soy yogurt products since 2008. (Complaint ¶ 91.)  She alleges that she read and reasonably relied on the labels of those products, including the listing of the ingredient "Organic Evaporated Cane Juice" and the representation that the products were "yogurt," before purchasing them.  (Complaint ¶¶ 92-95.)  Plaintiff alleges that these statements on Wholesoy's products were both: (1) unlawful, in that they did not comply with the applicable FDCA standards which are incorporated into California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law"); and (2) deceptive in that they misled Plaintiff and other similarly situated consumers into purchasing the products.  Plaintiff alleges that she did not know and had no reason to believe that Wholesoy's products were misbranded and that she would not have bought the products if she had known the truth about them.  (Complaint ¶¶ 96, 97.)  She further alleges that Wholesoy's labeling, advertising and marketing were false and misleading and designed to increase sales.  (Complaint ¶ 100.)

## A.   "EVAPORATED CANE JUICE"

Exhibit B
Page 42

With respect to the use of the term "Evaporated Cane Juice," Plaintiff alleges that the FDA issued guidance in October 2009, and has sent warning letters to companies, advising that the use of the term was unlawful.  (Complaint ¶¶ 49, 51, 63, 65.)  The guidance issued in October 2009 states that it is "Draft Guidance" that "Contains Nonbinding Recommendations," and is "Not for Implementation." (*See* Plaintiff's Opposition, Exhibit 6, "Guidance for industry: Ingredients Declared As Evaporated Cane Juice; Draft Guidance," Dkt. 17-7 [hereinafter "Draft ECJ Guidance"].)  As a preamble to the statements therein, the Draft ECJ Guidance states that it:

> does not operate to bind FDA or the public.  You can use an alternative approach if the approach satisfies the requirements of the applicable statues and regulations.  If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance.

(Draft ECJ Guidance at 1.)  The introduction states that:

> FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities.  Instead, guidances [*sic*] describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited.  The use of the word should in Agency guidances means that something is suggested or recommended, but not required.

(Draft ECJ Guidance at 2.)  The Draft ECJ Guidance then states that its intent

> is to advise the regulated industry of FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup.  Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'

(Draft ECJ Guidance at 3.)[1]  The Draft ECJ Guidance explains that since the definition of juice is liquid coming from fruits and vegetables, and sugar cane is not considered a "vegetable" by the agency in this sense, sweeteners derived from sugar cane syrup should not be listed by names suggesting they are juice.  "FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the

---

[1]  FDA regulations require that manufacturers refer to foods by their "common or usual name."  21 C.F.R. § 101.4(a).

4

United States District Court
Northern District of California

food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21 CFR 102.5." Draft ECJ Guidance at 3.

On the other hand, the FDA has issued warning letters to companies listing "evaporated cane juice," as an ingredient notifying them that the FDA considers this to be a "violation" and stating that the "proper way to declare this ingredient can be found on the FDA website at: http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm," a website link which led to the Draft ECJ Guidance. (*See* Plaintiff's Exhibit 8, FDA Warning Letter to Hail Merry, LLC, dated October 23, 2012 ["your product lists "Evaporated Cane Juice" in the ingredient statement; however, evaporated cane juice is not the common or usual name of any type of sweetener."]; Exhibit 9, FDA Warning Letter to Bob's Red Mill Natural Foods, dated July 31, 2012 [same].) The FDA's July 2012 Regulatory Procedures Manual indicates that a warning letter "communicates the agency's position on a matter," in and that "Warning Letters are issued only for violations of regulatory significance." (*See* http://www.fda.gov/downloads/ICECI/ComplianceManuals/RegulatoryProceduresManual/UCM 074330.pdf).

### B.   "YOGURT"

Plaintiff alleges that in order for a product to call itself "yogurt," it must comply with the FDA's Standard of Identity for yogurt at 21 CFR § 131.200. Because Wholesoy's products labeled as "yogurt" do not contain the ingredients required by the FDA's Standard of Identity, namely any form of dairy milk, they are misbranded. (Complaint ¶¶ 9, 10, 73-77.)[2].

That regulation provides that "[y]ogurt is the food produced by culturing one or more of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains the lactic-acid producing bacteria, Lactobacillus bulgaricus and Streptococcus thermophilus." Instead, Wholesoy's products are plant-derived imitation products that have been developed and marketed in an effort to imply that the products contain the same nutritional quality

---

[2]   Wholesoy points out that the packaging for the products here features prominent labels stating "MADE WITH ORGANIC SOYBEANS," "DAIRY FREE," "made from single source U.S. grown organic soybeans," and "VEGAN." (RJN Exh. 1-12.)

