UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY GITSON, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRADER JOE'S COMPANY,<br><br>        Defendant. | Case No.  13-cv-01333-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 51 |

Plaintiffs Amy Gitson and Deborah Ross[1] filed their Corrected Second Amended Complaint ("SAC") on June 28, 2013, alleging that various of defendant Trader Joe's Company's products are misbranded or bear misleading labels.  Dkt. No. 49.  Trader Joe's has moved to dismiss or, in the alternative, to strike specified paragraphs of the SAC.  Dkt. No. 51.

The SAC states that the plaintiffs' case has "two facets."  First, the plaintiffs allege that the packaging and labeling on various Trader Joe's products violate California's Sherman Law, CAL. HEALTH & SAFETY CODE § 110100(a), which adopts and incorporates the federal Food Drug & Cosmetic Act ("FDCA").  These alleged violations of the Sherman Law give rise to the plaintiffs' first cause of action for violations of the unlawful prong of the California Unfair Competition Law ("UCL").  CAL. BUS. & PROF. CODE § 17200.  Second, apart from being unlawful under the Sherman Law, the plaintiffs allege that Trader Joe's labeling and packaging is misleading, deceptive, unfair and fraudulent. This second facet gives rise to the plaintiffs' second through sixth causes of action for violations of the unfair prong of the UCL (second cause of action), violations of the fraudulent prong of the UCL (third cause of action), misleading and deceptive advertising in violation of the False Advertising Law, CAL. BUS. & PROF. CODE § 17500 (fourth cause of action),

---

[1] Christine Vodicka, a named plaintiff in the First Amended Complaint, no longer appears in the Corrected Second Amended Complaint.

untrue advertising in violation of the False Advertising Law (fifth cause of action), and violations of the Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 (sixth cause of action).

For the reasons below, the motion to dismiss is DENIED in part and GRANTED WITH LEAVE TO AMEND in part.

## FACTUAL BACKGROUND

The SAC identifies and defines six specific products allegedly purchased by the plaintiffs as "Purchased Products."  French Village Mixed Berry Nonfat Yogurt, French Village Strawberry Nonfat Yogurt, Greek Style Vanilla Nonfat Yogurt, Organic Chocolate Soy Milk, Enchilada Sauce, and Dark Chocolate Peanut Butter Salted Caramel Truffles.  SAC ¶ 2.  The SAC explains that the products at issue fit into three categories, those that allegedly:

1. Are unlawfully and misleadingly labeled with the ingredient evaporated cane juice ("ECJ") instead of sugar (the "ECJ Products");

2. Are labeled "milk," but do not comply with the standardized definition for milk promulgated by the Food and Drug Administration (the "Soy Milk Products"); and

3. Contain artificial flavors or chemical preservatives but fail to disclose those ingredients on the product label (the "Undisclosed Additives Products").

The plaintiffs allege that the use of the term evaporated cane juice rather than sugar or syrup on Trader Joe's French Village Mixed Berry Nonfat Yogurt, French Village Strawberry Nonfat Yogurt, Greek Style Vanilla Nonfat Yogurt, and Organic Chocolate Soy Milk violates 21 C.F.R. §§ 101.3 and 102.5, which prohibit manufacturers from referring to ingredients by anything other than their common and usual names.  SAC ¶¶ 2.  The SAC cites guidance and warning letters from the FDA indicating that the FDA policy "is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice.'"  SAC ¶¶ 41-49.  Plaintiffs assert that they are health-conscious consumers seeking to avoid added sugars, and therefore "had they known that 'evaporated cane juice' was essentially the same thing as added sugar, they would not have purchased the Purchased Products."  SAC ¶¶ 98, 116-117

The plaintiffs' allegations regarding products improperly labeled "milk" apply to Trader Joe's Organic Chocolate Soy Milk.  SAC ¶¶ 2, 58.  The plaintiffs allege that the labeling for

2

1    Organic Chocolate Soy Milk is unlawful because it does not contain milk from a cow, contrary to

2    the FDA's standardized definition of milk, 21 C.F.R. Section 131.110, which defines milk as "the

3    lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more

4    healthy cows."  Additionally, the plaintiffs cite warning letters from the FDA to third parties

5    where the FDA noted that it does "not consider 'soy milk' to be an appropriate common or usual

6    name because it does not contain 'milk.'"  SAC ¶¶ 55-56.  The warning letters in turn cite the

7    FDA's standardized definition of milk in 21 C.F.R. Section 131.110.  *Id.*

8         Finally, the plaintiffs' allegations regarding artificial flavors or preservatives relate to

9    Enchilada Sauce and Dark Chocolate Peanut Butter Salted Caramel Truffles products.  SAC ¶¶ 2,

10    73-77.  Federal law requires that a product containing artificial flavors, artificial colors, or

11    chemical preservatives disclose that fact on its container or wrapper "as may be necessary to

12    render such statement likely to be read by the ordinary person under customary conditions of

13    purchase and use," 21 C.F.R. § 101.22(c), and that the label shall state "both the common or usual

14    name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard

15    spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention'."  21 C.F.R. §

16    101.22(j).  The plaintiffs assert that Trader Joe's failure to disclose the use of preservatives and

17    artificial flavors on their products is unlawful and misleading.  SAC ¶¶ 70-78 ("Enchilada Sauce

18    contains the artificial flavor/chemical preservative citric acid and the chemical preservative

19    tocopherol . . . Dark Chocolate Peanut Butter Salted Caramel Truffles contains the artificial

20    flavor/chemical preservative sodium citrate and the chemical preservative tocopherol.  None of

21    these products reveal that these chemicals are functioning as chemical preservatives or artificial

22    flavors.")

23         The SAC also brings claims based on 177 additional products that the plaintiffs did not

24    purchase, but which are, they claim, substantially similar to those for which they did, in that they

25    "make the same label misrepresentations . . . as the Purchased Products and/or violate the same

26    regulations of the [Sherman Law]."  SAC ¶ 3; s*ee also* SAC ¶ 5 (identifying 23 products that

27    allegedly list ECJ as an ingredient, 13 products that allegedly list ECJ as an ingredient and are

28    labeled "soymilk," and 138 products that allegedly contain undisclosed artificial flavors or

United States District Court
Northern District of California

3

1  chemical preservatives).  The plaintiffs refer to this group of products as the "Substantially Similar

2  Products."  SAC ¶ 3.

3          The plaintiffs bring this action on behalf of themselves and a class defined as:

4          All persons in the United States or, in the alternative, all persons in the state of
           California who, within the last four years, purchased Defendant's food products 1)
5          labeled with the ingredient, "Evaporated Cane Juice" or "Organic Evaporated Cane
           Juice;" or 2) labeled as soymilk; or 3) which failed to disclose the presence and
6          function of artificial flavors and chemical preservatives.

