Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
*pgore@prattattorneys.com*

Colin H. Dunn (*Pro Hac Vice*)
Clifford Law Offices, P.C.
120 North LaSalle – 31st Floor
Chicago, IL 60602
Telephone:  (312) 899-9090
Fax: (312) 251-1160
*chd@cliffordlaw.com*

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMY GITSON and DEBORAH ROSS, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>                  Defendant. | Case No.  13-CV-1333 - WHO<br><br>**THIRD AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs AMY GITSON and DEBORAH ROSS, through her undersigned attorneys, bring

this lawsuit against Defendant TRADER JOE'S COMPANY as to their own acts upon personal

knowledge, and as to all other matters upon information and belief.  Plaintiffs bring this

action on behalf of themselves and a nationwide class of consumers or, in the alternative, all

persons in the state of California who, within the Class Period, purchased any Trader Joe's

product (1) labeled with the ingredient "evaporated cane juice" or "organic evaporated cane

juice" (collectively referred to as "ECJ"), (2) labeled as "soymilk," or (3) containing an artificial

flavor or chemical preservative that was not disclosed on the label.

**I.      DEFINITIONS**

1.      "Class Period" is March 25, 2009 to the present.

2.      "Purchased Products" are the Trader Joe's products listed below (a-f) that were purchased by Plaintiffs during the Class Period:

        a.      French Village Mixed Berry Nonfat Yogurt;

        b.      French Village Strawberry Nonfat Yogurt;

        c.      Greek Style Vanilla Nonfat Yogurt;

        d.      Organic Chocolate Soy Milk;

        e.      Enchilada Sauce

        f.      Dark Chocolate Peanut Butter Salted Caramel Truffles

As will be set out below, these products are misbranded because, during the Class Period, the product (1) listed ECJ as an Ingredient on its label (products a-d), (2) is called soymilk (product d), or (3) failed to disclose chemical preservatives and artificial flavors on their labels as required by law (products e-f).

3.       "Substantially Similar Products" are identically misbranded Trader Joe's products that, during the Class Period, (i) make the same label representations, as described herein, as the Purchased Products, (ii) contain the same or similar ingredients as the Purchased Products, and/or (iii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq*. (the "Sherman Law") as the Purchased Products, as described herein.

4.      "Misbranded Food Products" are the Purchased Products and the Substantially Similar Products identified herein.

5.      Upon information and belief, these Purchased Products and Substantially Similar Products were sold during the Class Period.  Below is a list of the Substantially Similar Products at issue in this case, the corresponding label violation, and the statute and/or regulation that was violated:

a.     Products that list ECJ as an ingredient in violation of 21 CFR 101.4(a)(1); 21 CFR 101.4(b)(20); 21 CFR 102.5; Cal. Health & Safety Code §110100; §110390; §110395; §110398; §110400; §110660; §110705; §110725(a); §110760; §110770; §110775

French Village Yogurt (Apple Mango, Black Cherry, Strawberry, Mixed Berry)
French Village Yogurt Vanilla
Organic Greek Style Yogurt Vanilla
Organic Sweet Pickle Relish
Organic Sweet Bread & Butter Pickles
This Strawberry Went Into A Bar Cereal Bar
Organic Oats & Flax Instant Oatmeal
Organic Brown Rice Marshmallow Treats
Pumpkin Pancake Waffle Mix
This Fig Walk Into a Bar
This Blueberry Walk Into a Bar
This Apple Walk Into a Bar
Organic Cinnamon Spice Instant Oatmeal (dehydrated cane juice solids)
Heart Healthy Whole Grain Instant Oatmeal (dehydrated cane juice solids)
Mini Peanut Butter Sandwich Crackers
Beefless Strips
Chickenless Strips
Beefless Ground Beef
Baked Tofu
Gyoza Dipping Sauce
Peach Salsa
Habanero & Lime Salsa
Mango Lemonade
Soymilk Extra Organic Original Non-Dairy Drink
Soymilk Extra Organic Vanilla Non-Dairy Drink
Soymilk Extra Organic Chocolate Non-Dairy Drink
Organic Soymilk Vanilla
Organic Soymilk Original
Chocolate Soymilk
Vanilla Soymilk
Original Soymilk
Soymilk Creamer
Unsweetened Organic Soymilk (Refrigerated)
Organic Original Soymilk (Refrigerated)
Vanilla Soymilk (Refrigerated)
Original Soymilk (Refrigerated)

---

b.     Products that are termed "Soymilk" in violation of 21 CFR 101.3; 21 CFR 101.4(a)(1); 21 CFR 101.4(b)(20); 21 CFR 102.5; 21 CFR 131.110; Cal. Health & Safety Code §110100, §110390, §110395, §110398, §110400, §110660, §110705, §110725(a), §110760, §110770, §110775

Soymilk Extra Organic Original Non-Dairy Drink
Soymilk Extra Organic Vanilla Non-Dairy Drink
Soymilk Extra Organic Chocolate Non-Dairy Drink
Organic Soymilk Vanilla

*Third Amended Class Action Complaint*

Organic Soymilk Original
Chocolate Soymilk
Vanilla Soymilk
Original Soymilk
Soymilk Creamer
Unsweetened Organic Soymilk (Refrigerated)
Organic Original Soymilk (Refrigerated)
Vanilla Soymilk (Refrigerated)
Original Soymilk (Refrigerated)

---

     c.     Products that contain an undisclosed chemical preservative and artificial flavor in violation of 21 CFR 101.22; Cal. Health & Safety Code §110100; §110390; §110395; §110398; §110400; §110660; §110705; §110740; §110760; §110770; §110775

     1.     The following products contain citric acid without properly revealing its function as a chemical preservative and artificial flavor:

Pomegranate Green Tea
Mango Green Tea
Chardonnay Grape Juice
Bloody Mary Mixer
Sweet Tea
Kettle Brewed Unsweetened Black Tea
Kettle Brewed Green & White Tea
Tomato Basil Sauce
Pomodoro Pasta Sauce
Creamy Tomato Basil Sauce
Organic Marinara Sauce
Tomato Paste
Plum Tomatoes
Crushed Garlic
Tomato Sauce
Bolognese Sauce
Three Cheese Sauce
Diced No Salt Tomatoes
Pizza Sauce
Apple & Cinnamon Goat Cheese
Quiche Paste
Soy Cheese Mozzarella Flavor
Soy Cheese Blend
Pizza Sauce (refrigerated)
Serrano Salsa
Salsa Especial
Chunky Guacamole
Tomato Bisque
Balela
Artichoke Antipasto
Artichoke Tapenade
Low Calorie Lemonade
Low Calorie Pink Lemonade
Mango Nectar
Pomegranate Limeade

Hibiscus Cranberry Juice
Apple Grape Juice
White Grape Juice
Apple Strawberry Crushers
Apple Banana Crushers
Organic Concord Grape Jelly
Strawberry Fruit Spread
Superfruit  Spread
Strawberry Fruit Spread
Seville Orange Marmalade
Organic Reduced Sugar Preserves (Strawberry, Strawberry Raspberry, Raspberry, Apricot)
Marinated Artichokes
Artichoke Hearts
Hearts of Palm
Yellow & Red Peppers
Fire Roasted Red Peppers
Siracha Sauce
Island Soyaki
Soyaki
Cuban Style Black Beans
Gyoza Dipping Sauce
Genera Tzao Stir Fry Sauce
Satay Peanut Sauce
Thai Yellow Curry
Garlic Cooking & Simmer Sauce
Indian Fare Palk Paneer
Jaipur Vegetables
Peach Salsa
Queso Cheese & Dip
Habanero & Lime Salsa
Tomatillo & Roasted Red Pepper Salsa
Garlic Chipotle Salsa
Frozen Vanilla Greek Yogurt
Mango Sorbet
Chocolate Flavored Syrup
Pizza Formaggio
Ricotta & Cheese Filled Ravioli
Gnocchi Di Gorgonzola
Three Cheese Pizza
Lime Fruit Floes Raspberry Vanilla Cream Bars
Fruit Frenzy Bars
Raspberry Sorbet
Pomegranate Blackberry Sherbet
Parmesan Ranch Dressing
Champagne Pear Vinaigrette
Spicy Ranchero Egg White Salad
Egg White Salad With Chives
Hummus (chunky olive, edamame, spicy hummus)
Smooth & Creamy Hummus (plain, crushed red pepper, cilantro & jalapeno, spicy, hummus quartet)
Steamer Clams in Garlic Butter Sauce
Barbeque Popped Potato Chips
Baked Hickory Barbeque Potato Chips
Pumpkin Chocolate Mousse Cake
Sweet Potato Tots

*Third Amended Class Action Complaint*

Cod Provençale
Paneer Tikka Masal
Chana Masala
Palak Paneer
Fully Cooked Falafel
Veggie Burger
Pizza Veggie Burger
Vegetable Masala Burger
Frozen Artichoke Hearts
Stacked Eggplant Parmesan
Gourmet Jelly Beans
Peppermint Candies
All Natural Fruit Jellies
Spinach & Cheese Stuffed Shells
Garden Vegetable Lasagne
Chocolate Orange Sticks
Chocolate Raspberry Sticks
Dark Chocolate Covered Pomegranate Seeds
Coconut Bonbons
Potato Chips (Cheddar & Horshradish, Hickory Barbeque, Salt & Vinegar)
Popcorn With Herbs & Spices
Beurre Meniere Popcorn
White Cheddar Corn Puffs
Baked Snack O's
PB&J  Milk Chocolate Bar

      2.    The following products contain the chemical preservative and artificial flavor citric acid and an additional chemical preservative as noted:

Hummus Dip (citric acid & phosphoric acid)
Tomato Basil Hummus (citric acid & phosphoric acid)
Hummus Salad Dressing (Phosphoric Acid, Citric Acid)

      3.    The following product contains the chemical preservative tocopherol:

100% Juice Mango Smoothie (tocopherols)

      4.    The following product contains the chemical preservative sodium citrate:

Soy Cheese (sodium citrate)[3]

      5.    The following products do not contain citric acid, sodium citrate, or tocopherol, but contain the noted chemical preservative:

Hummus (White Bean & Basil, Mediterranean Hummus, Tuscan White Bean, Mediterranean Snack Pack) (phosphoric acid)
Golden Raisin (sulfur dioxide)

---

[3] Note that citric acid and sodium citrate function as both a chemical preservative and an artificial flavor in food.  Plaintiffs allege that citric acid and sodium citrate are functioning as both a chemical preservative and an artificial flavor in the noted products above.  Whether the ingredient acts as a chemical preservative or an artificial flavor, or both, is irrelevant for purposes of compliance with the noted federal and state label regulations – either way, the function of the ingredient must be disclosed on the label.

