1
2
3
4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    AMY GITSON, et al.,                        Case No.  13-cv-01333-VC

8                    Plaintiffs,

9          v.                                   **ORDER GRANTING IN PART AND
                                                DENYING IN PART PARTIAL
10                                              MOTION TO DISMISS; GRANTING IN
     TRADER JOE'S COMPANY,                      PART AND DENYING IN PART
11                                              MOTION TO STRIKE**
                    Defendant.
12                                              Re: Dkt. No. 131

13         The plaintiffs allege that Trader Joe's has mislabeled a number of products in violation of

14   California law.  Two motions to dismiss have been decided by the district judge previously

15   assigned to the case.  The pleadings have been settled for the most part.

16         In its current (and presumably final) motion to dismiss, Trader Joe's primarily seeks

17   dismissal of the claims relating to "soymilk" products.  The Third Amended Complaint alleges

18   that the use of the word "soymilk" by Trader Joe's to describe products that don't contain cow's

19   milk violates the federal Food, Drug and Cosmetic Act, which in turn would constitute a violation

20   of the California Sherman Act, which in turn would potentially be the basis for a claim under the

21   "unlawful" prong of California's Unfair Competition Law.  Although the previously-assigned

22   district judge has ruled on certain aspects of this question, the case law has developed since that

23   time, warranting full reconsideration of whether the plaintiffs have stated a claim with respect to

24   the soymilk products.

25         Often in food labeling cases, courts jump straight to the question whether a plaintiff may

26   state a claim under California's Unfair Competition Law.  But there is a threshold question.

27   Although a plaintiff may not sue directly under the federal Food, Drug and Cosmetic Act (because

28   it does not create a private right of action), the plaintiff must nonetheless allege facts that, if

United States District Court
Northern District of California

proven true, would amount to a violation of that federal statute.  If the alleged conduct would indeed amount to a violation of the federal statute, a plaintiff might be able to pursue a claim under state law based on that conduct (assuming the plaintiff satisfies any additional requirements for bringing a claim under the applicable state law).  But if the alleged conduct would not violate the federal statute, it doesn't matter whether the plaintiff could pursue a state law claim based on that conduct.  If a food label does not violate the federal statute, any state law claim arising from that label is automatically preempted, because when it comes to food labels, state law may only impose liability for what the federal statute proscribes.  *Perez v. Nidek Co.*, 711 F.3d 1109, 1119–20 (9th Cir. 2013); *Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *1–2 (N.D. Cal. June 2, 2014).  The threshold question in this case, then, is whether the use of the word "soymilk" in the Trader Joe's products could conceivably violate the federal Food, Drug and Cosmetic Act.  The answer to that question is no.

There are two potential theories for how the products could violate the federal statute.  The first is that the use of the word "soymilk" is, generally speaking, "false or misleading" within the meaning of 21 U.S.C. § 343(a).  Whether a food label is "misleading" is typically analyzed from the perspective of a reasonable consumer.  *See* U.S. FOOD & DRUG ADMIN., GUIDANCE: QUALIFIED HEALTH CLAIMS IN THE LABELING OF CONVENTIONAL FOODS AND DIETARY SUPPLEMENTS, 2002 WL 32811482, at *5 (2002) (superseded on other grounds by U.S. FOOD & DRUG ADMIN., GUIDANCE: INTERIM PROCEDURES FOR QUALIFIED HEALTH CLAIMS IN THE LABELING OF CONVENTIONAL HUMAN FOOD AND HUMAN DIETARY SUPPLEMENTS, 2003 WL 24014304 (2003)) ("In assessing whether food labeling is misleading, FDA will use a 'reasonable consumer' standard.").[1]  The plaintiffs cannot state a claim because they have not articulated a plausible

---

[1] Some courts, in decisions rendered before the FDA issued this guidance, have suggested that a label violates section 343(a) if it is misleading to the least sophisticated of consumers (even if it is not misleading to the reasonable consumer).  *See United States v. Strauss*, 999 F.2d 692, 696–97 (2d Cir. 1993); *cf. United States v. El-O Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951) (stating in a different context that the purpose of the federal Food, Drug and Cosmetic Act is to protect people who are "ignorant" and "unthinking").  Other courts have, like the subsequent FDA guidance, suggested that a label violates section 343(a) only if it is misleading to an ordinary consumer.  *See United States v. Kocmond*, 200 F.2d 370, 373 (7th Cir. 1952); *United States v. 46 Cases, More or Less, Welch's Nut Caramels*, 204 F. Supp. 321, 322 (D.R.I. 1962).  More recent decisions tend to assume without discussion that a "reasonable consumer" standard applies to the

United States District Court
Northern District of California

United States District Court
Northern District of California

explanation for how "soymilk" is misleading. At one point the plaintiffs seem to suggest the term

is misleading because people might mistake soymilk for actual milk from a cow, but that is not

plausible. The reasonable consumer (indeed, even the least sophisticated consumer) does not

think soymilk comes from a cow. To the contrary, people drink soymilk in lieu of cow's milk.