5

United States District Court
Northern District of California

of dairy products.  (Complaint ¶ 71.)  Therefore, Plaintiff contends, the use of the word "yogurt" in the labeling of Wholesoy's products renders the product misbranded and is inherently misleading to the reasonable consumer.  Plaintiff asserts that it is a violation of law to label a product as "yogurt" when the product does not meet the standard of identity for yogurt stated in 21 CFR § 131.200. More importantly, it misleads consumers to label products as "yogurt" when those products do not have the same nutritional value contained in a true yogurt product.

Plaintiff further alleges that the FDA has sent warning letters to companies using the term "milk" to describe soy-based products that fail to meet the appropriate standards for use of that term.  (Complaint ¶¶ 50, 79.)  The Complaint quotes from an FDA warning letter sent to Lifesoy, Inc. on August 8, 2008, which stated, in relevant part:

> Your LIFESOY® Natural Soymilk Unsweetened (1/2 gallon) and LIFESOY® Natural Soymilk Sweetened (1/2 gallon) products use the term "milk" as part of their common or usual name.  Milk is a standardized food defined as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows [21 CFR 131.110].  Therefore, we do not consider "soy milk" to be an appropriate common or usual name because it does not contain "milk."  We do consider "soy drink" or "soy beverage," however, as acceptable common or usual names for such products.

(Complaint, Exh. 1.)  Plaintiff, in her opposition, cites additional FDA warning letters concerning labeling of products as "milk," "yogurt," or "cheese," that did not meet the applicable standards of identity.  (Plaintiff's Oppo., Exhibit 1, FDA Warning Letter to Fong Kee Tofu Company, Inc., Exhibit 2, dated March 7, 2012 (ordering company to substitute "soy drink" or "soy beverage" for soy milk because the product contains no milk); Exhibit 3, FDA Warning Letter to Bunker Hill Cheese Company, Inc., dated January 2, 2001 (ordering company to remove label "French Yogurt Cheese" from product because yogurt is a food that is defined by a standard of identity, and the product did not meet the standard of identity); Exhibit 4, FDA Warning Letter to Cytosport, Inc., dated June 29, 2011 (ordering company to remove the word "milk" from label of "Muscle Milk" because the product contains no milk); Exhibit 5, FDA Warning Letter to Guggisberg Cheese, Inc., dated February 23, 2009 (ordering company to remove labels "Yogurt Cheese" and "Vegetable Yogurt Cheese" because the products do not meet the standard of identity for yogurt.)  Plaintiff

Exhibit B
Page 45

United States District Court
Northern District of California

1  contends these warning letters indicate that the FDA would not permit the use of the term "yogurt"
2  in connection with "soy yogurt."

### III.    ANALYSIS

4      Among other grounds, Wholesoy moves to dismiss or stay the Complaint based upon the
5  doctrine of primary jurisdiction.  Wholesoy argues that, because the FDA has regulatory authority
6  over food labeling and the issues in this case require expertise or uniformity in administration, the
7  Court should not "undermin[e], through private litigation, the FDA's considered judgments."  *Pom*
8  *Wonderful, LLC v. Coca-Cola Co.,* 679 F.3d 1170, 1178 (9th Cir. 2012).

9      "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a
10  complaint without prejudice pending the resolution of an issue within the special competence of an
11  administrative agency… and is to be used only if a claim involves an issue of first impression or a
12  particularly complicated issue Congress has committed to a regulatory agency."  *Clark v. Time*
13  *Warner Cable*, 523 F. 3d 1110, 1114 (9th Cir. 2008).  A court traditionally weighs four factors in
14  deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that
15  (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory
16  authority (3) pursuant to a statute that subjects an industry or activity subjects an industry or
17  activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in
18  administration."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.,* 307 F.3d 775, 781 (9th
19  Cir.2002) (amended).  "[T]he doctrine is a 'prudential' one, under which a court determines that an
20  otherwise cognizable claim implicates technical and policy questions that should be addressed in
21  the first instance by the agency with regulatory authority over the relevant industry rather than by
22  the judicial branch."  *Clark,* 523 F.3d at 1114.  "Normally, if the court concludes that the dispute
23  which forms the basis of the action is within the agency's primary jurisdiction, the case should be
24  dismissed without prejudice so that the parties may pursue their administrative remedies."  *Syntek*,
25  307 F.3d at 782; *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1015 (N.D. Cal. 2012)
26  (if doctrine applies, court can either stay proceedings or dismiss the case without prejudice.)