7  SAC ¶ 129.

8                                    **PROCEDURAL BACKGROUND**

9          The plaintiffs filed this case on March 25, 2013.  They filed a First Amended Complaint

10  ("FAC") on June 28, 2013.  Dkt. No. 31.  Trader Joe's filed a Motion to Dismiss or, in the

11  Alternative, Motion to Strike on July 12, 2013, Dkt. No. 35, which I denied in part and granted in

12  part with leave to amend on October 4, 2013.  Dkt. No. 45.  The plaintiffs filed a Second

13  Amended Complaint on October 24, 2013, Dkt. No. 46, and then later filed the operative

14  Corrected Second Amended Class Action Complaint (the "SAC") on November 12, 2013.  Dkt.

15  No. 49.[2]  Trader Joe's filed its Motion to Dismiss the SAC on November 14, 2013.  Dkt. No. 51.

16                                        **LEGAL STANDARD**

17          **1.  Motion to Dismiss**

18          A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

19  pleadings fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The

20  Court must accept factual allegations in the complaint as true and construe the pleadings in the

21  light most favorable to the nonmoving party, *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519

22  F.3d 1025, 1031 (9th Cir. 2008), drawing all reasonable inferences from those facts in the

23  nonmoving party's favor.  *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005).  A complaint

24  may be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its

25  _____

26  [2] The SAC was filed late.  However, the changes in the two complaints are minimal (compare Dkt.
    No. 46 ¶¶ 5, 184, *with* SAC ¶¶ 5, 184) and Trader Joe's has not been prejudiced by the late filing.
27  *See* Dkt. No. 51, Defendant's Motion to Dismiss ("Mtn.") at 1 ("because the SAC suffers
    essentially the same pleading deficiencies as the original Second Amended Complaint, this motion
28  to dismiss addresses the pleading deficiencies of the SAC and seeks dismissal of the SAC, or in
    the alternative, the original Second Amended Complaint.").

United States District Court
Northern District of California

face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement. *Id.* (quotation marks and brackets omitted).  If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

In addition, when a claim is grounded in fraud, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  The purpose of Rule 9(b) is to give defendants sufficient notice of the alleged fraudulent conduct so that defendants can adequately defend against the allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## 2.  Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010) (citation omitted).  Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no

1   possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.

2   Supp. 2d 1048, 1057 (N.D. Cal. 2004).

3   **DISCUSSION**

4        Trader Joe's moves to dismiss the SAC, asserting that: (i) plaintiffs have failed to plead

5   their claims with particularity for the Undisclosed Additives Products and the Substantially

6   Similar Products; (ii) plaintiffs' first cause of action, brought under the unlawful prong of the

7   UCL, cannot survive absent factual allegations of reliance; (iii) plaintiffs lack standing to assert

8   claims related to the Substantially Similar Products; (iv) the Court should strike class action

9   allegations pertaining to the Substantially Similar Products; (v) plaintiffs' theory that Trader Joe's

10  has a duty to disclose that its products are misbranded is expressly preempted by the FDCA; and

11  (vi) the claims fail the reasonable consumer test.  Trader Joe's has also moved to strike certain

12  allegations as immaterial.  I address each argument in turn.

13      **A.  Adequacy of the Plaintiffs' Allegations Under Rule 9(b)**

14       Trader Joe's asserts that the plaintiffs have failed to plead claims based on the

15  Substantially Similar Products and the Undisclosed Additives Products with the particularity

16  required by Federal Rule of Civil Procedure 9(b).  Mtn. 8-12, 20-22.  The purpose of Rule 9(b) is

17  to give defendants sufficient notice of the alleged fraudulent conduct so that defendants can

18  adequately defend against the allegations.  *Kearns*, 567 F.3d at 1124. Under Rule 9(b), a party

19  must "state with particularity the circumstances constituting fraud or mistake," including "the

20  who, what, when, where, and how of the misconduct charged."  *Vess*, 317 F.3d at 1106 (internal

21  quotation marks omitted).

22      **1.  The Undisclosed Additives Products**

23       The SAC alleges that tocopherol, citric acid, and sodium citrate are used as artificial flavor

24  or chemical preservatives in Enchilada Sauce and Dark Chocolate Peanut Butter Salted Truffles.

25  SAC ¶ 73, 77.[3]  The plaintiffs rely on 21 C.F.R. § 182.3890, which names tocopherol as one of

26  twenty identified "Chemical Preservatives," and 21 C.F.R. § 101.22(a)(5), which says that "[t]he

27

28  _____

[3] Trader Joe's Enchilada Sauce contains tocopherol and citric acid.  SAC ¶ 73.  Trader Joe's Dark Chocolate Peanut Butter Salted Truffles contains tocopherol and sodium citrate.  *Id*.

6

*United States District Court*
*Northern District of California*

term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." SAC ¶¶ 73-74.  The SAC alleges that these products do not properly identify the ingredients as being used for these purposes.

Trader Joe's asserts that, contrary to the SAC's allegations, tocopherol functions in the products at issue as vitamin E, an antioxidant, and citric acid and sodium citrate are "in fact a naturally derived ingredient used to regulate acidity."  Mtn. 21-22.   In support, Trader Joe's cites 21 C.F.R. § 107.10, which states that vitamin E content on infant formula labels may be declared "in units of milligram alpha-tocopherol equivalents," and 21 C.F.R. § 862.1815, which says "[a] vitamin E test system is a device intended to measure vitamin E (tocopherol) in serum."  Mtn. 22 n.13.