*Third Amended Class Action Complaint*

1  Bing Cherries (sulfur dioxide)
   Black Mission Figs (potassium sorbate)
2  Slab Apricots (Sulfur Dioxide)[4]

3      **II.      SUMMARY OF THE CASE**

4      6.      Plaintiffs' case has two facets.  First, the "UCL unlawful" part. Plaintiffs' first

5  cause of action is brought pursuant to the unlawful prong of California's Unfair Competition

6  Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  See First Cause of Action Below.  Plaintiffs allege

7  that Defendant packages and labels the products identified above in violation of California's

8  Sherman Law which adopts, incorporates – and is identical to – the federal Food Drug &

9  Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  These violations (which do not require a

10 finding that the labels are "misleading") render the Purchased Products and Substantially

11 Similar Products "misbranded." Under California law, a food product that is misbranded

12 cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products

13 cannot be legally sold, possessed, have no economic value, and are legally worthless.  Indeed,

14 the sale, purchase or possession of misbranded food is a criminal act in California and the FDA

15 even threatens food companies with seizure of misbranded products.   This "misbranding" –

16 standing alone without any allegations of deception by Defendant, or review of or reliance on

17 the labels by Plaintiffs – give rise to Plaintiffs' first cause of action under the UCL unlawful

18 prong and is a strict liability claim.

19 7.      The second aspect to this case is the "fraudulent" and "deceptive" part. Plaintiffs allege

20 that the labels on the Purchased Products and Substantially Similar Products – aside from

21 being unlawful under the Sherman Law – are also misleading, deceptive, unfair and

22 fraudulent.  Plaintiffs describe these labels and how they are misleading below.  Plaintiffs

23 allege that they reviewed the labels on the respective Purchased Products that they

24 purchased, reasonably relied in substantial part on the labels, and were thereby deceived, in

25

26 [4] Note that the laws in question require the disclosure of any chemical preservative, and
   Plaintiffs sought to avoid chemical preservatives in the products they purchased.  So the
27 failure to disclose the presence of any chemical preservative, regardless of the particular
   chemical preservative that is present, results in the same violation of law, improper labeling
28 practice, and injury to the purchaser.  As such, the products with phosphoric acid, sulfur
   dioxide, potassium sorbate, sulfur dioxide are substantially similar to the Purchased Products.

deciding to purchase these products.   Plaintiffs would not have purchased products they knew were illegal to own or possess.  Plaintiffs also would not have purchased the products noted above had they known the products contained added sugars, chemical preservatives, or artificial flavors.  Had Defendant informed Plaintiffs of these facts, there would have been no purchases.  Plaintiffs relied upon Defendant's implied representation that its products were legal, and the express representations that the products did not contain any added sugar, chemical preservatives, or artificial flavors in deciding to purchase the products noted above, and their reliance and subsequent injury arose from Defendant's omission of these material facts.

### III.    BACKGROUND

8.    The ingredient that Defendant lists as ECJ on the ingredient list of its product labels is "sucrose" as defined in 21 C.F.R. § 184.1854, and for the purposes of ingredient listing is properly identified simply as "sugar" under the applicable labeling regulations.[1] There are no significant nutritional differences between the variety of sucrose that Defendant labels as ECJ and what consumers know as ordinary, refined white sugar.

9.    Although the nutrition facts panel on the Misbranded Food Products lists the total number of grams of all types of sugars, Defendant chose not to list the "sugar" (or "dried cane syrup"[2]) that it adds as an ingredient to its Misbranded Food Products in the ingredient list.  Rather, Defendant uses the false and misleading term "evaporated cane juice" in place of sugar (or dried cane syrup) in order to disguise the fact that it is adding sugar to its products; and not just any type of sugar, but specifically sucrose.

_____

[2]  In this Complaint Plaintiffs refer to "dried cane syrup" as a possibly permissible alternative to "sugar" only because the FDA has suggested that "dried cane syrup" might be an acceptable way to refer to the ingredient.  Plaintiffs' use of that phrase in this Complaint should not be taken as an indication that Plaintiffs knew what "dried cane syrup" was at the time of the purchases, or that Plaintiffs were in any way with familiar with "dried cane syrup" or its possible use on a food label, or that Plaintiffs were looking for the word "cane" when reading Defendant's labels.  Plaintiffs were not looking for "dried cane syrup" on the ingredient list, and were not familiar with "dried cane syrup" as a food ingredient

10.     The labeling of the Purchased Products and Substantially Similar Products is uniform in their use of ECJ as an ingredient and their omission of "sugar" or "dried cane syrup" as an added ingredient.  Plaintiffs would not have purchased the products had they know they contained added sugar.

11.     Additionally, Defendants illegally labeled certain products as "soymilk."  But FDA regulations prohibit companies from doing that because the FDA does not "consider 'soy milk' to be an appropriate common or usual name because it does not contain 'milk.'"  21 CFR 131.110;http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2008/ucm1048184.htm.

12.     Adding the name of a plant material in front of the word "milk" does not result in an appropriate name for non-dairy products, as these products do not contain milk or milk ingredients, the plant-based liquids are not permitted ingredients in milk, nor do they represent the common or usual names of these beverages.  In reality, many of these non-dairy plant-based beverages are little more than water and soluble carbohydrates, with little to no nutrient value.  There can be no doubt that these products have been formulated and positioned to mimic the positive quality attributes of milk from lactating cows and, because of this, are nothing more than imitation milks that should be labeled as such.   Moreover, despite the presence of added vitamins and minerals as ingredients of these otherwise nutritionally inferior products, studies have suggested that the addition of these vitamins and minerals actually do not provide the same nutritional benefit as the naturally nutritious milk products they seek to emulate.

13.     Plaintiffs would not have bought the Defendants soy beverage products had Plaintiffs known they were misbranded, and illegal to sell or possess, because the products did not comply with the standard of identity for milk.

14.     Defendant also unlawfully concealed the presence of chemical preservatives and artificial flavors by failing to reveal the function of these ingredients on its food product labels as required by law. This was not only illegal and in violation of California Health & Safety Code §110740 and 21 C.F.R. §101.22 (adopted by California and incorporated by

reference into California's Sherman Law), it also deceived consumers like Plaintiffs who were deprived of the information they required to make informed food purchasing decisions and avoid products containing ingredients like chemical preservatives and artificial flavors they sought to avoid.  Plaintiffs would not have purchased the products if they knew they contained chemical preservatives or artificial flavors.

15.     If a manufacturer makes a claim on a food label, the label must meet certain legal requirements that help consumers like Plaintiffs make informed choices and ensure that they are not misled.  Similarly, manufacturers have a duty to disclose on product labels the presence of certain ingredients like sugar, artificial flavors, and chemical preservatives. As described more fully below, Defendant has made, and continues to make, unlawful as well as false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  Defendant also failed and continues to fail to unlawfully and deceptively fail to disclose on it product labels the presence of certain ingredients like sugar, artificial flavors, and chemical preservatives as required by law.  These laws recognize that reasonable consumers like Plaintiffs are likely to choose products claiming to be natural or to have a health or nutritional benefit over otherwise similar food products that do not claim such properties or benefits, or that disclose certain ingredients. More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers like Plaintiffs the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition. Similarly, the law recognizes that the absence of certain ingredients is important to certain consumers like Plaintiffs and thus mandates the disclosure of such ingredients and their functions on product labels.

16.     Defendant has made, and continues to make, misleading and unlawful claims on food labels of its Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded.   Defendant has failed, and continues to fail, to include disclosures about ingredients and their functions mandated on food labels of its

Misbranded Food Products that are prohibited by federal and California law and Defendant's failure renders these products misbranded.   Defendant's false and misleading labeling practices stem from its global marketing strategy.  Thus, the violations, misrepresentations, and material omissions are similar across product labels and product lines.

17.     Plaintiffs and Consumers have paid a premium price for Misbranded Food Products that they have been misled into believing do not contain added sugar (*i.e.*, sucrose), chemical preservatives, or artificial flavors.

18.     Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded under the Sherman Law. Similarly, Plaintiffs did not know, and had no reason to know, that Defendant's products were false and misleading and that material information mandated by law was omitted from Defendant's product labels by Defendant.

19.     In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiffs bring this action on behalf of a nationwide class of consumers who, within the Class Period, purchased Defendant's Purchased Products and Substantially Similar Products (1) labeled with the ingredient "evaporated cane juice," which is not the common or usual name of any sweetener, when such ingredient was not "juice" but was actually sugar (sucrose) and/or (2) termed "soymilk" and/or (3) failed to contain information and disclosures about the presence of chemical preservatives and artificial flavors required by law on their labels.

20.     Identical California and federal laws require truthful, accurate information on the labels of packaged foods. This case is about companies selling misbranded food to consumers like Plaintiffs. The law, however, is clear: misbranded food cannot legally be sold, possessed, has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a refund of their purchase price.

21.     Identical California and federal laws regulate the content of labels on packaged food.  The requirements FDCA were adopted by the California Sherman Law.  Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or

misleading in any particular," or if it does not contain certain information on its label or its labeling.  21 U.S.C. § 343(a).

22.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any single representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.

23.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Plaintiffs and members of the Class who purchased these products paid an unwarranted premium for these products.