*See, e.g.*, *Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013)

("Moreover, it is simply implausible that a reasonable consumer would mistake a product like

soymilk or almond milk with dairy milk from a cow. The first words in the products' names

should be obvious enough to even the least discerning of consumers."). The plaintiffs also suggest

that the word "soymilk" is misleading under section 343(a) because it implies that the product has

a similar nutritional content to cow's milk. But a reasonable consumer (indeed, even an

unsophisticated consumer) would not assume that two distinct products have the same nutritional

content; if the consumer cared about the nutritional content, she would consult the label.[2]

The second and more specific theory for how a "soymilk" product could violate the federal

statute is that it "purports to be or is represented as" a food that has been given a "standard of

identity" by FDA regulations. *See* 21 U.S.C. § 343(g). Milk is indeed a food that that the FDA

has standardized. *See* 21 C.F.R. § 131.110 (describing "milk" as from a cow and explaining the

way it should be labeled). But the fact that the FDA has standardized milk does not categorically

preclude a company from giving any food product a name that includes the word "milk." Rather,

as the language of section 343(g) indicates, the standardization of milk simply means that a

company cannot *pass off* a product as "milk" if it does not meet the regulatory definition of milk.

Trader Joe's has not, by calling its products "soymilk," attempted to pass off those products as the

food that the FDA has standardized (that is, milk). To the contrary, as already discussed, it is

---

federal statute. *See, e.g.*, *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal.
2014), *Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013). This
makes sense. However, as discussed herein, the plaintiffs do not state a plausible claim under
either standard of liability.
[2] The plaintiffs do not allege that the nutrition label contains any misleading information that
could lead someone to believe that soymilk has the same nutritional content as cow's milk. Nor,
for that matter, do the plaintiffs allege that Trader Joe's misrepresents the nutritional content of its
soymilk products in its advertising.

1   implausible that the use of the word "soymilk" misleads any consumer into believing the product

2   comes from a cow.  Soymilk, in short, does not "purport[] to be" from a cow within the meaning

3   of section 343(g).

4          The plaintiffs cite two FDA "warning letters" in support of the theory that the title

5   "soymilk" violates section 343(g).  But even assuming FDA warning letters might sometimes

6   enjoy deference, *see Ang*, 2013 WL 6492353, at *3, the statements in these letters about soymilk

7   labels are entitled to none.  The FDA issued these letters to companies in the wake of inspections

8   of food facilities.  The letters warned the companies that they were not storing products properly,

9   were not taking adequate precautions against pests, and were generally not keeping things clean.

10  *See* Food & Drug Admin., Warning Letter to Fong Kee Tofu Company (Mar. 7, 2012); Food &

11  Drug Admin., Warning Letter to Lifesoy, Inc. (Aug. 8, 2008).  Almost as an afterthought, each of

12  the letters noted that during inspection, the FDA investigators determined that certain food

13  products were misbranded within the meaning of section 343(g), including products that contained

14  the words "soy milk" in their titles.  The investigators stated: "we do not consider 'soy milk' to be

15  an appropriate common or usual name because it does not contain 'milk.'"  It is difficult to

16  understand what that means.  To the extent the letters mean to argue that a product with the word

17  "soymilk" in the title "purports to be or is represented as" cow's milk, 21 U.S.C. § 343(g), they

18  provide no support for that argument, and as explained above, the argument is implausible.  To the

19  extent the letters mean to argue that a product with the word "soymilk" in the title violates section

20  343(g) for some other reason, they do not explain what that reason might be, nor is one apparent

21  from the text of section 343(g), which seems only to forbid a food from "purport[ing] to be" a

22  standardized food, or from being "represented as" a standardized food.  *Id.*  Either way, there is no

23  conceivable justification for the assertions those letters make about the word "soymilk," so they do

24  not support a claim that products with "soymilk" in their titles violate the federal statute.

25         Because the Third Amended Complaint does not allege conduct that would amount to a

26  violation of the federal Food, Drug and Cosmetic Act, that is the end of the matter.  Any potential

27  claim under state law would be preempted.  The motion to dismiss the "soymilk" claims is

28  therefore granted, and dismissal is with prejudice.

United States District Court
Northern District of California

With respect to the remaining issues presented by the latest motion to dismiss:

- The motion to dismiss the "newly asserted" claims is unopposed and is therefore granted.

- The motion to dismiss claims based on undisclosed additives in products that the plaintiffs did not purchase is denied in part and granted in part.  It is denied with respect to unpurchased products that contain the same additives as the products the plaintiffs purchased and complain of in this lawsuit, because the alleged injuries inflicted on other people by those additives in those unpurchased products are substantially similar to the injuries the named plaintiffs allegedly incurred here.  *See, e.g.*, *Garrison*, 2014 WL 2451290, at *5.  The motion is granted, however, with respect to products that do not contain the additives that the plaintiffs complain about in the products they purchased.  *Id.*  In other words, the litigation will proceed only with respect to the additives the plaintiffs complain about in the purchased products (that is, tocopherols, sodium citrate, and citric acid).

- The motion to strike allegations relating to the FDA's "interim position" on evaporated cane juice is denied.

- The motion to strike allegations asserting a theory that Trader Joe's failed to disclose that its products were illegally labeled is granted.

**IT IS SO ORDERED.**

Dated: December 1, 2015

VINCE CHHABRIA
United States District Judge

United States District Court
Northern District of California

5