27      Thus, where determination of a plaintiff's claim would require a court to decide an issue
28  committed to the FDA's expertise without a clear indication of how FDA would view the issue,

Exhibit B
Page 46

United States District Court
Northern District of California

courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate.  *See Astiana v. Hain Celestial,* 905 F. Supp. 2d. at 1016 (relying on *Pom Wonderful* to dismiss claims where the absence of FDA rules or policy statements would require court to make an independent determination that would "risk undercutting the FDA's expert judgments and authority"); *Ivie v. Kraft Foods Global, Inc.*, C-12-02554-RMW, 2013 WL 685372 at *7 (N.D. Cal. Feb. 25, 2013) (applying primary jurisdiction to dismiss one of several claims where particular issue was subject of proposed new regulation as to which FDA issued public notice and heard comments); *see also All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, C 09-3517 SI, 2012 WL 3257660 (N.D. Cal. Aug. 8, 2012) (finding application of primary jurisdiction doctrine appropriate where claims "would inevitably require the [c]ourt to interpret and apply federal organic standards, potentially create a conflict with those standards, and would intrude upon and undermine the USDA's authority"); *Gordon v. Church & Dwight Co.*, No. 09-5585 SI, 2010 WL 1341184, at *2 (N.D. Cal. Apr. 2, 2010) (dismissing UCL, FAL, and CLRA claims on primary jurisdiction grounds where, *inter alia*, "the FDA has stated that it is still considering public comments and other data in connection with warnings similar to those that plaintiffs seek to have the court impose"); *Taradejna v. Gen. Mills, Inc.*, 909 F.Supp.2d 1128, (D. Minn. 2012) (dismissing complaint under primary jurisdiction doctrine where FDA had issued a proposed rule on precise subject at issue, and decision by court could undermine national uniformity in labeling regarding what met standard of identity for "yogurt"); *cf. Janney v. Mills*, C 12-3919 PJH, 2013 WL 1962360 (N.D. Cal. May 10, 2013) (finding question of abstention under primary jurisdiction doctrine "a close one" where FDA had expressed varying positions on question of the term "natural" in food labeling, but denying request to abstain where FDA had "repeatedly declined" to take a clear position and shown a "relative lack of interest" in doing so, such that deferral to FDA would likely be futile).

The Court finds that the *Syntek* factors are met here and the primary jurisdiction doctrine applies.  The FDA has regulatory authority over food labeling.  *See* 21 U.S.C. § 341 *et seq.*  The FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers. *See* 21 U.S.C. § 341 *et seq.*  Food labeling enforcement is

8

United States District Court
Northern District of California

1    a matter that Congress has indicated requires the FDA's expertise and uniformity in administration.

2    Congress amended the FDCA through the passage of the Nutrition Labeling and Education Act

3    (NLEA) to "clarify and to strengthen" the FDA's "legal authority to require nutrition labeling on

4    foods, and to establish the circumstances under which claims may be made about nutrients in

5    foods." H.R. Rep. No. 101-538, at 7, *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.  No state may

6    "directly or indirectly establish. . . any requirement for the labeling of food that is not *identical* to

7    the [FDCA]" 21 U.S.C. § 343-1(a) (emphasis supplied).

8         With respect to "evaporated cane juice," the Draft ECJ Guidance on which Plaintiff relies

9    says expressly that it is not a "legally enforceable" standard, but only a suggestion.  Given that

10   statement, it is unclear why FDA subsequently has issued two warning letters citing that guidance.

11   At a minimum, this indicates to the Court that the FDA's position is not settled.  So far as it

12   appears, FDA has not yet set a uniform enforcement standard.  Thus, determination of Plaintiff's

13   claim would require the Court to decide an issue committed to the FDA's expertise without a clear

14   indication of how FDA would view the issue.  *See Astiana v. Hain Celestial*, 905 F. Supp. 2d at

15   1016 (absence of FDA rules or policy statements regarding use of "natural" for cosmetics); *Ivie*,

16   2013 WL 685372 at *7 (dismissing serving size claim where new regulation was pending before

17   FDA); *Taradejna*, 909 F.Supp.2d at 1135 (dismissing complaint regarding standard of identity for

18   "yogurt" where a proposed FDA rule would address the issue directly, once finalized).