The FDA's definition of tocopherol as a chemical preservative in 21 C.F.R. § 182.3890 does not exclude the possibility that it could be used in the products as a chemical preservative. Similarly, whether sodium citrate, citric acid, and tocopherol function as artificial flavors, chemical preservatives, or both, is inappropriate to determine at this stage of the litigation.  *See Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("the factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss.").  Trader Joe's provides no support for its contention that citric acid and sodium citrate do not fall under 21 C.F.R. § 101.22(a)(5)'s definition.  At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors or chemical preservatives.  At this juncture, "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Accordingly, the plaintiffs have adequately alleged their claims regarding the purchased Undisclosed Additives Products under Rule 9(b).

United States District Court
Northern District of California

7

### 2.   The Substantially Similar Products

Trader Joe's asserts that the plaintiffs have provided "a three-page list of Trader Joe's products unaccompanied by substantive allegations of any sort" without explaining "how they relate to the Purchased Products or to claims of misbranding."  Mtn. 8.  However, the SAC is more detailed than Trader Joe's suggests.  The plaintiffs have identified the "who" as Trader Joe's, the "when" as the timeframe for the class allegations, the "what" as the representations alleged to be illegal, *see* Opp. 5 ("(1) the product lists ECJ as an ingredient; (2) the product is called 'soymilk'; or (3) the product label lists an ingredient that is an artificial color or chemical preservative but fails to disclose the ingredient as such"), as well as the names of the products on which that language is found.  SAC ¶¶ 1-5.

### a.   The Allegations Regarding the Substantially Similar ECJ Products and Soymilk Products Are Adequately Pleaded

The SAC identifies 23 unpurchased products that allegedly use the term "evaporated cane juice" in their ingredient list.  SAC ¶ 5.  The SAC also identifies 13 unpurchased products that use the term "Soymilk" on their labels - indeed, the names of all 13 products identified include the term "Soymilk."  *Id*.  Additionally, the SAC states why the plaintiffs contend that the Substantially Similar Products are illegal and misleading in materially identical ways to the labels on the Purchased Products.  For each category of representation challenged, the SAC identifies specific Purchased Products bearing the alleged misrepresentation appearing on each product label, the regulations allegedly violated by each representation, why a reasonable consumer would be misled by these alleged regulatory violations, and explains why those representations are allegedly unlawful and misleading.  *See* SAC ¶¶ 2, 37-78, 98-108.  The plaintiffs allege that the Substantially Similar Products "make the same label misrepresentations . . . as the Purchased Products and/or violate the same regulations of the [Sherman Law]."  SAC ¶ 3.

The SAC identifies the specific names of the Substantially Similar Products and the exact representations made on each, which are the exact same representations that also appear on the Purchased Products and which therefore are described in depth.  *See* SAC ¶ 5.  "This is enough to satisfy Rule 9(b)'s requirement that a plaintiff provide a particularized account of the allegedly false representations, including an explanation of why the representations are false."  *Brazil v.*

United States District Court
Northern District of California

*Dole Food Co., Inc.*, No. 12-cv-01831-LHK, 2013 WL 5312418 at *9 (N.D. Cal. Sept. 23, 2013) (finding plaintiff's allegations sufficient where plaintiff identified unpurchased product names and alleged that their labels stated the same representations as purchased products). *See also Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2013 WL 5407039, at *3-4 (N.D. Cal. Sept. 25, 2013); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236 at *15 (N.D. Cal. Oct 2, 2013) ("Werdebaugh identifies eighteen Substantially Similar Products . . . The FAC then provides a list of the allegedly artificial ingredients contained in the Purchased Product and states that the Substantially Similar Products 'make the same label misrepresentations' and violate the same regulations of the Sherman Law as the Purchased Products. This is enough to satisfy Rule 9(b)'s requirement.") (citations omitted). I have found similar allegations in food misbranding cases sufficient under Rule 9(b), *see, e.g.*, *Ang*, 2013 WL 5407039, at *2-3 (citing cases) ("plaintiffs have identified the specific representations they claim were made by defendant . . . that is sufficient at this juncture."), and will do so again here.

> **b.  The Allegations Regarding the Substantially Similar Undisclosed Additives Products Are Not Adequately Pleaded**

The plaintiffs' allegations regarding the unpurchased Undisclosed Additives Products, however, are far less specific. The SAC identifies 138 products that contain citric acid "unless otherwise noted," and in those instances, the other additives contained in those products are identified next to the products in parentheses. SAC ¶ 5. The ingredients identified are tocopherol, sodium citrate, sulfur dioxide, potassium sorbate, or phosphoric acid. SAC ¶ 5.

These are not the same representations that appear on the Purchased Products, Enchilada Sauce and Dark Chocolate Peanut Butter Salted Truffles. Those products are alleged to contain tocopherol, citric acid, and sodium citrate. SAC ¶ 73. The SAC alleges that those ingredients function both as artificial flavor or chemical preservatives in the products, and are defined as artificial flavor or chemical preservatives in 21 C.F.R. section 101.22. SAC ¶¶ 74-76. In contrast, regarding the 138 unpurchased products listed, the SAC states, "[m]any of these products contain citric acid or tocopherols *although some contain other undisclosed chemical preservatives* like sulphur dioxide . . . ." SAC ¶ 73 (emphasis added). The SAC fails to identify what those "other

United States District Court
Northern District of California

undisclosed chemical preservatives" are.  *See* SAC ¶¶ 73-78.  It is unclear whether the allegations are limited to the ingredients listed in paragraph 5, or whether the allegations include claims for other ingredients beyond those listed in the SAC.  Furthermore, the SAC is devoid of substantive allegations regarding potassium sorbate and phosphoric acid, which are identified as ingredients in at least five of the unpurchased products.  *See* SAC ¶ 5.  Potassium sorbate and phosphoric acid are not even mentioned in the SAC beyond paragraph 5.  SAC ¶¶ 5, 73-78.

The plaintiffs' claims lack specificity as to what exact undisclosed additives are in the unpurchased products and appear to include claims for alleged undisclosed additives not listed in the SAC.  The unclear descriptions leave Trader Joe's (and the Court) to guess which statements about those products Trader Joe's will be required to defend in this case.  *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 964-65 (N.D. Cal. 2013) (dismissing claims for failing to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charge[s].") (citation omitted).  Accordingly, the plaintiffs have not pleaded their allegations regarding the Substantially Similar Undisclosed Additives Products with the specificity required by Rule 9(b).