24.     Plaintiffs bring this action under California law, which is identical to federal law, for a number of the Defendant's food labeling practices which are both (i) unlawful and (ii) deceptive and misleading to consumers.  These include products:

      a.    labeled with the ingredient "evaporated cane juice" or "organic evaporated cane juice;"

      b.    represented to be a form of milk but failing to satisfy the standard of identity for milk;

      c.    whose labels fail to disclose the presence and function of  chemical preservatives and artificial flavors as required by law

### IV.     PARTIES

25.     Plaintiff Amy Gitson is a resident of Lafayette, California who purchased Trader Joe's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

26.     Plaintiff Deborah Ross is a resident of San Jose, California who purchased Trader Joe's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

27.     Defendant Trader Joe's is a privately held chain of specialty grocery stores with its headquarters located at 800. S. Shamrock Ave., Monrovia California 91016.  Defendant, a

California corporation, has approximately 370 stores with approximately half of them located in California and the remaining locations in 30 states and the District of Columbia.  Defendant may be served with process by serving its registered agent for service, Paracorp Incorporated whose address is 2804 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833-4346.

28.     Defendant is a leading producer of retail food products, including the Misbranded Food Products at issue herein.  Defendant sells its food products to consumers in grocery and other retail stores throughout California and the United States.

29.     California law applies to all claims set forth in this First Amended Complaint because Plaintiffs live in California and purchased the Purchased Products there.  Also, the Defendant does business in California.  All or most of the misconduct alleged herein was contrived in, implemented in, and/or has a shared nexus with California.

30.     Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiffs and all Class members.

**V.     JURISDICTION AND VENUE**

31.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

32.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Second Amended Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

33.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

VI.   **FACTUAL ALLEGATIONS**

A.   **Identical California and federal laws regulate food labeling**

34.   Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

35.   Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code §110100.

36.   In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; or are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use.

B.   **Defendant's unlawful and misleading ECJ claims**

37.   Plaintiffs' unlawful ECJ claims are brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*  Plaintiffs allege that Defendant packaged and

labeled the Purchased Products and Substantially Similar Products in violation of California's

Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the

federal Food Drug & Cosmetics Act, 21 U.S.C. § 301 *et. seq.* ("FDCA").  Purchased Products and

Substantially Similar Products with this identical type of ECJ labeling violations are

"misbranded."

38.     Defendant violated the UCL's unlawful prong by misbranding its products with

ECJ, which is not the common or usual name of the ingredient (or any sweetener).

39.     All of Defendant's products at issue have unlawfully utilized the illegal term ECJ

in the ingredient list on their labels. Defendant unlawfully uses the illegal term ECJ on its

package labels, instead of identifying the ingredient as sugar. [5]

40.     Each of the "Purchased Products" and "Substantially Similar Products" at issue

in this case are misbranded in the same way in that they list ECJ in the ingredient list and omit

the term "sugar" (or "dried cane syrup") as an added ingredient.

41.     It is well established FDA policy that ingredients must always be declared by

their common and usual names.  In its October 2009 *Guidance for Industry: A Food Labeling

Guide (6. Ingredient Lists)*, the FDA advises:

**Should the common or usual name always be used for ingredients?**

**Answer:** Always list the common or usual name for ingredients unless there is
a regulation that provides for a different term. For instance, use the term
"sugar" instead of the scientific name "sucrose."

"INGREDIENTS: Apples, Sugar, Water, and Spices"

---

[5]     Plaintiffs allege that the ingredient called ECJ by Defendant was in fact sugar. It is
possible, however, that instead of adding crystallized sugar as the ingredient at issue
that the Defendant added dried sugar cane syrup as the ingredient as the ingredient at
issue. The common and usual name of such a syrup is "dried cane syrup" as detailed in
21 C.F.R. § 168.130. Regardless of whether the ingredient in question was sugar or
dried cane syrup, calling the ingredient ECJ is unlawful and violates the same state and
federal statutory and regulatory provisions and is contrary to FDA policy and
guidance. Moreover, the use of the term ECJ renders the products misbranded and
illegal to sell or possess regardless of whether the ECJ refers to sugar or sugar cane
syrup. While Plaintiffs allege that the ingredient in question was in fact sugar, their
allegations that the ingredient listed as ECJ was sugar should be read to mean the
ingredient listed as ECJ was sugar or, in the alternative, dried cane syrup.

1   See also section 4 question 3. 21 CFR 101.4(a)

2       42.     Consistent with the common and usual name regulations, the FDA has

3   specifically warned companies not to use the term ECJ.   The FDA has issued these warnings

4   because a label containing the term ECJ (1) is "false and misleading;" and (2) it is a violation of

5   a number of labeling regulations designed to ensure that manufacturers label their products

6   with the common and usual names of the ingredients they use and accurately describe the

7   ingredients they utilize; and (3) the ingredient in questions is not a juice.

8       43.     According to the FDA's published policy, "evaporated cane juice" is simply a

9   "false and misleading" way of describing sugar, and therefore, it is improper to disguise sugar

10  in a product as a type of "juice."   The FDA's position on this matter has been consistent for

11  well over a decade, and the FDA has not indicated that it is considering a change.

12      44.     When the food industry first approached the FDA in 1999 with the idea of

13  calling sugar "evaporated cane juice," the FDA responded with a guidance letter ("2000

14  Guidance Letter"), saying that would be misleading. "The product extracted from sugar cane is

15  either 'sugar' [21CFR § 101.4(b)(20) and 184.1854], or 'cane sirup'[6] [21 CFR § 168.130]."[7]

16      45.     Since it issued the 2000 Guidance Letter, the FDA has sent out numerous

17  warning letters to food manufacturers saying that their use of ECJ on food labels is unlawful

18  because it is not the common or usual name for any food and because it is misleading.[8]   The

19  FDA's July 2012 Regulatory Procedures Manual indicates that a warning letter "communicates

20  the agency's position on a matter," in and that "Warning Letters are issued only for violations

21  of regulatory significance."

22

23  _____

24  [6] The regulation uses the spelling "sirup" but provides, "[a]lternative, the word 'sirup' may be spelled 'syrup'." 21 C.F.R. § 168.130(c).

25  [7] The FDA's 2000 Guidance Letter can be found at:
    http://www.regulations.gov/#!documentDetail;D=FDA-2009-D-0430-0005

26  [8]     The FDA's warning letters advising the food industry of the illegality of the use of ECJ
27          on food ingredient lists include a Warning Letter dated 11-15-2004 to Upscale Foods,
            Inc.,
28          http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2004/ucm146670.htm;

46.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, *Draft Guidance*, ("2009 ECJ Guidance") it which it essentially reiterated the position it took in its 2000 Guidance Letter and stated that the use of "evaporated cane juice" on food labels violated existing regulations because, among other things, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup," and the use of the term is false and misleading because it "fail[s] to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups)."[9]

47.     After issuing the 2009 ECJ Guidance, the FDA has sent Warning Letters of food manufacturers to food manufacturers telling them that "evaporated cane juice is not the common or usual name of any type of sweetener" and specifically referring them to the 2009 Draft Guidance for "[t]he proper way to declare this ingredient."[10]

48.     The FDA's position is clear: labels listing "evaporated cane juice" are "false and misleading." ECJ is an unlawful term because it is not the common or usual name for sugar. The ingredient listed as "evaporated cane juice" on Defendant's labels is really "sucrose" as defined in 21 C.F.R. § 184.1854 which is required to be listed as "sugar". While FDA regulations generally provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name," the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter."  21 C.F.R. § 101.4(b)(20) (emphasis in original). 21 C.F.R. § 184.1854 lists the chemical names and identifies "sucrose", CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No.

---

[9] The 2009 ECJ Guidance can be found on the FDA's website at:
http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm181491.htm

[10] *See* Warning Letter dated 7-31-12 to Bob's Red Mill Natural Foods, Inc.,
 http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm316268.htm;
and  Warning Letter, dated 10-23-12 to Hail Merry LLC.,
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm326550.htm

57-50-11-1, â-D-fructofuranosyl-á-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers and includes products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated."[11] The ingredient identified as ECJ meets this definition and is sucrose.  As such, Defendant cannot call its sweetener ingredient "evaporated cane juice," but must call it "sugar" or alternatively, "dried cane syrup" pursuant to the FDA's interpretation of FDA regulations.

49.    The FDA has not wavered from its position that "evaporated cane juice" is a false and misleading term that violates numerous labeling regulations and misbrands products since it was first set out in 2000. Despite the FDA's  numerous policy statements, warning letters and guidance, including the issuance of the 2009 ECJ Guidance which merely reiterates a position the FDA has taken for at least a full decade, Defendant failed to remove the unlawful term ECJ from their misbranded food products' ingredient lists.

50.    Defendant could easily have complied with the FDA and Sherman Law labeling regulations by simply following the FDA's clear example and listing "sugar" on the ingredient list instead of resorting to the illegal term "evaporated cane juice."

51.    A food is misbranded under California Health & Safety Code § 110725 and 21 C.F.R. §§ 101.4 and 102.5 (adopted and incorporated by reference by Sherman Law § 110100) unless it lists each ingredient by its common or usual name.  In addition, 21 C.F.R. §§ 101.3, 101.4 and 102.5, which have been adopted by California, prohibit manufacturers from

---

[11] The Federal Register makes clear that the definition of sugar/sucrose in 21 C.F.R. § 184.1854 was specifically modified by the FDA to cover sugar/sucrose that was obtained by the evaporation of sugar cane juice stating:

In addition, the agency notes that the description of sucrose in proposed § 184.1854(a) does not explicitly cover the extraction, by pressing, of sugar cane juice from sugar cane or beet juice from sugar beets and also does not mention the evaporation of the extracted sugar cane juice or beet juice. Therefore, the agency has modified § 184.1854(a) to include "pressing" as a possible extraction procedure and "evaporated" as a step in the refinement of sucrose.

53 F.R. 44862.

referring to foods by anything other than their common and usual names.[12]  Because ECJ is not the common or usual name of the ingredient, all of the Purchased products and Class Products are identically misbranded.

52.      Even in the face of direct FDA regulation that "evaporated cane juice" is a "false and misleading" term, Defendant continues to use the term at the present time.

**C.      Defendant also unlawfully violated the standard of identity for milk[13]**

53.      FDA regulations require specific information (e.g. the name of the food) to appear on the Principal Display Panel of all packaged foods.  The name of the food will either be determined by the product's standard of identity or its common or usual name.  Many food products have established standards of identity, which may specify compositional characteristics and/or manufacturing parameters for the product, for example those for milk, (21 CFR 131.110).