19        Plaintiff also cites to the district court's decision in *Ivie* as support for its contention that the

20   Draft ECJ Guidance establishes the FDA standard applicable here.  There Judge Whyte found that

21   the Draft ECJ Guidance was *unenforceable*, though nevertheless relevant to the issue of whether

22   the labels in question were deceptive or misleading.  *Ivie*, 2013 WL 685372 at *12.  Here, Plaintiff

23   alleges that the use of the term "evaporate cane juice" is not merely misleading, but also is

24   unlawful.  Yet Plaintiff offers no authority to support the contention that use of that term is

25   unlawful, whether under enforceable FDA/Sherman Law standards or any others.

26        Turning to the "yogurt" Standard of Identity, the FDA does not appear to have spoken at all

27   as to whether "soy yogurt" should be subject to the same standards as dairy yogurt.  It is not

28   apparent to the Court whether the FDA would consider the addition of the word "soy" in front of

United States District Court
Northern District of California

1  yogurt to mean that the product was subject to that same Standard of Identity or, like "butter"

2  versus "peanut butter," subject to a completely different standard.  *Cf.* 21 C.F.R. § 164.150

3  (regulatory definition of "peanut butter") and 21 U.S.C. § 321a (statutory definition of "butter").

4  Many products contain soy and the need for the FDA to administer a comprehensive approach is

5  compelling.  *See*, *e.g.*, 21 C.F.R. § 139.117 [references to macaroni products with soy]; 21 C.F.R. §

6  172.379 [soy beverages, soy-based butter substitutes; soy-based cheese substitutes].

7  While Plaintiff points to two warning letters indicating that an analogous product, soy milk,

8  was considered misbranded by the FDA under the standards applicable to [dairy] "milk," this does

9  not provide clear guidance for food producers or the Court.  Because it is unclear whether 21 C.F.R.

10  § 131.200 is intended to apply to "soy yogurt" products, the Court finds it appropriate to leave that

11  decision to the FDA in the first instance.

12  Plaintiff argues that abstention is not required here because the issues presented do not

13  require any scientific or nutritional expertise to resolve.  Unlike *Taradejna*, no real scientific

14  analysis is required to say whether the products are misbranded.  In *Taradejna*, the claims involved

15  a question of whether a Greek-style yogurt could appropriately include Milk Protein Concentrate,

16  "a form of ultrafiltered milk that typically 'retain[s] all protein components of milk'" under the

17  standard of identity for yogurt.  *See Taradejna*, 909 F.Supp.2d at 1130 (quoting 70 Fed. Reg.

18  60751, 60752 (Oct. 19, 2005)).  The court there dismissed the complaint, ruling that the "FDA is in

19  the best position to resolve any ambiguity about the standard of identity for yogurt" and that the

20  FDA can "ensure national uniformity in labeling, utilizing the Agency's special expertise in this

21  regard." *Id.* at 1134, 1135.  Plaintiff argues that this case has no such scientific complexity since all

22  that the Court must decide is that "soy yogurt" has no milk, and "evaporated cane juice" is really

23  just sugar.  Plaintiff's appeal to the simplicity of the decision belies the fact that the FDA has not

24  come to any clear conclusion regarding either issue.  It also contradicts Plaintiff's allegations and

25  arguments that labeling products as "yogurt" misleads consumers not simply because the products

26  contain soy rather than dairy, but also because those products "do not have the same nutritional

27  value" connoted by the use of the term "yogurt."  (Plaintiff's Oppo. at 5:7-8; *see also* Complaint ¶¶

28  71, 78.)  In the absence of such a clear statement, should the Court go forward with consideration of

United States District Court
Northern District of California

1    the Complaint, it would find itself in a position of either having no set standard to apply, or

2    announcing a standard and thereby overstepping its proper role.

3            Under these circumstances, based upon the record presented, the Court finds it is

4    appropriate to defer to the authority and expertise of the FDA to say what the appropriate rules

5    should be with respect to "soy yogurt" and "evaporated cane juice."  Rendering a decision based on

6    what this Court believes the FDA might eventually decide on either of these issues "would usurp

7    the FDA's interpretive authority."  *Pom Wonderful*, 679 F.3d at 1176.  Deference in this case is the

8    appropriate course.  *Pom Wonderful,* 679 F.3d 1170, 1176; *Clark,* 523 F.3d at 1114.  Therefore, the

9    Court **ORDERS** that Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**[3]

10           This Order terminates Dkt. No. 12.

11           **IT IS SO ORDERED.**

12
13   Dated: July 12, 2013

_____
         **YVONNE GONZALEZ ROGERS**
14         **UNITED STATES DISTRICT COURT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28       [3]  Because the Court dismisses the claims on primary jurisdiction grounds, it does not reach
     the merits of Wholesoy's arguments for dismissal based upon preemption, lack of standing, or failure
     to state a plausible claim.

Exhibit B
Page 50