**B.  Standing to Pursue Claims under the Unlawful Prong of the UCL**

Trader Joe's argues that plaintiffs' claims should be dismissed because they fail to allege actual reliance on the products' alleged label misrepresentations.  Mtn. 22-24.  In response, plaintiffs argue that actual reliance is not a necessary element of a claim under the unlawful prong of the UCL.  Opp. 13-14.

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  CAL. BUS. & PROF. CODE § 17200.  "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."  *Cel–Tech Commc's, Inc. v. L.A. Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999).  Virtually any law can serve as a predicate for an action under the unlawful prong of the UCL.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010).  To establish standing under the UCL, a person must have "suffered injury in fact and . . . lost money or property as a result of such unfair competition."  CAL. BUS. & PROF. CODE § 17204.  Interpreting this statutory language,

United States District Court
Northern District of California

1   which California voters added to the UCL in 2004 through the passage of Proposition 64, *see In re*

2   *Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009), California courts have held that when "the

3   predicate unlawful conduct is based on misrepresentations" a plaintiff must have actually relied on

4   the misrepresentation, and suffered economic injury as a result of that reliance, in order to have

5   standing to sue.  *Durell*, 183 Cal. App. 4th at 1355; *accord Kwikset Corp. v. Super. Ct.*, 51 Cal.

6   4th 310, 326 n.9 (2011) ("The theory of the case is that [defendant] engaged in misrepresentations

7   and deceived consumers.  Thus, our remarks in *In re Tobacco II Cases* . . . concerning the cause

8   requirement in deception cases, are apposite.") (citation omitted).

9          Recent decisions in food misbranding cases follow *Kwikset* and hold that under the UCL's

10   unlawful prong, plaintiffs must plead actual reliance to establish standing to the extent that the

11   predicate unlawful act is based on misrepresentation or fraud.  *See, e.g.*, *Kane v. Chobani, Inc.*,

12   No. 12-cv-2425 LHK, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (explaining that the

13   plaintiff's allegations under the UCL's unlawful prong in *Kwikset* "were based on a fraud theory

14   involving false advertising and misrepresentations to consumers . . . Thus, the Court concludes the

15   UCL's unlawful prong to the extent such claims are based on fraudulent conduct"); *Wilson v.*

16   *Frito-Lay North America, Inc.*, No. 12-cv-1586, 2013 WL 5777920, at *7-8 (N.D. Cal. Oct. 24,

17   2013) (applying the actual reliance requirement to the plaintiff's UCL claim alleging unlawfulness

18   based on misbranding in violation of FDA regulations and the Sherman Law "because Plaintiffs

19   are asserting that Defendant used deceptive labeling practices to hide the truth of the Products'

20   ingredients"); *Figy v. Amy's Kitchen, Inc.*, No. 13-cv-3816, 2013 WL 6169503, at *3 (N.D. Cal.

21   Nov. 25, 2013) ("because the statutes plaintiff relies on prohibit specific types of

22   misrepresentations on food labels-the listing of an ingredient by a name other than its common or

23   usual name-the actual reliance requirement applies to plaintiff's claim even though it is brought

24   under the unlawful prong of the UCL.").  *But see Swearingen v. Yucatan Foods, L.P.*, No. 13-cv-

25   3544 RS, 2014 WL 553537, at *6 (N.D. Cal. Feb. 7, 2014) (stating that "a plaintiff proceeding

26   under the 'unlawful' prong need only plead facts to show it is plausible the defendant broke the

27   law . . . .").

28          Trader Joe's asks the Court to reconsider its previous opinion denying dismissal of the ECJ

1    and soymilk claims asserted under the unlawful prong of the UCL, and appears to conflate the

2    actual reliance requirement with the "reasonable consumer" test. [4] *See, e.g.*, Reply Br. 11 ("in

3    light of these new decisions, should this Court dismiss any of Plaintiffs' claims for failing to plead

4    actual reliance that is reasonable, it should dismiss parallel unlawful prong claims"). These issues

5    are distinct. The "reasonable consumer" test relates to whether the plaintiff has alleged the

6    substantive elements of a claim under the UCL, FAL, or CLRA, not to whether the plaintiff has

7    *standing* to pursue such claims. *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, No. 12-cv-01828-

8    LHK, 2014 WL 27527, at *9 n.9 (N.D. Cal. Jan. 2, 2014) ("whether a 'reasonable consumer'

9    would have been misled by a defendant's misrepresentation is a substantive element of UCL,

10   FAL, and CLRA claims, rather than a statutory standing requirement"). There is a distinction

11   between statutory standing—which requires a plaintiff to demonstrate that the defendant made a

12   misrepresentation, that the plaintiff actually relied on this misrepresentation, and that the plaintiff

13   suffered injury as a result—and the substantive elements of UCL, FAL, and CLRA claims, which

14   require, in certain contexts, a showing that a defendant's unlawful conduct was likely to deceive a

15   reasonable consumer. Once a plaintiff has established standing by pleading factual allegations of

16   actual reliance, then the plaintiff must establish the substantive elements of the UCL to have a

17   claim.[5] With that clarification, I turn to the factual allegations in the SAC.

18           The SAC makes clear that the gravamen of the plaintiffs' claims, including those based

19   solely on Sherman Law violations, is that Trader Joe's labeling was deceptive and misled

20   consumers. *See* SAC ¶ 15 ("the failure to disclose the presence of risk-inducing nutrients is

21   deceptive"); SAC ¶ 62 ("Defendant's actions illegally mislead the public by inappropriately

22   employing names and terms reserved by law for standardized dairy products, thereby creating

23

24   [4] Trader Joe's prior motion to dismiss argued that the ECJ and Soymilk claims in the First
     Amended Complaint failed to state a claim because no reasonable consumer would be deceived by
25   the alleged misrepresentations on those products. *See* Dkt. No. 35 at 14-19. Trader Joe's did not
     expressly argue that the plaintiffs had not *actually* relied on the labels. Trader Joe's raised the
26   actual reliance argument in its reply brief, but as the argument was not raised in the moving
     papers, I did not address it. Accordingly, my October 4, 2013 order discussed reasonable reliance
27   only as a substantive element of UCL, FAL and CLRA claims; I did not hold that actual reliance is
     not a requisite to standing under the UCL.
28   [5] I address the sufficiency of the plaintiffs' allegations under the substantive elements of the UCL
     in section F below.