54.      A product is misbranded if the product name includes a standardized food name, e.g., "milk," as part of a name for that product, e.g., "soymilk."  The FDA has so ruled on a number of occasions, issuing warning letters to several manufacturers who have misbranded foods by misusing names of standardized dairy products.

55.      For example, in 2008, the FDA sent a warning letter to Lifesoy, Inc. in which it stated:

> Your LIFESOY® Natural Soymilk Unsweetened (1/2 gallon) and LIFESOY® Natural Soymilk Sweetened (1/2 gallon) products use the term "milk" as part of their common or usual name. Milk is a standardized food defined as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows

---

[12]      Pursuant to 21 C.F.R. §102.5 the common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 C.F.R. 102.5(a)). Defendant's use of the term ECJ fails this requirement because that term does not accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Here the true nature of the ingredient is a type of added sugar added to sweeten food. The characterizing properties of this ingredient were falsely misrepresented as a juice when in fact they were a sugar or syrup. Defendant hid this fact by unlawfully using a confusing name (a type of juice) that is not reasonably encompassed within the same name.

[13] Note that Plaintiffs' "soymilk" claims relate only to their cause of action for Defendant's violation of the unlawful prong of the UCL and for implied warranty.  See Plaintiffs' First and Seventh Cause of Action below.

> [21 CFR 131.110]. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because it does not contain "milk." We do consider "soy drink" or "soy beverage," however, as acceptable common or usual names for such products.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2008/ucm1048184.htm

56.     Similarly, in 2012, the FDA sent a warning letter to Fong Kee Tofu Company, Inc. in which it stated:

> Your Fresh Soy Milk Sweet product uses the term "milk" as a part of the common or usual name. Milk is a standardized food defined in 21 CFR 131.110 as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because your product does not contain "milk." We consider "soy drink" or "soy beverage," however as acceptable common or usual names for such products.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm295239.htm

57.     Adding the name of a plant material in front of the word "milk" does not result in an appropriate name for non-dairy products, as these products do not contain milk or milk ingredients, the plant-based liquids are not permitted ingredients in milk, nor do they represent the common or usual names of these beverages.  In reality, many of these non-dairy plant-based beverages are little more than water and soluble carbohydrates, with little to no nutrient value. There can be no doubt that these products have been formulated and positioned to mimic the positive quality attributes of milk from lactating cows and, because of this, are nothing more than imitation milks that should be labeled as such.

58.     Soy beverages lack the nutrients associated with milk absent fortification and even post-fortification the Trader Joe's Organic Chocolate Soy Milk purchased by the Plaintiffs was nutritionally inferior to milk in a number of respects.

59.     Soy-based beverages naturally contain only one-fifth the amount of calcium as cow's milk.  To serve as a more significant non-dairy calcium source, some of these beverages are fortified with calcium to a level comparable to that of cow's milk.  However, the amount of nutrient present in a food and the amount absorbed by the body are not equal.  In fortified foods, the ultimate bioavailability of the nutrients depends on the interactions among a variety of formulation parameters, including the composition of the food matrix, the form of

the fortificant, and the level of fortification. While the nutrition facts panel may indicate an equal level of calcium present, depending on the specific conditions and the delivery mechanism, calcium from a soy beverage may be up to 25% less absorbed than calcium from cow's milk.

60.     Regardless of whether or not a particular food system is optimized for bioavailability of a nutrient, calcium-fortified beverages suffer from the additional technological challenge of keeping the calcium in suspension. As a result, the fortificant has a tendency to settle out to the bottom of the container. Therefore, it is irrelevant if calcium bioavailability for two products is equivalent, if the fortificant is not actually being consumed.  Even with vigorous shaking, significant amounts (as much as 80%) of the calcium in a fortified soy beverage may remain as sediment in the container

61.     FDA's own regulations state that addition of a nutrient to a food is appropriate only when the nutrient "is stable in the food under customary conditions of storage, distribution, and use" and it "is physiologically available from the food" [21 CFR 104.20 (g)(1) and (2)]. Plant-based beverages vary in terms of their level of calcium fortification and the type of fortificant employed (see Table 3), which affects the bioavailability of calcium from these products, and, as mentioned above, the degree of sedimentation will affect the amount of calcium actually ingested. Therefore, because of the issues with stability and bioavailability, the practice of adding calcium to plant-based beverages is not in compliance with FDA's fortification policy.

62.     Plaintiffs would not have bought Defendant's soy beverage products had Plaintiffs known they were misbranded, and illegal to sell or possess because they do not comply with the standard of identity for milk. Plaintiffs read the label, saw it said soymilk, and believed the product was equivalent in healthiness and legality to milk.  Plaintiffs would not have bought the product had they known that the term soymilk was not recognized as a legal term by the FDA.

**D.** **Defendant also unlawfully failed to disclose certain chemical preservatives and artificial colors in its products**

63.     Marketing research showed that consumers, including Plaintiffs, are increasingly interested in all natural foods that did not contain chemical preservatives or artificial flavors.   In fact, consumer surveys had established that 1) 80% of the general population thought the fact that a product contained no preservatives or artificial ingredients was a product attribute that was very/somewhat important when purchasing a food product; 2) 81% of the general population thought the fact that a product was natural was very/somewhat important when purchasing a food product; and 3) 76% of the general population thought the fact that a product contained no  artificial flavors was very/somewhat important when purchasing a food product. Moreover, the percentage of consumers indicating that such product attributes were important to their purchasing decisions was increasing annually.

64.     Of particular concern to the food manufacturers like Defendant was the fact that certain key segments of their consumer base placed even greater importance on these product attributes than the general population. For example, 19% of the U.S. general population classified as Lifestyles Of Health And Sustainability ("LOHAS") consumers since the Consumer surveys had established that 1) 95% of LOHAS consumers thought the fact that a product contained no artificial ingredients was a product attribute that was very/somewhat important when purchasing a food product and that 92% of LOHAS consumers thought the fact that a product contained no artificial flavors was very/somewhat important when purchasing a food product.

65.     In addition to LOHAS consumers, food manufacturers also had to take into account other segments of the market such as Naturalites who comprised about 19% of the U.S. general population and were avid users of natural products and whose preferences for natural products lacking artificial ingredients and artificial flavors was almost as strong as LOHAS consumers. Consumer surveys had established that 1) 90% of Naturalites consumers thought the fact that a product contained no artificial ingredients was a product attribute that

*Third Amended Class Action Complaint*

was very/somewhat important when purchasing a food product and that 87% of Naturalites consumers thought the fact that a product contained no artificial flavors was very/somewhat important when purchasing a food product.

66.     These consumer preferences posed a significant threat to the Defendant's core food business because their private label foods like the Trader Joe Enchilada Sauce and Dark Chocolate Peanut Butter Salted Caramel Truffles products purchased by Plaintiffs contained chemical preservatives and artificial flavors.

67.     Defendant appears to place great importance on concealing the fact that its products contain chemical preservatives and artificial flavors. It places false and untruthful signs in its stores saying its Trader Joe products do not contain chemical preservatives and artificial flavors. It places false and untruthful statements on its website saying its Trader Joe products do not contain chemical preservatives and artificial flavors. It places false untruthful statements on certain products indicating that they lack preservatives and artificial flavors.

68.     The falsity of Defendant's statements and labeling claims would be revealed if Defendant complied with the law and disclosed the presence and function of the chemical preservatives and artificial flavors it adds as ingredients to its products like the Trader Joe Enchilada Sauce and Dark Chocolate Peanut Butter Salted Caramel Truffles products purchased by Plaintiffs.

69.     Rather than comply with the law, Defendant has violated the numerous statutory provisions that require that the presence and function of chemical preservatives and artificial flavors to be disclosed on product labels.

70.     Defendant has violated 21 C.F.R. § 101.22, 21 U.S.C. § 343(a), and 21 U.S.C. § 343(k), all of which are adopted by and incorporated into the Sherman Law. A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

71.    Pursuant to 21 C.F.R.§ 101.22(c):  A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

72.    Pursuant to 21 C.F.R.§ 101.22(j): A food to which a chemical preservative(s) is added shall, except when exempt pursuant to 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention".

73.    Defendant's products like the Trader Joe Enchilada Sauce and Trader Joe Dark Chocolate Peanut Butter Salted Caramel Truffles purchased by Plaintiffs fail to comply with the requirements of 21 C.F.R.§ 101.22. Although they contain tocopherols (a chemical preservative listed as such in the Code of Federal Regulations – 21 C.F.R. 182.3890) and chemical preservatives citric acid and sodium citrate, all of which function as chemical preservatives in the Defendant's products, the labels of these products fail to describe the function of these chemical preservatives thus violating the law and concealing their presence. The ingredient list of Defendant's Trader Joe Enchilada Sauce lists citric acid without any description of its function as a chemical preservative and artificial flavor, and tocopherol without any description other than an improper description of it as Vitamin E even though it is functioning as a chemical preservative and not as a vitamin in any meaningful quantity. The ingredient list of Defendant's Trader Joe Dark Chocolate Peanut Butter Salted Caramel Truffles contains no description of the sodium citrate as a chemical preservative and artificial flavor, and its description of tocopherol as Vitamin E functioning as an antioxidant fails to disclose its function as a preservative and instead misleads consumers into the erroneous belief it is serving as antioxidant vitamin. As is made clear by the list of substantially similar products in paragraph 5 above, Defendant also produces a number of other products that contain other unlawfully undisclosed chemical preservatives, i.e., sulfur dioxide, potassium sorbate, and phosphoric acid. Sulfur dioxide is a chemical preservative listed in the Code of

Federal Regulations 21 C.F.R. § 582.3862 and also on California's Proposition 65 list of harmful chemicals. Similarly, potassium sorbate is listed as a "chemical preservative" in the Code of Federal Regulations (21 C.F.R. § 582.3640). Tocopherols are also listed as a chemical preservative in in the Code of Federal Regulations (21 C.F.R. § 582.3890). Citric acid and phosphoric acid are both general purpose ingredients that are used in food for their preservative effects. The FDA considers citric acid and phosphoric acid (as well as potassium sorbate, sulfur dioxide, and tocopherols) to be chemical preservative. The FDA hasc repeatedly sent warning letters to companies informing them that their products are misbranded because they fail to disclose the function of chemical preservatives including those at issue here. See e.g.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2004/ucm146627.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm319489.htm);

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm264369.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323184.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm (potassium sorbate);

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm278285.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm (citric acid);

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2005/ucm075432.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2006/ucm075850.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2002/ucm145155.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm314769.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2002/ucm144800.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm280161.htm;

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm268285.htm;

    74.    While the chemicals may be different in name, they are not different in function or effect and the failure to adequately disclose them results in identical violations of law.