United States District Court
Northern District of California

false impressions that these products provide comparable quality, taste, or nutritional benefits when they do not"); ¶ 66 (Trader Joe's "place[s] great importance on concealing the fact that its products contain chemical preservatives and artificial flavors"); ¶ 83 ("Defendant actively concealed material facts from the Plaintiffs"); ¶ 126 ("Defendant's labeling, advertising, and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.  Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign").  Following *Kwikset*, plaintiffs must demonstrate actual reliance in order to establish standing to pursue their claims under the unlawful prong of the UCL because their claims are based on Trader Joe's alleged fraudulent conduct.

To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct."  *Tobacco II*, 46 Cal. 4th at 328.  However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct."  *Id.*  A plaintiff can satisfy the UCL's standing requirement by alleging that he or she would not have bought the product but for the alleged misrepresentation.  *Kwikset*, 51 Cal. 4th at 330.

The alleged misrepresentations fall into three product categories: (1) ECJ Products; (2) Soy Milk Products; and (3) Undisclosed Additives Products.  I will now consider whether plaintiffs have adequately alleged reliance for each category of representations.

### 1.  ECJ products

The plaintiffs claim that the term ECJ concealed the fact that the ingredient was essentially sugar.  The plaintiffs assert that they are health-conscious consumers seeking to avoid added sugars, and therefore "had they known that 'evaporated cane juice' was essentially the same thing as added sugar, they would not have purchased the Purchased Products.  At the time they purchased the Purchased Products, because of the fact it used the term 'juice,' it sounded like something healthy."  SAC ¶¶ 98, 116-117; *see also* SAC ¶ 110 ("Plaintiffs did not know that the ingredient listed as ECJ was in fact sucrose and essentially the nutritional equivalent of ordinary white sugar, and Plaintiffs relied on the Defendant's explicit ECJ representations and the absence of added 'sugar' on the ingredient list.  Plaintiffs would not have bought the Purchased Products

1   had they known that the ingredient listed as 'ECJ' was really added sugar . . . Plaintiffs thought

2   that [the ECJ Products] were preferable to other similar products lacking such statements, or

3   accurately listing 'sugar' as an ingredient.").

4          The plaintiffs have adequately alleged actual reliance because they read the label of the

5   ECJ Products, believed that ECJ was not sugar but something "healthy" or preferable to sugar, and

6   would not have bought the ECJ Products had they known that ECJ was added sugar.  Therefore,

7   the plaintiffs have standing to bring claims regarding the ECJ Products under the UCL.

8          **2.  Soy Milk Products and Undisclosed Additives Products**

9          The SAC does not allege any specific factual allegations of reliance on the labels of the

10  Soy Milk Products or the Undisclosed Additives Products.  The plaintiffs lump the soymilk and

11  undisclosed additives claims together and generally assert, "Plaintiffs relied on Defendant's

12  package labeling including . . . its use of the term milk on its soy beverages and based on the

13  absence of any disclosed artificial flavors or chemical preservatives justified their decision to

14  purchase Defendant's products in substantial part on Defendant's package labeling including  . . .

15  the absence of any disclosed artificial flavors or chemical preservatives as well as its misuse of the

16  standardized term milk."  SAC ¶ 122; *see also id.* ¶ 124 ("At point of sale, Plaintiffs did not know,

17  and had no reason to know, that Defendant's misuse of . . . the standardized term milk or its failure

18  to disclose the presence and function of artificial flavors or chemical preservatives were unlawful

19  and unauthorized as set forth herein, and would not have bought the products had they known the

20  truth about them.").  These paragraphs conclusorily state that the plaintiffs "relied" on the labeling

21  misrepresentations, but do not allege specific *facts*.  Unlike the ECJ claims, which are adequately

22  pleaded, these allegations are a far cry from the factual allegations required by courts to

23  sufficiently plead reliance.  *See Figy*, WL 6169503 at *4 ("to adequately allege reliance, a plaintiff

24  must still at a minimum allege that he saw the representation at issue") (citing *Durell*, 183 Cal.

25  App. 4th at 1363 (affirming dismissal of plaintiff's UCL claim where the plaintiff failed to allege

26  that he ever visited the defendant's website and read the alleged misrepresentation)); *Bruton v.*

27  *Gerber Prods. Co.*, 2013 U.S. Dist. LEXIS 129241, at *62–63 (N.D. Cal. Sept. 6, 2013)

28  (dismissing plaintiff's UCL claim where plaintiff failed to allege that "she ever actually viewed

United States District Court
Northern District of California

14

1   any of the alleged misrepresentations").

2          The plaintiffs allege that reliance is unnecessary because they were harmed by purchasing

3   products that were "legally worthless."  SAC ¶ 86; *see also id*. ¶ 79 ("When Plaintiffs purchased

4   Defendant's Misbranded Food Products there was causation and injury even absent reliance on the

5   misrepresentation/omission that misbranded the product.  This injury arises from the unlawful sale

6   of an illegal product that is a crime to sell and a crime to possess.  Plaintiffs were deprived of

7   money in an illegal sale and given a worthless illegal product in return.")  These allegations are

8   insufficient to save the plaintiffs' claims.  *See Wilson*, 2013 WL 5777920, at *8 ("Plaintiffs must

9   "support[] their allegations of having been harmed by being deceived into buying specific

10  products whose ingredients they specifically wanted to avoid, not that they were harmed in some

11  non-specific way by purchasing products that they later learned were 'legally worthless'.")

12         Therefore, because the plaintiffs have failed to plead sufficient facts establishing actual

13  reliance on the alleged label misrepresentations on the Soymilk Products and Undisclosed

14  Additives Products, they have not established standing to bring claims regarding these products

15  under the UCL, FAL, or CLRA.

16  **C.  Standing to Pursue Claims Regarding Substantially Similar Products**

17         Trader Joe's argues that plaintiffs cannot satisfy Article III's injury-in-fact requirement for

18  products they did not purchase.  Mtn. 12-13.[6]  For the reasons I outlined at length in *Ang v. Bimbo*

19  *Bakeries USA, Inc.*, No. 13-cv-1196 WHO, Order Granting in Part Motion to Dismiss Amended

20  Complaint, Mar. 13, 2014, ECF No. 58 (hereafter "*Ang II*"), I disagree.  Trader Joe's argument is

21  at odds with "the prevailing view within this District, which holds that a plaintiff may, under

22  certain circumstances, have constitutional and statutory standing to assert claims based on

23  misrepresentations appearing on products he did not purchase." *Werdebaugh*, 2013 WL 5487236

24  at *13.