75.    Citric acid, tocopherols, sulfur dioxide, potassium sorbate, phosphoric acid, and sodium citrate are all chemical preservatives.  21 C.F.R. § 101.22(a)(5) provides that, "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

76.    Citric acid, tocopherols, sulfur dioxide, potassium sorbate, phosphoric acid, and sodium citrate are not a type of common salt, sugar, vinegar, spice, or oil extracted from spices, nor are they a substance added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.  As used by Trader Joe in its products these chemicals prevent or retard deterioration of the products.  Therefore,  Citric acid, tocopherols, sulfur dioxide, potassium sorbate, phosphoric acid, and sodium citrate a "chemical preservative," in Trader Joe products as defined in 21 C.F.R. § 101.22(a)(5).

77.    Similarly, Defendant violated the requirement of 21 C.F.R.§ 101.22(c) to place a statement of artificial flavoring on its product labels as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food. Despite the fact that the artificial dual use ingredients sodium citrate and citric acid function not only as preservatives but also as artificial flavors in the Defendant's products, the Defendant was required to disclose this function and place a statement to this effect on Defendant's products like the Trader Joe Enchilada Sauce and Dark Chocolate Peanut Butter Salted Caramel Truffles products purchased by Plaintiffs. Citric acid and sodium citrate meet the definition of an artificial flavor under California and federal law and do not meet the definition of a natural flavor under California and federal law.

78.    Defendant has also, inter alia, violated the following Sherman Law provisions. Defendant has violated California Health & Safety Code § 110740 because its products bear or contain artificial flavoring or chemical preservative without labeling stating that fact. Defendant's Trader Joe Enchilada Sauce contains the artificial flavor/chemical preservative

citric acid and the chemical preservative tocopherol while its Trader Joe Dark Chocolate Peanut Butter Salted Caramel Truffles contains the artificial flavor/chemical preservative sodium citrate acid and the chemical preservative tocopherol. None of these products reveal that these chemicals are functioning as chemical preservatives or artificial flavors.

79.     Defendant has violated California Health & Safety Code § 110705 because words, statements, or other information required pursuant to the Sherman Law to appear on the label or labeling, *i.e.*, that the ingredients noted above (citric acid, tocopherols, sulfur dioxide, potassium sorbate, phosphoric acid, and sodium citrate) are chemical preservatives are not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.  Similarly, Defendant has violated California Health & Safety Code § 110705 by failing to disclose citric acid or sodium citrate as artificial flavors upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

**E.**     **Plaintiffs were injured as a result of Defendant's unlawful conduct.**

80.     Defendant's act of selling these Misbranded Food Products violates Sherman Law § 110760 (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded). The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violations listed above. When Plaintiffs purchased Defendant's Misbranded Food Products there was causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is crime to sell and crime to possess. Plaintiffs were deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, consumers have been unwittingly placed by Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

81.     Thus, in this case, where Defendant unlawfully sold products labeled with the unlawful term ECJ or Soymilk, or labeled with labels that failed to disclose the presence and function of chemical preservatives and artificial flavors, there is 1) a violation of specific labeling regulations and 2) an independent violation of the unlawful prong due to the Defendant's sale of an illegal product that is unlawful to possess. Plaintiffs would not have bought the misbranded food products had they known or had Defendant disclosed the material fact that the misbranded food products were illegal to sell and possess. Plaintiffs were injured by the Defendant's unlawful act of selling them an illegal product that was illegal to sell or possess.

82.     These Misbranded Food Products are illegal to sell or possess pursuant to Sherman Law § 110825, which provide that any Sherman Law violation (*e.g.,*. the sale of a product whose label fails to use the common and usual ingredient name as required by law) constitutes a strict liability criminal offense punishable by a fine of up to $1000 and up to twelve month in jail.  Such fines and punishments on the same level of what a person might face if found to be in possession of a controlled substance.  Moreover, Sherman Law § 110825 is strict liability crime. As a result, the injury to Plaintiffs and the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiffs and the Class have been unlawfully deprived of money in an illegal transaction that occurred because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by Defendant's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. This harm goes beyond mere economic injury.

83.     Offering food products for sale through ordinary commercial channels carries with it an implied representation that the products can legally be bought and sold, and Plaintiffs reasonably believed that the Purchased Products were legal to buy and sell and would not have purchased them had they known otherwise.

84.     Moreover, Defendant as the manufacturer, packager, labeler and initial seller of the food products purchased by the Plaintiffs had a duty to disclose 1) the true nature of the ingredients in the products and not to conceal the presence of sugar, chemical preservatives or artificial flavors; 2) the fact that's its products were in fact not a type of milk; and 3) that its products were misbranded and illegal to sell and possess.[14]  Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendant actively concealed material facts from the Plaintiffs; and Defendant made partial representations that are misleading because some other material fact has not been disclosed." Defendant's failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which mislead the Plaintiffs who relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

85.     The unlawful sale of Misbranded Food Products that are illegal to sell or possess– standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or reliance on the particular labeling claims by Plaintiffs – gives rise to Plaintiffs' cause of action under the "unlawful" prong of the UCL and the CLRA. In short, Defendant's injury causing unlawful conduct is the only necessary element needed for UCL liability under the unlawful prong. All Plaintiffs need to show is that they bought an unlawful product that they would not have otherwise purchased had they been aware of the material fact that the product was unlawful to sell or possess. Therefore, this claim does not sound in fraud; instead, it alleges strict liability pursuant to the above cited provisions of the federal law and Sherman Law.

86.     At point of sale, Plaintiffs did not know, and had no reason to know, that the Purchased Products were unlawful and misbranded as set forth herein, and would not have

---

[14] Plaintiffs do not contend that the duty to disclose the illegality of the product mandated a disclosure of that illegality on the product label.  Rather, Plaintiffs contend that it is an unlawful, unfair, and misleading practice to unlawfully sell illegal products that are illegal to sell or possess, and potentially expose the purchaser to criminal prosecution.  Plaintiffs further contend that any seller with knowledge that their product is illegal has a general duty to disclose that illegality in some manner to the purchaser.

bought the product had they known the truth about it, *i.e.*, that the product was illegal to purchase and possess, or that it contained added sugar, chemical preservatives, and/or artificial flavors.

87.     Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Plaintiffs and the Class have been damaged by Defendant's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess.   Plaintiffs were injured by the loss of the purchase price in an illegal transaction, the illegality of which Plaintiffs were unaware.  Defendant misled Plaintiffs to believe that the Misbranded Food Products were legal to purchase and possess, lacked added sugar, and lacked any chemical preservative or artificial flavor.  Had Plaintiffs known that the Defendant's products were misbranded, i.e., illegal to purchase and possess, contained added sugar, and/or contained chemical preservatives and/or artificial flavors, they would not have bought Defendant's products.

88.     In addition, Plaintiffs were injured because they were unwittingly placed in legal jeopardy due to the possession of Defendant's illegal and misbranded products, which as noted above carries a potential fine and jail time.   No reasonable consumer would buy a product that was illegal to sell or possess. No reasonable consumer would buy a food product whose mere possession could result in a prison term of one year and a four-figure fine.

89.     A reasonable person would also attach importance to whether Defendant's products are "misbranded," *i.e.*, not legally salable, or capable of legal possession, contained added sugar, and/or contained chemical preservatives and/or artificial flavors.  Reasonable consumers would be, and were, misled in the same manner as Plaintiffs in that a reasonable consumer would not knowingly purchase a product that is illegal to buy or sell.

90.     In this case, Plaintiffs read the labels of the products they purchased looking for added sugar, chemical preservatives, or artificial flavors.  If the product label had indicated it contained any one of those ingredients, Plaintiffs would not have purchased the product.  But because the product label did not indicate it contained added sugar, chemical preservatives, or artificial flavors, Plaintiffs were duped into purchasing the product. As a result of

Defendant's unlawful use of the term ECJ and Soymilk and its unlawful concealment and failure to disclose the presence and function of chemical preservatives and artificial flavors, Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's unlawful scheme.

      **F.**      **Defendant has Knowingly Violated Numerous Federal and California Laws**

91.    Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements or statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

92.    Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

93.    Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

94.    Defendant has violated California Health & Safety Code § 110660 because its product labeling is false and misleading in one or more ways.

95.    Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

96.    Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

97.    Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

98.    Defendant has violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the common and usual names of ingredients contained in its food products.  Defendant

has also violated the standards set by 21 C.F.R. §§ 101.3 and 131.110 by violating the Standard of Identity for milk.

G.    **Defendant's use of ECJ as an ingredient on its labels is fraudulent, deceptive, and misleading because it fails to identify "added sugar."**

99.    Plaintiffs are health conscious consumers who wished to avoid added sugar (the sucrose variety in particular, but other added sugars as well) in the products they purchased. However, when they scanned the ingredient lists of the Purchased Products, Plaintiffs did not understand the term ECJ was added sugar. This is hardly surprising since 1) the FDA considers the term to be false and misleading *because* it fails to reveal that the ingredient is a sugar or a syrup; 2) juice is considered to be a healthy food that is not the equivalent of added sugar, 3) it is not generally known to the consuming public that there is no significant nutritional difference between ECJ and ordinary white sugar; 4) ECJ is not typically among the added sugars; and 5) consumer studies confirm that most purchase decisions are made in a fraction of a second and thus the potential for a false and misleading term to mislead is significant. Moreover, the Nutrition Facts listing of total sugars does not allow a consumer, or Plaintiffs, to determine if a product has any added sugars. Consumers are only able to determine the presence of added sugars by reading a products ingredient list. Companies like Defendant that mislabel their sugars in the ingredient list with false and misleading terms frustrate this capability by hiding the added sugar. In addition, the inclusion of words such as "juice" or "cane" into the false and misleading term evaporated cane juice do not mitigate the false and misleading nature of the term and in fact in the case of a word like "juice" actually makes it misleading in the eyes of the FDA since it is an added sugar and not a juice. In contrast, the failure to utilize words like "sugar" (or "syrup") to describe the ingredient identified by Defendant as evaporated cane juice is false and misleading because it conceals the fact that the ingredient is in fact an added sugar, namely an added sugar (or syrup) sweetener.