25         In *Ang II*, I examined the various approaches of judges in the Northern District of

26

27  _____

28  [6] As explained in section B of this order, only plaintiffs' claims regarding the ECJ Products may
    move forward at this juncture.  Therefore the Court limits its analysis to the unpurchased ECJ
    products.

California and concluded that the best approach for cases involving unpurchased products in the class action context is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products.  *Ang II* at 14.  "That determination will necessarily focus on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products."  *Id*.  A claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation, such as the ECJ claims here, can be resolved without a context-specific analysis of each product's label.  "The label is either illegal or it is not."  *Id*.  The fact that the products bearing the challenged misrepresentation may be physically different – or that the labels themselves are different in other respects – "is immaterial to the determination of whether the label is in fact illegal."  *Id*.

I previously found in *Morgan et al. v. Wallaby Yogurt Company, Inc.*, No. 13-cv-00296 WHO, consistent with the analysis in *Ang II*, that the ECJ Products fall into this category of claims where physical similarity of the products is less important.  *Id*., Order Denying Motion to Dismiss First Amended Complaint, Mar. 13, 2014, ECF No. 49 at 11-14.  Plaintiffs' UCL illegality claims do not depend on the composition of a particular product; their claims turn on whether the product lists ECJ as an ingredient.  Plaintiffs' theory is that the use of the term ECJ violates the state law requirement that only the common or usual name of an ingredient appear on the label, meaning that all of Trader Joe's products listing ECJ as an ingredient are misbranded in exactly the same way.  Plaintiffs need not show that the Purchased Products and the unpurchased ECJ Products are *physically* similar to establish standing because the resolution of the claim will be identical for purchased and unpurchased products.  In this category of claims, issues regarding similarity of labels and product composition are more properly considered at the class certification stage.  *Ang*, 2013 WL 5407039, at *10 ("if a particular label for a Substantially Similar Product differs materially from one on a Purchased Product, that issue is more appropriately addressed on class certification.");  *Koh v. S.C. Johnson & Son, Inc*., No. 09-cv-0927 RMW, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) ("there is no brightline rule that different product lines cannot be covered by a single class.");  *Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012)

United States District Court
Northern District of California

1   ("any concerns regarding material differences in the products can be addressed at the class

2   certification stage"); *Astiana*, 2012 WL 2990766, at *13 ("any concerns of [defendant] and/or the

3   Court about material differences are better addressed at the class certification stage rather than at

4   the 12(b)(6) stage.")).

5          Trader Joe's makes two arguments that plaintiffs lack standing to assert claims regarding

6   the unpurchased products.  First, it contends that the plaintiffs have failed to allege that the

7   labeling misrepresentations on the products are similar.  Mtn. 11 ("Plaintiffs provide no details as

8   to the precise labeling representations or claims made on any of the [Substantially Similar

9   Products].   They have therefore failed to plead with particularity how . . . [they] are 'substantially

10   similar' to Purchased Products, and have again failed to comply with Rule 9(b)'s pleading

11   requirements.").  As discussed in section A of this order, the plaintiffs have alleged the exact terms

12   they are challenging in the purchased ECJ Products.  They have alleged that the exact same label

13   misrepresentation appears on the unpurchased ECJ Products, and therefore, the plaintiffs have

14   sufficiently pleaded that the label misrepresentations on the Purchased Products and the

15   unpurchased ECJ Products are substantially similar for standing purposes.  *Ang*, 2013 WL

16   5407039 at *10 (finding substantial similarity where plaintiffs "identified the exact terms and

17   representations they are challenging in the identified products.").

18          Second, Trader Joe's contends that the SAC fails to plead that the Substantially Similar

19   Products and the Purchased Products are *physically* similar in product type and composition.  Mtn.

20   11-12.  At oral argument, Trader Joe's pointed to *Miller v. Ghirardelli Chocolate Co.*, 912 F.

21   Supp. 2d 861 (N.D. Cal. 2012), where the court held that a plaintiff did not have standing to allege

22   claims on four unpurchased products even though all of the products at issue contained white

23   chocolate.  In that case, the alleged misrepresentations on the labels of the unpurchased products

24   were dissimilar to the representations on the purchased product and varied widely.  *Id.* at 871-872

25   (alleged misrepresentations included the use of the word "flavored" on two products, the words

26   "classic" and "white" on other products, and "romance language" that differed from product to

27   product).  Therefore the court concluded that the plaintiff's injury was not sufficiently similar to

28   the injury suffered by purchasers of the accused products.

United States District Court
Northern District of California

United States District Court
Northern District of California

Here, as in *Miller*, the Substantially Similar Products span a range of different products. *See* SAC ¶ 5.  However, the misrepresentations across the products are allegedly the same, and those common misrepresentations are the crux of plaintiffs' allegations that their injuries are similar to those suffered by class members who purchased the Substantially Similar Products.  For instance, plaintiffs claim that they were misled by the improper use of the term "evaporated cane juice" on Greek Style Vanilla Nonfat Yogurt, SAC ¶ 2, and the injury suffered as a result of that misrepresentation is the same as the injury suffered by an individual who is misled by the use of the exact same term on French Village Yogurt Vanilla, SAC ¶ 5.  *Miller* is distinguishable for that reason alone. [7]

In fact, the same judge who decided *Miller* concluded in a later case that where misrepresentations across product lines are identical, "the dissimilarity of the accused products is relatively unimportant."  *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012).  Likewise, in other cases where courts have considered product type and composition, the similarity of the alleged misrepresentations holds significant weight.  *See Ang II* at 6-14 (examining cases); s*ee also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910 EMC, 2012 WL 2990766 at *13 (N.D. Cal. July 20, 2012), ("That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice"); *Anderson v. Jamba Juice Co.*, No. 12-cv-01213 YGR, 2012 WL 3642835 (N.D. Cal. Aug. 25, 2012) (plaintiff who purchased several flavors of at-home smoothie kits labeled "All Natural," had standing to bring claims on behalf of purchasers of other flavors because the "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor . . . ."  *Colucci v. ZonePerfect Nutrition Co.*, No. 12-cv-2907 SC, 2012 WL 6737800 at *4 (N.D. Cal. Dec. 28, 2012) ("Most importantly, all twenty flavors bear the same challenged label:

---

[7] Counsel also pointed to *Larsen v. Trader Joe's Co.*, No. 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012), where the plaintiffs did not have standing to pursue claims related to Trader Joe's crescent rolls because they did not purchase that product, and the plaintiffs in that case challenged a wide range of Trader Joe's products (cookies, apple juice, cinnamon rolls, biscuits, ricotta cheese, and crescent rolls).  That case is also distinguishable because the court did not analyze whether the products were "substantially similar" and dismissed the crescent rolls claims solely because they were not purchased.