100.    Plaintiffs' desire to avoid added sugars was reasonable. Added sugar is a known health risk that consumers are advised to avoid by the United States government, scientific

and educational institutions, and food related companies such as grocery store chains and food manufacturers. All of these entities know and publish: 1) there is a distinction between added sugars and naturally occurring sugars; 2) added sugars have no beneficial nutritional value, contribute only empty calories and have recognized health risks 3) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 4) it is the ingredient list and not the nutrition facts panel of a food's label that informs consumers of the presence of added sugars; and 5) consumers need to be careful to avoid added sugar that is disguised by another name.

101.   The 2010 Dietary Guidelines promulgated by U.S. Department of Health and Human Services and the U.S. Department of Agriculture make clear that 1) there is a distinction between "added sugars" and naturally occurring sugars; 2) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 3) it is the ingredient list and not the nutrition facts portion of a food's label that informs consumers of the presence of "added sugars." http://www.health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf.

102.   Other federal government agencies adopt a similar approach to added sugars. For instance, the National Institute of Health 1) confirms the health risks posed by added sugar, 2) indicates the need to read the ingredient list to find added sugars and 3) utilizes a list that fails to include the false and misleading term evaporated cane juice. http://www.nia.nih.gov/health/publication/whats-your-plate/solid-fats-added-sugars.

103.   The United States government's approach to added sugars is echoed by other scientific, educational and medical entities like the American Heart Association ("AHA") (http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp), the Harvard School of Public Health (http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content), and the Mayo Clinic (http://www.mayoclinic.com/health/added-sugar/my00845).

104.   Even food related companies such as grocery store chains and food manufacturers have adopted a similar approach with respect to added sugars.   See

http://www.shoprite.com/for-your-family/dietitians-corner/archives/sugar-by-any-other-name-is-still-sugar/;

http://www.publix.com/wellness/greenwise/products/ProductDetail.do?id=1930.;

http://www.atkins.com/Science/Articles---Library/Sugar/Finding-Added-Sugars.aspx.

105.    Defendant's food has significant added sugar. For example, a single serving of Defendant's French Village Vanilla yogurt has 26 grams of sugar of which approximately 19 are added sugar. This is over 79% of the entire AHA daily limit for added sugar for women which is 24 grams (6 teaspoons at 4 grams per teaspoon). http://circ.ahajournals.org/content/120/11/1011.full.pdf/.  Moreover, for many consumers the AHA actually recommends even lower daily limits of added sugar. For individuals with an 1800 daily calorie requirement the AHA recommends a daily limit of 20 grams of added sugar. For individuals with a 1600 daily calorie requirement the AHA recommends a daily limit of 12 grams of added sugar. http://circ.ahajournals.org/content/120/11/1011.full.pdf.

106.    Disclosure of the total number of grams of sugar in the Nutrition Panel of a foods label does not render the use of ECJ in the ingredients list non-misleading.  First, the total sugars disclosure does not disclose the presence of added sugars as opposed to sugars occurring naturally in other ingredients.  Second, the disclosure of the total sugars does not disclose the nature of the added sugars.  Not all sugars are created equal.  Some, like honey for instance, may be perceived by reasonable consumers as relatively innocuous or even nutritionally beneficial.  Others, like high fructose corn syrup, have acquired a negative reputation, and many reasonable consumers seek to avoid them.  Sucrose – the one that consumers know simply as "sugar" on food ingredient lists – is decidedly in the latter category, especially among the health-conscious consumers (like Plaintiffs) that Defendant targets.  Thus, regardless of any total sugars disclosure, the use of the term ECJ on the ingredient list is doubly misleading because it conceals both the presence of added sugar in general, *and* the nature of the sugar added.

107.  Defendant's use of the word "cane" was not sufficient to advise Plaintiffs that "evaporated cane juice" was sugar.  The term "cane" is not exclusively a reference to sugar

or sugar cane. Many other types of cane exist and are used in foods, for example, bamboo cane and sorghum cane, both which produce juice.  *See e.g.* 21 C.F.R. § 168.160 ("sorghum cane"). Corn is a form of cane. There are over 1000 species just of bamboo and over 10,000 members of the family of plants that includes corn and sugar cane. Most common berries such as blackberries, raspberries, blue berries and goji berries grow on canes and are referred to as "cane berries." Of course, Defendant utilized the term "cane" with the term "juice," a defined, regulated term not commonly associated with sugar or added sugar.

108.  Moreover, even to the extent the word "cane" might be construed to necessarily or obviously referring to sugar cane, the use of the term ECJ is misleading because it implies that the product is just dehydrated cane squeezings, which it is not.  That would be another product, known as "panela," which is prepared by evaporating the "juice" of the sugar cane plant without stripping away the nutrients in the refining process as is done with the ingredient Defendant lists as ECJ.  The sugar cane product utilized as an ingredient by Defendant is far removed from natural sugar cane or unrefined sugar cane juice. Natural sugar cane is described by sources as healthy and nutritious, containing vitamins, minerals, enzymes, fibers, and phytonutrients that help the body digest naturally occurring sugars, such as lactose, glucose and fructose. It also is reported to contain vitamins A, C, B1, B2, B6, niacin, and pantothenic acid, which work synergistically with the minerals to nourish the body. Sugar cane also reportedly contains a unique mix of antioxidant polyphenols. The polyphenols, vitamins, and minerals present in sugar cane are claimed to help slow down the absorption of the sugars and prevent the sharp rise in blood sugar levels associated with refined sugar. Similarly, raw sugar cane juice has been described by some as a "wonder food" that has many beneficial properties.  The ECJ in the Defendant's Misbranded Food Products contains none of these health benefits because during processing the nutrients have been pressed, boiled and strained out.

109.  Thus, evaporated cane juice is neither "juice" nor only subject to "evaporation" – a process that absent pressing, boiling, and separation would leave the sugar crystals with their nutrients still intact. From a nutritional standpoint, evaporated cane juice is not

significantly different than refined white sugar. Refined sugar and evaporated cane juice both have 111 calories per ounce and they are both about 99% sucrose (*i.e.*, empty calories).

**H.**   **Plaintiffs were injured as a result of Defendant's misleading conduct**

110.   Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.   Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

111.   Plaintiffs did not know that the ingredient listed as ECJ was in fact sucrose and essentially the nutritional equivalent of ordinary white sugar, and Plaintiffs relied on the Defendant's explicit ECJ representations and the absence of added "sugar" on the ingredient list.   Plaintiffs would not have bought the Purchased Products had they known that the ingredient declared as "ECJ" was really added sugar (*i.e.*, added sucrose).   As a result of such reliance, Plaintiffs thought that Defendant's Misbranded Food Products were preferable to other similar products lacking such statements, or accurately listing added "sugar" as an ingredient.

112.   Reasonable consumers would be, and were, misled in the same manner as Plaintiffs in that a reasonable consumer would not recognize that the ingredient listed as ECJ is really what is more commonly known as added "sugar."

113.   As a result of Defendant's unlawful misrepresentations, Plaintiffs and thousands of others in California and throughout the United States purchased the Purchased Products and the Class Products at issue.

114.   Defendant's use of the term ECJ misleads consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label, and Plaintiffs and the class paid an unwarranted premium price for the Misbranded Food Products, at least in part because of the misleading manner in which concealed the presence of added sugar (*i.e.*, added sucrose) as an ingredient in the products.

115.   As a result of Defendant's deceptive use of the term ECJ, Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class

members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive scheme.

116. Likewise, consistent with their desire eat healthy and natural foods, Plaintiffs read the product labels looking for the presence of chemical preservatives and artificial flavors.  Plaintiffs did not know that the products they purchased contained the chemical preservatives and artificial flavors noted above.   They relied on the lack of any indication on the product label that it contained chemical preservatives and artificial flavors in deciding to purchase Defendant's product.  Plaintiffs would not have bought the Purchased Products had they known that the product contained chemical preservatives and artificial flavors.  As a result of such reliance, Plaintiffs thought that Defendant's Misbranded Food Products were preferable to other similar products that indicated on its label that chemical preservatives and artificial flavors were included as an ingredient.

117. Reasonable consumers would be, and were, misled in the same manner as Plaintiffs in that a reasonable consumer would attach importance to the presence of chemical preservatives and artificial flavors in a product in choosing whether to purchase that product.   The reasonable consumer, like Plaintiffs, would read the product labels looking for the presence of chemical preservatives and artificial flavors.  They would rely on the lack of any indication on the product label that it contained chemical preservatives and artificial flavors in deciding to purchase Defendant's product.  Like Plaintiffs, the reasonable consumer would not have bought Defendant's Products had they known that the product contained chemical preservatives and artificial flavors.  As a result of such reliance, like Plaintiffs, the reasonable consumer would believe that Defendant's Misbranded Food Products were preferable to other similar products that indicated on its label that chemical preservatives and artificial flavors were included as an ingredient.

118. As a result of Defendant's unlawful misrepresentations, Plaintiffs and thousands of others in California and throughout the United States purchased the Purchased Products and the Misbranded Products at issue.

119. Defendant's failure to disclose the presence of the chemical preservatives or artificial flavors noted above mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label, and Plaintiffs and the class paid an unwarranted premium price for the Misbranded Food Products, at least in part because of the misleading manner in which concealed the presence of chemical preservatives and/or artificial flavors as an ingredient in the products.