1    'All–Natural Nutrition Bars.'").[8]

2         For those reasons, plaintiffs have adequately demonstrated standing, at least for purposes

3    of surviving a motion to dismiss, on the Substantially Similar ECJ Products.

4         **D.  Motion to Strike**

5         Trader Joe's moves to strike: (i) all class allegations and class definitions to the extent they

6    encompass the Substantially Similar Products in the SAC at paragraphs 3-5, 24, and 129-139; and

7    (ii) the plaintiffs' reservation of rights to expand the list of Substantially Similar Products in

8    paragraph 3 ("Plaintiffs reserve the right to supplement this list of Substantially Similar Products

9    if evidence is adduced during discovery showing that other products sold by Defendant qualify as

10   being a Substantially Similar Product").  Mtn. 14-18.  I DENY the motion on the first issue and

11   GRANT it on the second.

12         The plaintiffs sufficiently allege and have standing to pursue their claims regarding the

13   Substantially Similar Products for the ECJ Products.  They have leave to amend their claims

14   regarding the Soymilk Products and Undisclosed Additives Products.  Therefore the Motion to

15   Strike the allegations in paragraphs 3-5, 24, and 129-139 of the SAC is DENIED.  *Platte Anchor*

16   *Bolt, Inc.*, 352 F. Supp. 2d at 1057 (a motion to strike should not be granted unless "the matter to

17   be stricken clearly could have no possible bearing on the subject of the litigation.").

18         However, I previously held in this case that the plaintiffs could not bring claims for

19   unidentified products.  Dkt. No. 45 at 6 ("the plaintiffs' failure to identify these products in any

20   meaningful way dooms their efforts to bring those products into this action.").  At oral argument,

21   plaintiffs' counsel stated that they do not plan to add additional products to this action.

22   Accordingly, the motion to strike the words "Plaintiffs reserve the right to supplement this list of

23   Substantially Similar Products if evidence is adduced during discovery showing that other

24   products sold by Defendant qualify as being a Substantially Similar Product" in paragraph 3 of the

25   SAC is GRANTED.

26

27   [8] *But see Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 5289253, at *11 (N.D. Cal. Sept. 19, 2013) ("Although the alleged *misrepresentations* appear to be similar across all Defendant's

28   products . . . Plaintiffs do not allege facts sufficient to show that the products Plaintiffs did not purchase are 'substantially similar' to those that they did.") (emphasis in original).

United States District Court
Northern District of California

### E.  Preemption

The FDCA's preemption provision provides that "no state . . . may directly or indirectly establish . . . any requirement . . . made in the . . . labeling of food that is not identical to" certain FDA labeling requirements, including those related to nutrition information, nutrient levels, and health-related claims.  21 U.S.C. § 343–1(a).  The plaintiffs assert that "the very fact that Defendants sold [misbranded products] and did not disclose this fact to consumers is a deceptive act in and of itself."  SAC ¶ 7.  Trader Joe's contends that this claim attempts to impose on food manufacturers an affirmative duty to disclose labeling violations on their packaging that does not appear in the FDCA or FDA regulations, and is therefore expressly preempted.  Mtn. 24-25.[9]

Trader Joe's is correct that plaintiffs may not attempt to impose labeling requirements that go beyond those set forth in the FDCA and FDA regulations.  Courts have routinely found express preemption in the food-misbranding context when a plaintiff has attempted to sue over conduct that does not violate the FDCA or its accompanying regulations.  *See, e.g., Gustavson v. Wrigley Sales Company*, No. 12-cv-1861 LHK, 2013 WL 5201190 at *11–17 (N.D. Cal. Sept. 16, 2013); *Ivie*, 2013 WL 685372 at *9 (N.D. Cal. Feb. 25, 2013); *Lam v. General Mills, Inc.*, 859 . Supp. 2d 1097, 1101-1104 (N.D. Cal. 2012); *Trazo*, 2013 WL 4083218 at *7-8.

Plaintiffs respond by identifying a provision of the Code of Federal Regulations that, in their view, imposes an affirmative duty to disclose the sorts of labeling violations alleged in the SAC. Opp. 18.  21 C.F.R. § 1.21 states:

> (a) Labeling of a food, drug, device, cosmetic, or tobacco product shall be deemed to be misleading if it fails to reveal facts that are: (1) Material in light of other representations made or suggested by statement, word, design, device or any combination thereof; or (2) Material with respect to consequences which may result from use of the article under: (i) The conditions prescribed in such labeling or (ii) such conditions of use as are customary or usual.
>
> (b) Affirmative disclosure of material facts pursuant to paragraph (a) of this section may be required, among other appropriate regulatory procedures, by (1) Regulations in this chapter promulgated pursuant to section 701(a) of the act; or (2) Direct court enforcement action.

---

[9] These allegations differ from the plaintiffs' state-law claims that food labels and advertisements are misleading based on the FDA's warning letters and other guidance materials, which the Court previously found were not preempted.  Dkt. No. 45 at 13-14.

United States District Court
Northern District of California

Finding that this exact same failure to disclose theory is expressly preempted, the court in *Brazil v. Dole Foods* stated:

> On its face, this regulation does not immediately appear to impose a duty to disclose one's own violations of federal labeling regulations on the very labels that violate those regulations.  Rather, it appears to impose a duty to disclose facts about the food product itself - either facts that may be needed to render other representations on the label not misleading, or those that may be material in light of how the food is typically consumed. [Plaintiff] does not cite, and the Court has not found, any authority to support the counterintuitive proposition that a product's label must disclose the fact of its own illegality, nor does [Plaintiff] identify any regulation or enforcement action that, under 21 C.F.R. § 1.21(b), specifically imposes such a duty.