120. As a result of Defendant's deceptive labeling, i.e., hiding the presence of chemical preservatives and/or artificial flavors in its products noted above, Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive scheme.

**I.  Plaintiffs Purchased Defendant's Misbranded Food Products**

121. As noted above, Plaintiffs care about the nutritional content of food they buy and seek to maintain a healthy diet.  Plaintiffs read and reasonably relied on the ingredient lists on the labels of the Purchased Products before purchasing them as described herein. Plaintiffs relied on Defendant's labeling as described herein and based and justified the decision to purchase Defendant's products, in substantial part, on the label.

122. As it related to products that listed ECJ as an ingredient, Plaintiffs seek to avoid and/or minimize added sugar in the food that they purchase.  So, at the time of purchase, they read the labels of the Purchased Products to determine whether the Purchased Products contained added sugar by reading the ingredient list.  In this case, when they read the ingredient list of the Purchased Products to determine if sugar had been added as an ingredient, "sugar" was not listed thus they were led to believe that the Purchased Products did not contain added sugar as an ingredient.   They did not know that the ingredient "evaporated cane juice" was, in reality, added sugar at the time they made their purchase. Had they known "evaporated cane juice" was essentially the same thing as added sugar, they would not have purchased the Purchased Products.  At the time they purchased the

Purchased Products, because of the fact it used the term "juice," it sounded like something healthy.

123.  Based on the Purchased Product labels, Plaintiffs believed Defendant's products that they purchased did not contain added sugar as an ingredient.  Likewise, at point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's ECJ claims were unlawful and unauthorized as set forth herein.  Had Plaintiffs known the Purchased Products contained added sugar (or syrup), they would not have purchased the Products. As a result, Plaintiffs suffered injury-in-fact and lost money.

124. Plaintiff Amy Gitson purchased Defendant's Misbranded Food Products, including but not limited to Greek Style Vanilla Nonfat Yogurt, French Village Strawberry Nonfat Yogurt, French Village Mixed Berry Nonfat Yogurt with the listed ingredient "evaporated cane juice" or "organic evaporated cane juice" on occasions during the Class Period.

125.  Plaintiff Deborah Ross purchased all of the Purchased Products noted above in Paragraph 2 during the Class Period.

126.  Plaintiffs read the labels on Defendant's Misbranded Food Products, including the ingredient ECJ on the back panel, before purchasing them.  Plaintiffs have disclosed in their initial disclosures and attached to their response to Defendant's motion to dismiss true and correct copies of these labels to Defendant.

127.  Plaintiffs would not have purchased Defendant's Misbranded Food Products had Plaintiffs known that the Misbranded Food Products contained added sugar or dried cane syrup, or that the products were illegal to sell or possess. Plaintiffs read the labels on Defendant's Misbranded Food Products, including the Ingredient, "evaporated cane juice" on the labels before purchasing them.

128. Plaintiffs relied on Defendant's package labeling including the ingredient, "evaporated cane juice" and justified their decision to purchase Defendant's products in substantial part on Defendant's package labeling including the ingredient, "evaporated cane juice."

129.  At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had they known the truth about them, and that they were illegal to sell or possess.

130.  At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's misuse of "evaporated cane juice" were unlawful and unauthorized as set forth herein, and would not have bought the products had they known the truth about them.

131.  As a result of Defendant's unlawful "evaporated cane juice" claim, Plaintiffs and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

132.  Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

133. A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's Misbranded Food Products had they known they were not capable of being legally sold or held.

134.  As a result of Defendant's unlawful use of the unlawful term ECJ, Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive and unlawful scheme.

135. As it related to products that failed to disclose the presence of a chemical preservative and/or artificial flavor as an ingredient, Plaintiffs seek to avoid and/or minimize chemical preservative and/or artificial flavor in the food that they purchase.  So, at the time of purchase, they read the labels of the Purchased Products to determine whether the Purchased Products contained chemical preservative and/or artificial flavor by reading

the ingredient list.  In this case, when they read the ingredient list of the Purchased Products to determine if chemical preservative and/or artificial flavor had been added as an ingredient, none were listed thus they were led to believe that the Purchased Products did not contain chemical preservative and/or artificial flavor as an ingredient.  They did not know that the ingredients citric acid, tocopherols, and sodium citrate in the Purchased Products were chemical preservatives and/or artificial flavors at the time they made their purchase.   Had they known the ingredients citric acid, tocopherols, and sodium citrate in the Purchased Products were chemical preservatives and/or artificial flavors, they would not have purchased the Purchased Products.

136.  Based on the Purchased Product labels, Plaintiffs believed Defendant's products that they purchased did not contain chemical preservatives and/or artificial flavors as an ingredient.  Likewise, at point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's failure to disclose the presence of chemical preservatives and/or artificial flavors rendered the Purchased Products unlawful and unauthorized as set forth herein.  Had Plaintiffs known the Purchased Products contained chemical preservatives and/or artificial flavors, they would not have purchased the Products.  As a result, Plaintiffs suffered injury-in-fact and lost money.

137.  Plaintiff Deborah Ross purchased all of the Purchased Products noted above in Paragraph 2 during the Class Period.

138.  Plaintiffs read the labels on Defendant's Misbranded Food Products, including the ingredient list on the back panel, before purchasing them.  Plaintiffs have disclosed in their initial disclosures and attached to their response to Defendant's motion to dismiss true and correct copies of these labels to Defendant.

139.  Plaintiffs would not have purchased Defendant's Misbranded Food Products had Plaintiffs known that the Misbranded Food Products contained chemical preservatives and artificial flavors, or that the products were illegal to sell or possess. Plaintiffs read the labels on Defendant's Misbranded Food Products on the labels before purchasing them.

*Third Amended Class Action Complaint*

140.  Plaintiffs relied on Defendant's package labeling and based and the absence of any disclosed artificial flavors or chemical preservatives justified their decision to purchase Defendant's products in substantial part on Defendant's package labeling including the absence of any disclosed artificial flavors or chemical preservatives.

141.  At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had they known the truth about them, and that they were illegal to sell or possess.

142.  At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's failure to disclose the presence and function of artificial flavors or chemical preservatives were unlawful and unauthorized as set forth herein, and would not have bought the products had they known the truth about them.

143.  As a result of Defendant's failure to disclose the presence and function of artificial flavors or chemical preservatives, Plaintiffs and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

144.  Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.  Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

145.  A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiffs would not have purchased Defendant's Misbranded Food Products had they known they were not capable of being legally sold or held.

146.  As a result of Defendant's unlawful failure to disclose the presence of chemical preservatives and/or artificial flavors on the product label, Plaintiffs and the Class members purchased the Misbranded Food Products at issue. Plaintiffs and the Class members have

been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive and unlawful scheme.

**CLASS ACTION ALLEGATIONS**

147. Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States or, in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's food products 1) labeled with the ingredient, "Evaporated Cane Juice" or "Organic Evaporated Cane Juice;" or 2) labeled as soymilk (the "Class") or (3) which failed to disclose the presence and function of artificial flavors and chemical preservatives (the "Class").

148. The following persons are expressly excluded from each Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

149. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and each proposed Class is easily ascertainable.

150. <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that each Class numbers in the thousands, and that joinder of all Class members is impracticable.

151. <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include but are not limited to:

> a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its food products it sold to consumers;
>
> b.   Whether the food products at issue were misbranded as a matter of law;
>
> c.   Whether Defendant made unlawful and misleading "evaporated cane juice" claims and/or misused the terms milk on the products it sold consumers failed to disclose the presence and function of artificial

flavors or chemical preservatives;

d.      Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

e.      Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f.      Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

.

152.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiffs bought Defendant's Misbranded Food Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and each Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of each Class were caused directly by Defendant's wrongful conduct.   In addition, the factual underpinning of Defendant's misconduct is common to all Class members of each class and represents a common thread of misconduct resulting in injury to all members of each Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the member of each Class and are based on the same legal theories.

153.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of each Class.  Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of either Class's members.   Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of each Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the member of each class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for each Class.

154. <u>Superiority</u>:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of each Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of each Class member's rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

155.  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

156.  The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to each class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

157.  Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**<u>CAUSES OF ACTION</u>**

**FIRST CAUSE OF ACTION**
B**usiness and Professions Code § 17200,** *et seq.*
**<u>Unlawful Business Acts and Practices</u>**

158.  Plaintiffs incorporate by reference each allegation set forth above.

159.  Defendant's conduct constitutes unlawful business acts and practices.

160.  Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

161.  Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

162.  Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6  of the Sherman Law.

163.  Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

164.  Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

165.  Defendant sold Plaintiffs and the Class Misbranded Food Products that were not capable of being sold, or legally held and which had no economic value and were legally worthless.   Plaintiffs and each Class paid a premium price for the Misbranded Food Products.

166.  As a result of Defendant's illegal business practices, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

167.  Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and each Class.

168.  As a result of Defendant's conduct, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Unfair Business Acts and Practices**

169.  Plaintiffs incorporate by reference each allegation set forth above.

170.  Defendant's conduct as set forth herein constitutes unfair business acts and practices because those acts are unethical in that Defendant violated the above-noted laws designed to protect consumers, and illegal because Defendants violated those above-noted laws designed to protect consumers.  Those acts were also unfair in that Defendant's actions exposed consumers to potential prosecution for possession of Defendant's illegal misbranded products.

171.  Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

172.  Plaintiffs and the members of each Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

173.  Defendant's deceptive marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial.

174.  Defendant sold Plaintiffs and the members of each Class Misbranded Food Products that were not capable of being legally sold or held and that had no economic value and were legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

175. Plaintiffs and the members of each Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

176.  The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.   Defendant's conduct is and continues to be unlawful, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the members of each Class.

177.  As a result of Defendant's conduct, Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Fraudulent Business Acts and Practices

178.  Plaintiffs incorporate by reference each allegation set forth above.

179.  Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

180.  Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

181.  Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were capable of sale, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and the members of each Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

182.  Defendant's fraud and deception caused Plaintiffs and the members of each Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

183.  Defendant sold Plaintiffs and the members of each Class Misbranded Food Products that were not capable of being sold or legally held and that had no economic value and were legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

184.  As a result of Defendant's conduct as set forth herein, Plaintiffs and each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Misleading and Deceptive Advertising</u>**

185.  Plaintiffs incorporate by reference each allegation set forth above.

186.  Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500*, et seq.* for misleading and deceptive advertising against Defendant.