2013 WL 5312418, at *10.

Absent any authority or persuasive explanation to support the claim that Section 1.21 imposes an affirmative duty to disclose labeling violations on a food's packaging, I agree with Trader Joe's that plaintiffs are attempting to impose a requirement not identical to those imposed by federal law.  *Cf. Perez v. Nidek Co.*, 711 F.3d 1109, 1118–19 (9th Cir. 2013) (plaintiff's claim based on failure-to-disclose theory was expressly preempted by the FDCA where plaintiff failed to identify any federally imposed affirmative duty to disclose).  The claim regarding an affirmative duty to disclose labeling regulatory violations on food packaging is expressly preempted.

Accordingly, Trader Joe's motion to dismiss the second through sixth causes of action is GRANTED to the extent that these causes of action are premised on the theory that Trader Joe's is required to affirmatively disclose that its products are illegal.  Additionally, the words "Moreover, the very fact that Defendant sold such illegal Purchased and Substantially Similar Products and did not disclose this fact to consumers is a deceptive act in and of itself" in paragraph 7 of the SAC are STRUCK.

## F.  Substantive Claims under the UCL, FAL, and CLRA

As discussed in section B, the plaintiffs have standing to assert their claims regarding the ECJ Products under the UCL, FAL, and CLRA.[10]  The next step is to determine whether the

---

[10] Because the plaintiffs have not established standing to allege claims regarding the Soymilk Products and the Undisclosed Additives Products in this complaint, the Court need not determine whether those claims satisfy the substantive elements of the UCL, FAL, and CLRA.

United States District Court
Northern District of California

plaintiffs have sufficiently alleged violations of those statutes.

### 1. Second through Sixth Causes of Action - UCL Unfair and Fraudulent Prongs, FAL, and CLRA

Under the "reasonable consumer" test, plaintiffs must show that consumers are "likely to be deceived" by the representations made by Trader Joe's in order to state a claim in the Second through Sixth Causes of Action.  *See* Dkt. No. 45 at 9; *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The question of whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss.  *Id.*  However, in certain situations a court may assess, as a matter of law, the plausibility of alleged violations of the UCL, FAL, and CLRA.  *See, e.g., Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (plaintiff failed to establish that a reasonable consumer would likely be deceived into believing that cereal named "Crunch Berries" derived nutritional value from fruit).

Plaintiffs allege that, according to the FDA's published policy, "evaporated cane juice" is merely a type of sugar, and as such, it is false and misleading to characterize it as a type of "juice." Plaintiffs further assert that "had they known that 'evaporated cane juice' was essentially the same thing as added sugar, they would not have purchased the Purchased Products.  At the time they purchased the Purchased Products, because of the fact it used the term 'juice,' it sounded like something healthy."  SAC ¶¶ 98, 116-117; *see also* SAC ¶ 110 ("Plaintiffs did not know that the ingredient listed as ECJ was in fact sucrose and essentially the nutritional equivalent of ordinary white sugar, and Plaintiffs relied on the Defendant's explicit ECJ representations and the absence of added 'sugar' on the ingredient list.  Plaintiffs would not have bought the Purchased Products had they known that the ingredient listed as 'ECJ' was really added sugar . . . Plaintiffs thought that [the ECJ Products] were preferable to other similar products lacking such statements, or accurately listing 'sugar' as an ingredient.").

Plaintiffs have alleged in the SAC *precisely* what they found misleading about the term "evaporated cane juice" - specifically, they believed ECJ was not sugar but something "healthy" or preferable to sugar, and had they known that ECJ was in fact "added" sugar they would not

22

United States District Court
Northern District of California

1    have bought the Purchased Products.  Accepting the allegations in the complaint as true, which the

2    Court must do at this stage, it is plausible that a reasonable consumer whose food purchases are

3    influenced by whether foods contain added sugars would be deceived by the term "evaporated

4    cane juice." *Brazil*, 2013 WL 1209955 at *14 (N.D. Cal. March 25, 2013) (court stated that while

5    it "has doubts about the ultimate viability of some of [plaintiff]'s claims, it recognizes that "[t]he

6    plausibility standard is not akin to a probability requirement."); *Colluci*, 2012 WL 6737800 at *8

7    (N.D. Cal. Dec. 28, 2012) ("the Court is not inclined to assume the role of fact-finder in the guise

8    of determining plausibility.").  Accordingly, the Motion to Dismiss the second through sixth

9    causes of action is DENIED to the extent they assert claims regarding the ECJ Products.

10          **2.  First Cause of Action - UCL Unlawful Prong**

11          The parties dispute whether the reasonable consumer test applies to claims under the

12   unlawful prong.  Because I find that the claims regarding the ECJ products satisfy the reasonable

13   consumer test, the plaintiffs have adequately stated their claims under the unlawful prong whether

14   or not the reasonable consumer test applies.  The Court therefore does not reach that dispute here.

15   The motion to dismiss is DENIED on plaintiffs' First Cause of Action to the extent that it alleges

16   claims related to the ECJ Products.

17                              **CONCLUSION**

18          For the reasons above, Trader Joe's motion to dismiss is GRANTED IN PART and

19   DENIED in PART.  The motion to dismiss is DENIED on the first through sixth causes of action

20   for violations of the UCL, FAL, and CLRA on claims regarding the ECJ Products.  The Motion to

21   Dismiss is GRANTED WITH LEAVE TO AMEND on the first through sixth causes of action on

22   claims regarding the Soy Milk Products and the Undisclosed Additives Products.

23          The Motion to Strike is GRANTED concerning the words "Plaintiffs reserve the right to

24   supplement this list of Substantially Similar Products if evidence is adduced during discovery

25   showing that other products sold by Defendant qualify as being a Substantially Similar Product" in

26   paragraph 3 of the SAC, and the words "Moreover, the very fact that Defendant sold such illegal

27   Purchased and Substantially Similar Products and did not disclose this fact to consumers is a

28   deceptive act in and of itself" in paragraph 7 of the SAC.  The Motion to Strike the allegations in

                                          23

1  paragraphs 3-5, 24, and 129-139 of the SAC is DENIED.

2      Plaintiffs may file an amended complaint within 20 days of the date of this Order.

3      **IT IS SO ORDERED**.

4  Dated: March 14, 2014



6  WILLIAM H. ORRICK
   United States District Judge

United States District Court
Northern District of California