187.  Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

188.  Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and the members of each Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and

promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiffs and the members of each Class that were intended to reach the members of each Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

189.  In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Misbranded Food Products.  Plaintiffs and the members of each Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

190.  Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the members of each Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

191.  As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the members of each Class.  Misbranded products cannot be legally sold or held and have no economic value and are legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

192.  Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
<u>**Untrue Advertising**</u>

193.  Plaintiffs incorporate by reference each allegation set forth above.

194. Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

195. Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

196. Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiffs and the members of each Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq*. in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiffs and the members of each Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

197.  In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiffs and the members of each Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

198.  Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiffs and the members of each Class by obfuscating the contents, nature and

quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

199.  As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the members of each Class.  Misbranded products cannot be legally sold or held and have no economic value and are legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Food Products.

200.  Plaintiffs and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiffs and the members of each Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

201.  Plaintiffs incorporate by reference each allegation set forth above.

202.  This cause of action is brought pursuant to the CLRA.  On April 29, 2013, Plaintiffs provided Defendant with notice pursuant to Cal. Civ. Code § 1782.

203.  Plaintiffs can and will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

204.  Consequently, Plaintiffs and the members of each Class are entitled to actual and punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

205.  Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

206.  Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

207.  Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

208.  Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

209.  By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

210.  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

211.  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.  By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.  Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

1

2

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

3

4

212.  Implied in the purchase of the Purchased and Misbranded Products by Plaintiffs and the Class is the warranty that the products are legal and can be lawfully possessed and resold.

5

6

213.  Defendant knowingly and intentionally misbranded these products.

7

8

214.  Defendant knew or should have known that those products were illegal to sell or possess.

9

10

215.  When Defendant sold those products they impliedly warranted that the products were legal and could be lawfully possessed and resold.

11

12

216.  Plaintiffs would not have knowingly purchased products that were illegal to possess, and are unsellable, which potentially exposed Plaintiffs to criminal prosecution.

13

14

15

217.  No reasonable consumer would knowingly purchase products that are illegal to possess, and are unsellable, which potentially expose that consumer to criminal prosecution.

16

17

18

218.  The Purchased and Misbranded products were unfit for the ordinary purpose for which Plaintiffs and the Class purchased them.

19

20

219.  The Purchased and Misbranded products were all misbranded, thus, contraband and illegal to sell or possess, and therefore not merchantable as a matter of law.

21

22

23

24

220.  In fact, these products were economically worthless.

25

221.  As a result, Plaintiffs and the Class were injured through their purchase of an unsuitable, useless, illegal, and unsellable product.  Plaintiffs purchased these products believing them to be a legal form of food, but due to the products' misbranding these

26

27

28

products are unfit for sale, possession, or consumption by the State of California and the federal government.

222.  The Purchased and Misbranded products were unfit for the specific purpose that Plaintiffs and the Class purchased them.  Plaintiffs and the Class purchased these products believing them to be natural products free or chemical preservatives, artificial flavors, or added sugars because that is the type of health and natural products that Plaintiffs and the Class desired.  But these products were unfit for that particular purpose because they contained undisclosed chemical preservatives, artificial flavors, or added sugars.

223.  By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for the products.

**EIGHTH CAUSE OF ACTION**
**Common Count Of Money Had And Received -**
**Recovery In Assumpsit of Funds Paid For Misbranded Products That Are Illegal To Sell**

224.   Plaintiffs repeat and realleges each of the above allegations as if fully set forth herein.

225.   By definition, a contract is an agreement to do or not to do a certain thing. The sale and purchase of food items is a type of contract. The sale of misbranded food products is a type of illegal contract specifically prohibited by law.

226.   The sale of a misbranded food product is an illegal act in California and nationwide. Such a sale is expressly prohibited by California and federal law and the laws of other states.

227.   Pursuant to California Civ. Code § 3523 it is a codified legal maxim that "for every wrong there is a remedy." The unlawful sale of misbranded food products that are illegal to sell or possess as a matter of express statutory law pursuant to Sherman Law § 110760 – standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or

reliance on the particular labeling claims by Plaintiffs – gives rise to Plaintiffs' right to recover for the damages suffered as a result of the illegal sale.

228.    The sale of a misbranded product violates the public policy of California and the other forty-nine states.

229.    The sale of a misbranded product in California constitutes an illegal contract and is void under the laws of California. Such illegal transactions are void under common law and the laws of the other states as well.

230.    Plaintiffs and the Class seek damages and restitution under the common law and numerous statutory provisions enacted by California including but not limited to California Civ. Code §§ 1427, 1428, 1549, 1619, 1621, 1667, 1668, 1712, 3281-82, 3294, 3300, 3333, 3345, 3360, 3366-68, 3523, and 3539. These statutory provisions and the common law establish the right of  Plaintiffs and the Class to 1) a remedy for Defendant's illegal acts, 2) various types of damages and restitution. Moreover, while Plaintiffs and the Class suffered significant injury and damage to be proved at trial, even if that were not the case, then pursuant to California Civ. Code § 3360, the  law would still allow Plaintiffs and the Class to recover, *inter alia*, nominal damages due to the Defendant's illegal conduct.

231.    Plaintiffs and members of the Class were unaware that the Misbranded Food Products purchased by Plaintiffs and members of the Class were misbranded and thus illegal to sell or possess. Plaintiffs and members of the Class thus lacked the factual information to indicate to Plaintiffs and members of the Class that the sale of Misbranded Food Products in California or any other state constituted an illegal act.

232.    Plaintiffs and members of the Class were justifiably ignorant of facts of which the Defendant was not ignorant.

233.    Plaintiffs and members of the Class were not acquainted with the statutory regulations relating to the Defendant's food business and were justified in presuming special knowledge by the Defendant of such regulations.

234.    Plaintiffs and the members of the Class were thus not *in pari delicto* with the Defendant who had superior knowledge of facts of which the Plaintiffs and members of the

*Third Amended Class Action Complaint*

Class were unaware. Plaintiffs and the Class were justifiably ignorant of facts of which the Defendant was not ignorant, Plaintiffs and the Class were not acquainted with the statutory regulations relating to the Defendant's particular business and Plaintiffs and the Class were justified in presuming special knowledge by the Defendant of such regulations.

235.    Plaintiffs and the members of the Class are thus entitled to recover the funds they expended to purchase the Defendant's Misbranded Food Products.

236.    Defendant received and has possession of money that it obtained from the illegal sale of misbranded food products to the Plaintiffs and the Class in transactions that were unlawful, expressly prohibited by statute and void. The money held by Defendant is the property of Plaintiffs and the Class.  Defendant is obliged in equity and good conscience to restore it to Plaintiffs and the Class.

**NINTH CAUSE OF ACTION**

**Declaratory Judgment That Defendant Violated Federal And State Laws Regarding Mislabeled And Misbranded Food Products**

237.    Plaintiffs repeat and realleges each of the above allegations as if fully set forth herein.

238.    The sale of a misbranded food product is an illegal act in California and nationwide. Such a sale is expressly prohibited by Federal and California law as well as the laws of the other states.

239.    The sale of a misbranded product violates the public policy of California and the other 49 states.

240.    The sale of a misbranded product in California constitutes an illegal contract and is void under Federal law and the laws of California and the other states.

241.    Plaintiffs and other members of the Class who purchased Defendant's Misbranded Food Products in California and nationwide further seek to enjoin such unlawful deceptive and unconscionable trade practices as described above. Each of the Class members who purchased Defendant's Misbranded Food Products in California and nationwide will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that

Defendant will continue to falsely and misleadingly and unlawfully conceal the artificial flavors and chemical preservatives contained in its Misbranded Food Products and to illegally manufacture, distribute and sell this illegally labeled, misbranded product in violation of the food and drug laws that prohibit such actions. Plaintiffs and other members of the Class who purchased Defendant's Misbranded Food Products in California and nationwide therefore seek to enjoin the manufacture, distribution or sale of any of Defendant's Misbranded Food Products in California and further request an order granting them injunctive relief ordering appropriate corrective advertising and appropriate disclosures on the labeling in advertising, marketing and promotion of Defendant's Misbranded Food Products in California and nationwide.

242.   A case or controversy exists among Plaintiffs, the Class and Defendant as to applicability of the federal and state laws as to Defendant.

243.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered and will continue to suffer damages.

244.   Pursuant to 28 USCS § 2201, 28 USCS § 2202, F.R.C.P. 57, and California  Code of Civ. Proc. § 1060, Plaintiffs, on behalf of Plaintiffs and the Class, request a declaration of rights and duties with respect to Defendant, and an Order enjoining Defendant from continuing to market, advertise, distribute, and sell Misbranded Food Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action.

245.   Absent such injunctive relief Defendant will continue to illegally manufacture, distribute and sell mislabeled and misbranded food products to the detriment of consumers in the state of California and nationwide.

### **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of their claims.

### **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.   For an order certifying this case as a national class action, and also a separate

and distinct California class action and appointing Plaintiffs and their counsel to represent each Class;

  B. For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiffs and the Class;

  C. For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

  D. For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

  E. For an order awarding attorneys' fees and costs;

  F. For an order awarding punitive damages;

  G. For an order awarding pre-and post-judgment interest; and

  H. For an order providing such further relief as this Court deems proper.

Dated:  April 3, 2014

    Respectfully submitted,

    _s/Colin H. Dunn_____

    Colin H. Dunn (*Pro Hac Vice*)
    Clifford Law Offices, P.C.
    120 North LaSalle – 31st Floor
    Chicago, IL 60602
    Telephone:  (312) 899-9090
    Fax: (312) 251-1160
    chd@cliffordlaw.com

    Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
    1871 The Alameda, Suite 425
    San Jose, CA  95126
    Telephone:  (408) 429-6506
    Fax:  (408) 369-0752
    pgore@prattattorneys.com

    *Attorneys for Plaintiff*

*Third Amended Class Action Complaint*